UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Superior Commercial Solutions LLC | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Ct No. 24-00052 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) | |

# COMPLAINT

Superior Commercial Solutions LLC ("SCS"), by their undersigned attorneys, hereby brings this civil action and alleges the following:

## Administrative Decision Contested

1. Plaintiff contests (a) the affirmative final determination as to evasion made pursuant to 19 U.S.C. § 1517(c), the Enforce and Protect Act ("EAPA"), Investigation No. 7783, issued by U.S Customs and Border Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED") on August 31, 2023 ("TRLED Final Determination"); and (b) CBP Office of Trade, Regulations & Rulings' ("RR") administrative review decision ("RR Decision") dated January 11, 2024 affirming TRLED's final determination.

## Parties

2. SCS acted as importer of record of certain quartz countertops (i.e., alleged "covered merchandise") from two Vietnamese suppliers Engga Company Limited ("Engga") and

Kales Quartz Company Limited ("Kales"), two privately held companies organized under the laws of Vietnam. Plaintiff was named and targeted by CBP in the EAPA Investigation, No. 7783 (hereinafter, "EAPA 7783"). Plaintiff, as an importer, is thus an interested party in accordance with 19 U.S.C. § 1517(a)(6)(A)(i).

3. Defendant is the United States of America, acting by and through CBP.

## Jurisdiction

4. This Court has jurisdiction in accordance with 28 U.S.C. § 1581(c) for any civil action commenced under section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517). Plaintiff SCS is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for judicial review by the U.S. Court of International Trade of TRLED's final determinations under 19 U.S.C. § 1517(c) and RR's administrative review determinations under 19 U.S.C. § 1517(f).

## Standing

5. Plaintiff SCS is a "person determined to have entered covered merchandise through evasion" and therefore has standing to bring this action in accordance with 19 U.S.C. § 1517(g)(1).

6. Plaintiff has been adversely affected and aggrieved by TRLED's affirmative evasion determination made under 19 U.S.C. § 1517(c) and RR's affirmation of TRLED's determination made under 19 U.S.C. § 1517(f), which are agency actions within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiff has

standing to bring this action under 28 U.S.C. § 2631(i).

## Timeliness

7. An action under 28 U.S.C. § 1581(c) based on 19 U.S.C. § 1517 must be commenced within thirty (30) business days after RR completes its administrative review under 19 U.S.C. § 1517(f). *See* 19 U.S.C. § 1517(g)(1). RR completed its administrative review on January 11, 2024. The thirtieth business day after January 11, 2024 (excluding Saturdays, Sundays, and federal holidays -) falls on Monday, February 26, 2024. Accordingly, this action is timely filed.

## Facts

8. On September 8, 2022, Cambria Company LLC ("Alleger") submitted a request to CBP to initiate an EAPA investigation against SCS, alleging that SCS transshipped Chinese quartz surface products ("QSP") and thereby evaded antidumping and countervailing duty orders on *Certain Quartz Surface Products From the People's Republic of China*. *See Certain Quartz Surface Products From the People's Republic of China: Antidumping and Countervailing Duty orders*, 84 Fed. Reg. 33053 (Dep't Commerce July 11, 2019) (the "Orders"). The Alleger claimed that SCS received QSP from Kales in Vietnam, and Kales sourced such QSP from Xiamen Lexiang Imp. & Exp. Co., Ltd., a company in China. *See* Allegation at 5-8.

9. CBP did not acknowledge receipt of the allegation until a month later, on October 6, 2022, followed by the initiation of a secret EAPA investigation. *See* TRLED – Official Receipt

Email (Oct. 6, 2022); TRLED – Initiation Memo (Oct. 28, 2022). In early November 2022, CBP issued four CF-28 Requests of Information to SCS without notice to SCS that an EAPA investigation has been initiated. CBP received SCS' responses to all four CF-28s in mid-November, 2022. On November 30, 2022 and December 29, 2022, TRLED placed two memorandums on the administrative record that contain a total of 72 attachments.

10. CBP did not inform SCS of the EAPA allegations against it, nor did it provide SCS an opportunity to defend against the allegations before it imposed interim measures on the company on January 26, 2023. *See* TRLED – CBP EAPA Investigation 7783 – Notice of Initiation of Investigation and Interim Measures (Jan. 26, 2023); TRLED – Notice of Initiation of Investigation and Interim Measures (Feb. 2, 2023) (Interim Measures Notice"). CBP's interim measures included rejecting entries and requiring SCS to refile entry summaries Type 3 and pay cash deposits at approximately 370 percent *ad valorem*, suspending liquidation for all other entries entered on or after October 28, 2022 (the date of initiation), extending the liquidation of all other unliquidated entries, and requiring live entries and cash deposits. *See* Interim Measures Notice at 16.

11. CBP proceeded to issue Requests for Information ("RFI") to SCS and certain Vietnamese entities – Engga (i.e., the exporter) and Kales (i.e., the producer) of quartz countertops and affiliated with each other, and Strry Manufacturing Company Limited ("Strry"), which is Engga and Kales' affiliated QSP supplier.

12. Between March 1, 2023 and May 15, 2023, SCS and the three aforementioned Vietnamese entities each responded to one round of RFI and one round of Supplemental RFI, providing thousands of pages of documents requested by CBP.

13. Notably, in SCS' RFI response and Supplemental RFI response, it provided hundreds of pages of email correspondence with the foreign supplier, including emails prior to the Period of Investigation (POI) pursuant to CBP's request.  The email correspondence demonstrate that SCS exercised due diligence in making Type 1 entries at the time of entry, and had no wrongdoings in dealing with the foreign exporter Engga, who is the only Vietnamese entity that SCS dealt with directly.

14. In the foreign entities' RFI responses and Supplemental RFI responses, the companies submitted comprehensive purchase, production, and sales documents that reconciled to their financial records.  The companies further documented that the production of quartz countertops from quartz slabs were arranged by production order numbers, and therefore, they can trace the quartz slabs used for each of the shipments to all customers, including to SCS.  The companies admitted that a small percentage of the quartz countertops sold to SCS were produced from quartz slabs imported from China, but the remaining quartz countertops sold to SCS were all produced from Vietnamese-origin slabs.

15. CBP scheduled a verification of Engga, Kales, and Strry on June 22-23, 26-30, 2023.  On June 9 2023, the companies informed CBP that they decided to not participate in the verification as the companies have extremely limited resources left after losing the vast majority of their business since the imposition of interim measures.

16. On June 14, 2023, TRLED uploaded a memorandum that contained 80 attachments to the EAPA web-portal as documents placed om the record. While some attachments are public documents, others contain business confidential information or are bracketed in their entireties, for which the content of the attachments have not been disclosed to SCS.

Critically, CBP failed to serve the memorandum with attachments on SCS, and left SCS completely unaware of the new information added to the "administrative record" until long after the 10-day rebuttal deadline had passed. On June 26, 2023 and July 11, 2023, respectively, SCS filed its written arguments and rebuttal written arguments.

17. On August 31, 2023, CBP TRLED made an affirmative determination of evasion. *See* TRLED – EAPA Case 7783, Notice of Determination as to Evasion (Aug. 31, 2023) ("TRLED Final Determination"). In the public version of the decision made available to SCS, CBP purportedly compared the Vietnamese entities' RFI and supplemental RFI responses and business confidential version of the attachments within the November 2022 Memorandum and June 2023 Memorandum, and determined that the Vietnamese entities failed to report 12 affiliated companies, thereby impeding the investigation. Additionally, CBP found the Vietnamese exporter's counting of QSP shipments to SCS that were entirely manufactured in Vietnam unverified and unreliable, and the exporter's refusal of verification prevented TRLED from "discussing and verifying the information on the case record and making on-site requests for information" or to "issue more supplemental RFI questions in lieu of the planned verification discussion." CBP also noted, for the first time, certain perceived inconsistencies and irregularities in the Exporters' production documents.

18. On October 16, 2023, the thirtieth business day after TRLED's Final Determination, SCS filed a review request with CBP RR, challenging aspects of TRLED's factual determination and procedural violations.

19. On January 11, 2024, RR issued a public version of its final decision. *See* CBP RR - Enforce and Protect Act ("EAPA") Case Number 7783; *Certain Quartz Surface Products*

*From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33,053 (Dep't of Commerce July 11, 2019); Superior Commercial Solutions LLC; 19 U.S.C. § 1517 (Jan. 11, 2024) ("RR Decision").

20. In its decision, RR disputed that the portion of shipments to SCS of quartz countertops made with Chinese-origin slabs was not substantial, and claimed that in any event, it did not need to address the other portions of shipment of quartz countertops made with Vietnamese-origin slabs even though CBP's enforcement measures has to take place on an entry-by-entry basis.  RR also determined that RLED was warranted in its application of adverse inference to Kales/Engga and Strry, and therefore collaterally on SCS.  RR further dismissed the procedural and legal errors raised in SCS' request for administrative review, including that the EAPA statute requires intent or culpability, TRLED's service of the June 2023 Memorandum was deficient and unreasonable, TRLED failed to provide notice to SCS prior to the imposition of interim measures, and CBP's due process violations in withholding confidential information.

21. This action ensued.

## COUNT I

22. The allegations of paragraphs 1 through 21 are restated and incorporated herein by reference.

23. CBP TRLED's imposition of interim measures including rejecting entries and requiring cash deposits at approximately 370% *ad valorem*, suspending liquidation of entries and extending liquidation of entries, threatening liquidated damages and threatening liquidation

of entries at high duty rates, without any notice to SCS and based on an allegation and TRLED's memorandums that were not disclosed to SCS violates SCS' due process right to be heard and defend against allegations of evasion at a meaningful time.

24. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332; 96 S. Ct. 893, 901 (1976). It is well established that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914).

25. "It is undisputed that the test for constitutional sufficiency of notice is whether '[the] notice [is] reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.' *Transcom, Inc. v. United States*, 121 F. Supp. 2d 690, 708 (Ct. Int'l Trade 2000) *citing to Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314; 70 S. Ct. 652 (1950). Here, in the 140 days between the Alleger's filing of the EAPA allegation and TRLED's imposition of interim measures, TRLED failed to apprize SCS of the pendency of the action.

## COUNT II

26. The allegations of paragraphs 1 through 25 are restated and incorporated herein by reference.

27. CBP TRLED's withholding of notice of the ongoing investigation to SCS in the 140 days prevented SCS from taking actions to minimize its duty liability, including to immediately stop importing additional alleged covered merchandise. CBP's action was contrary to the legislative intent of the EAPA Statute, to prevent the evasion of AD and CVD Orders. *See* Trade Facilitation and Trade Enforcement Act of 2015, Title IV, "Prevention of Evasion of Antidumping and Countervailing Duty Orders" ("TFTEA"). Sec. 411 of the TFTEA establishes CBP's "Trade Remedy Law Enforcement Division," which shall be dedicated – (A) to the development and administration of policies to prevent and counter evasion . . .." TFTEA Sec. 411(3)(A).

## COUNT III

28. The allegations of paragraphs 1 through 27 are restated and incorporated herein by reference.

29. TRLED and ORR violated SCS's due process rights under the Fifth Amendment of the U.S. Constitution by not making available to SCS the full, unredacted CBP memorandums containing various Business Confidential Information filed in EAPA Inv. 7783 and in particular those business confidential documents used against SCS in TRLED's Interim Measures, TRLED Final Determinations, and RR Decision.

30. "One 'relatively immutable' principle of due process is that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the [g]overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.' This immutable principle applies to cases where facts have been withheld from an entity during an administrative

9

proceeding. …… There is no legitimate government interest here [in CBP EAPA investigations] in refusing to provide confidential business information to Royal Brush when all government concerns about the necessity of secrecy can be alleviated by issuing a protective order [.]" *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1257-1262 (Fed. Cir. 2023).

## COUNT IV

31. The allegations of paragraphs 1 through 30 are restated and incorporated herein by reference.

32. In conducting EAPA Inv. 7783 and without an administrative protective order ("APO"), TRLED released the business confidential version of RFI and Supplemental RFI issued to SCS and the Vietnamese entities. TRLED clearly understood the need for parties to access their own business confidential information in brackets in these documents so that they would have the ability to respond to TRLED's requests for information, without an APO.

33. TRLED's and ORR's failure to provide SCS and the Vietnamese entities each a partially-redacted business confidential version final determination and final administrative review decision, consisting, at a minimum, of each's own business confidential information, is arbitrary and capricious. The violation also prevented SCS and the Vietnamese entities from fully understanding the decision against it, and to explain, clarify, or rebut any CBP-perceived discrepancies in their own records.

## COUNT V

34. The allegations of paragraphs 1 through 33 are restated and incorporated herein by reference.

35. Section 19 C.F.R. § 165.23(c) provides SCS ten calendar days to submit rebuttal information to any new factual information placed on the record by CBP on or after the 200th calendar day after the initiation of the investigation.

36. Moreover, for any documents filed on the record by interested parties, including parties to the investigation, CBP requires that the document be served to parties to the investigation by email. For most documents "placed" on the record in EAPA Investigation 7783 by CBP, CBP serves parties to the investigation such documents by (1) uploading the documents to the EAPA web-portal, and (2) notifying counsel by email. Together, these practices create a *de facto* rule that documents placed on the "administrative record" must be served by at least providing an email notice to the parties to the investigation that such documents are now on the record.

37. CBP's handling of the June 2023 Memorandum to only upload the document to the EAPA web-portal violates the *de facto* rule and its own practice and is arbitrary and capricious. This Court will hold as unlawful any administrative decision that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 19 U.S.C. § 1517(g)(2)(B).

## COUNT VI

38. The allegations of paragraphs 1 through 37 are restated and incorporated herein by

reference.

39. An affirmative EAPA determination is followed by enforcement measures applied on all unliquidated entries of the targeted importer from the named foreign exporter. In reaching the affirmative evasion determination, TRLED misinterpreted a significant amount of information on the record that demonstrate a substantial portion of SCS' quartz countertop imports from the Vietnamese exporter Engga was manufactured with only Vietnamese-origin slabs. Subsequently, RR ignored all such documents in making its decision.

40. This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1517(g)(2)(B). An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

41. An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).

## **COUNT VII**

42. The allegations of paragraphs 1 through 41 are restated and incorporated herein by reference.

43. TRLED and RR's failure to reach a negative evasion determination on a substantial portion of SCS' imports is contrary to record evidence. TRLED and RR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole.

44. In their determinations in EAPA Inv. No 7783, TRLED and ORR have not applied an appropriate substantial evidence standard, which "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (*quoting Universal Camera*, 340 U.S. at 487). Substantial evidence may not be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 C.I.T. 82, 84 (1987).

## COUNT VIII

45. The allegations of paragraphs 1 through 44 are restated and incorporated herein by reference.

46. TRLED and RR explicitly invoked the adverse inferences provisions, 19 U.S.C. § 1517(c)(3) and 19 C.F.R. § 165.6.

47. The courts are adamant that "there is no justification for an AFA rate based in deterrence where the rate would affect only the cooperating party." *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019), citing to *Changzhou Wujin Fine*

*Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1379 (Fed. Cir. 2012). In the instant investigation, SCS cooperated fully with CBP. CBP's application of adverse inference that only has adverse impact on SCS is unsupported by record evidence and is arbitrary and capricious. CBP's determination is also particularly unreasonable when it could have applied adverse inference to the Vietnamese entities without collateral consequence to SCS.

## COUNT IX

48. The allegations of paragraphs 1 through 47 are restated and incorporated herein by reference.

49. TRLED's and RR's determinations that SCS entered covered merchandise by means of "material and false" statements or "material" omissions was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. Record evidence demonstrates that SCS exercised due diligence in entering the alleged covered merchandise as Type 1 entries. TRLED and RR failed to consider important aspects of the problem, both in terms of procedure and of the extensive record evidence submitted by SCS.

## COUNT X

50. The allegations of paragraphs 1 through 49 are restated and incorporated herein by reference.

51. TRLED's failure to inform the Department of Commerce ("Commerce") of its August 31, 2023 Final Determination and request specific assessment rates from Commerce violated 19 U.S.C. § 1517(d)(1)(C), which required that TRLED, after its Final Determination under

19 U.S.C. § 1517(c), "shall – notify the administering authority of the determination and request that the administering authority – (i) identify the applicable antidumping or countervailing duty assessment rates" for such covered merchandise, or "(ii) if no such assessment rate is available at the time, identify the applicable cash deposit rate…with the . . . assessment rate to be provided as soon as that rate becomes available." 19 U.S.C. §§ 1517(d)(1)(C)(i) & (ii).

52. The public administrative record contains no evidence that TRLED ever informed Commerce of its affirmative evasion determination and requested Commerce to determine the applicable assessment rate applicable to SCS's entries. TRLED's failure to comply with its statutory obligation is contrary to the law. *See* 19 U.S.C. § 1517(g)(2)(B).

## **DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1) Declaring TRLED's October 28, 2022 initiation of EAPA Inv. 7783 against SCS and TRLED's January 26, 2023 imposition of interim measures null and void; and

(2) Declaring TRLED's and ORR's final determinations unsupported by substantial evidence; and

(3) Declaring TRLED's and ORR's determinations arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(4) Declaring TRLED's and ORR's failure to provide unredacted documents contrary to the due process of law; and

(5) Declaring TRLED's and ORR's failure to provide partial unredacted documents

consisting solely of Plaintiff's own business confidential information – notwithstanding the (non)existence of an administrative protective order – arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(6) Declaring TRLED's and ORR's determinations in violation of the due process of law; and

(7) Ordering CBP to liquidate all of Plaintiff's entries of quartz countertops that were exported by Engga and produced in Vietnam with only Vietnamese-origin slabs without regard to AD/CVD duties; and

(8) Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang
**deKieffer & Horgan, PLLC**
Suite 1100
1156 Fifteenth Str., N.W.  20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to SCS*

Dated:  February 26, 2024