## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____

|  |  |
|---|---|
| SUPERIOR COMMERCIAL SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )  Ct No. 24-00052 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

_____

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff Superior Commercial Solutions, LLC ("SCS") respectfully moves this Court for an order granting movants judgment on the agency record against Defendant, the United States (representing U.S. Customs and Border Protection), including, but not limited to the following relief:

- Order that U.S. Custom's and Border Protection's ("CBP") rescind any enforcement measures imposed on the quartz countertop entries that SCS entered between September 29, 2022 and Janurary 26, 2023 as a result of CBP's failure to timely initiate EAPA Inv. 7783 and to notify Plaintiff timely;

- Remand to CBP with instructions to make its EAPA determination on an entry-by-entry basis;

- Remand to CBP with instructions to follow the statory criterion of proving intent or culpability of the targeted importer before making an affirmative determination;

- Remand to CBP with instructions to consider its application of adverse inference over the foreign companies' failure to cooperate; and

- Grant Plaintiff such other relief as the Court may deem appropriate.

WHEREFORE, for the reasons described in this Motion, Plaintiff respectfully requests that this Court enter judgment in its favor.  A proposed order is attached for the Court's consideration.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Gregory S. Menegaz
_____
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[**]
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.  20005
Suite 1101
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com

</div>

Dated:  August 7, 2024

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

PUBLIC VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| ———————————————————— ) | | |
| SUPERIOR COMMERCIAL SOLUTIONS, LLC, ) | | |
| ) | | |
| ) | | |
| Plaintiff, ) | | |
| v. ) | Ct No. 24-00052 | |
| ) | | |
| ) | | |
| UNITED STATES, ) | **PUBLIC VERSION** | |
| ) | | |
| ) | | |
| Defendant. ) | | |
| ———————————————————— ) | | |

### PLAINTIFF'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Gregory S. Menegaz
Judith L. Holdsworth
Alexandra H. Salzman
Vivien Jinghui Wang
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: August 7, 2024

# TABLE OF CONTENTS

I.    RULE 56.2 STATEMENT .........................................................................1

    A.    Administrative Determinations Subject to Appeal ...............................1

    B.    Issues Presented ...................................................................................1

II.   STANDARD OF REVIEW ......................................................................2

III.  STATEMENT OF FACTS ........................................................................3

IV.   SUMMARY OF ARGUMENT .................................................................15

V.    ARGUMENT............................................................................................16

    A.    CBP Violated the Law When It Failed to Initiate The Case Within The
        Statutory Timeline And Failed to Notified SCS of the Initiation of
        EAPA Inv. 7783 At The Time of Initiation.. .......................................11

    B.    CBP Erred in Finding That It Need Not Make An Entry-By-Entry
        Determination ......................................................................................23

    C.    SCS Did Not Evade the AD CVD Orders With Intent Or Culpability ..............28

    D.    CBP's Application of Adverse Inferences Is Unreasonable. .............................31

VI.   CONCLUSION AND PRAYER FOR RELIEF ........................................34

# TABLE OF AUTHORITIES

## CASES

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ......................................3

*Arnold P'ship v. Dudas*, 362 F.3d 1338 (Fed. Cir. 2004) ...............................................3

*Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade, 2019) ........................................................................................................................34

*Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade, 2019) ........................................................................................................................33

*California v. Arizona*, 440 U.S. 59 (1979) ......................................................................22

*Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ..............................................................................................2, 34

*Crowell v. Benson*, 285 U.S. 22 (1932) .........................................................................22

*CS Wind Vietnam Co. v. United States,* 832 F.3d 1367 (Fed. Cir. 2016) ......................3

*Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ........................................................................................................................29

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ...................................................................................................................30, 31

*Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353 (Fed. Cir. 2006) ..................25

*Ikadan Sys. United States, Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 91, Slip Op. 2023-88 (June 13, 2023). ......................................................................................31

*LaChance v. Erickson*, 522 U.S. 262, 118 S. Ct. 753, 139 L. Ed. 2d. 695 (1998) ......22

*Loper Bright Enters. V. Raimondo,* 144 S. Ct. 2244 (2024).................................... 18-19

*Mueller Comercial de Mexico S. De R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) ...............................................................................................33-34

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).........................25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)................... 3-4

*PAM, S.p.A. v. United States*, 463 F.3d 1345 (Fed. Cir. 2006) ....................................25

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012).............22

*Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) ........................................13, 21

*SKF USA, Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) .................................................2

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) .................................................................20

*Skyview Cabinet USA, Inc. v. U.S.*, Ct. No. 1:22-cv-00080, 2023 Ct. Intl. Trade LEXIS 95 (2023) ..................................................................................................................................33

*Tourus Records, Inc. v. DEA*, 259 F.3d 731 (D.C. Cir. 2001) ....................................................3

## STATUTES

5 U.S.C. § 706(2) ...........................................................................................................................2

19 U.S.C. § 1517(a)(3) .................................................................................................................27

19 U.S.C. § 1517(a)(5)(A) ....................................................................................................29, 31

19 U.S.C. § 1517(b) .....................................................................................................................19

19 U.S.C. § 1517(b)(1) ..........................................................................................................21, 22

19 U.S.C. §§ 1517(b)(1)-(2) ........................................................................................................17

19 U.S.C. § 1517(c)(1) ...........................................................................................................21, 22

19 U.S.C. § 1517(c)(3)(A) ...........................................................................................................32

19 U.S.C. § 1517(c)(3)(B) ...........................................................................................................31

19 U.S.C. § 1517(c)(4) ...........................................................................................................21, 22

19 U.S.C. § 1517(d) .....................................................................................................................15

19 U.S.C. §§ 1517(d)(1)(A) – (B) & (D) ...............................................................................26-27

19 U.S.C. § 1517(e) ...............................................................................................................21, 22

19 U.S.C. § 1517(f) ................................................................................................................21, 22

19 U.S.C. § 1517(g)(2) ..................................................................................................................2

**PUBLIC LAWS**

Trade Facilitation and Trade Enforcement Act of 2015, Title IV, "Prevention of Evasion of Antidumping and Countervailing Duty Orders", Public Law 114-125 (Feb. 24, 2016) ........ 23-24

**REGULATIONS**

19 CFR § 163.11 .......................................................................................................... 19-20

19 CFR § 163.12 .............................................................................................................19

19 CFR § 165.15(d)(1)....................................................................................................21

**ADMINISTRATIVE DECISIONS**

*Certain Quartz Surface Products From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84, Fed. Reg. 33,053 (Dep't Commerce, July 11, 2019) ...........................................................................................................................3

**OTHER AUTHORITIES**

CBP, *Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim Regulations*, 81 Fed. Reg. 56,477 (Aug. 22, 2016)........................................ 19, 20, 22-23

Uruguay Round Agreements Act ("URAA"), Statement of Administrative Action, H.R. Rep. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4151, 1994 WL 16137731 .....24

I.    **RULE 56.2 STATEMENT**

Pursuant to Rule 56.2 (c)(1), Plaintiff Superior Commercial Solutions, LLC ("SCS"),

hereby states the administrative decisions subject to appeal and the issues of law presented:

A.    **Administrative Determinations Subject to Appeal**

Plaintiff SCS is a U.S. importer of quartz countertops from Vietnam.  In this appeal,

Plaintiff seeks judicial review of the following decisions that U.S. Customs and Border

Protection ("CBP") issued in the underlying administrative proceeding, Enforce and Protect Act

("EAPA") Case No. 7783: (a) CBP's Trade Remedy & Law Enforcement Directorate

("TRLED") Notice of Initiation and Interim Measures – EAPA Case 7783 (Feb. 2, 2023)

("Interim Measures Notice"), **PV11, BC10**,[1]; (b) CBP TRLED's Final Determination of Evasion

as to SCS (August 31, 2023) ("August 31 Determination"), **PV56, BC44**; and (c) CBP's Final

Administrative Review Determination issued by the Office of Trade, Regulations and Rulings

("RR") (Jan. 11, 2024) ("Final RR Determination"), **PV68, BC47**.

B.    **Issues Presented**

1.    <u>Issue One</u>: Whether CBP acted unlawfully when it failed to initiate the

investigation under the statutory deadline and withheld notice of investigation to SCS until

interim measures were announced.

2.    <u>Issue Two</u>: Whether CBP's affirmative determination of evasion is supported

by substantial evidence and in accordance with law, i.e., the EAPA Statute that necessarily

requires an entry-by-entry determination.

3.    <u>Issue Three</u>: Whether CBP's analysis that SCS' failure to report the covered

---

[1] "PV" (Public Version) and "PD" (Public Document) refer to CBP's index of public record documents; "BC" refers to CBP's index of confidential record documents.

merchandise entries Type 3 in and of itself satisfied the statutory criterion that a material and false statement be made is insufficient, in particular in light of SCS' full cooperation in this proceeding and surrounding circumstances.

      4.     <u>Issue Four</u>: Whether CBP erred in selecting an adverse inference that affects only a fully-cooperating importer party.

## II.    STANDARD OF REVIEW

      The EAPA statute provides for the standard of judicial review in 19 U.S.C. §1517(g)(2). The Court reviews CBP's evasion determination for compliance with all procedures under 19 U.S.C. §§ 1517(c) and (f) and will hold unlawful "any determination, finding, or conclusion {that} is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §1517(g)(2).  Federal courts have recognized that the standard of review for international trade cases also encompasses the standards established under the APA, 5 U.S.C. §706(2).  *Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("We review Commerce's decision under the Administrative Procedure Act and any other applicable law."), *citing SKF USA, Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001).

      "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted).  Internal inconsistency and self-contradiction do not

satisfy this requirement.  There must be "a rational connection between facts found and choices made." *Id.* (citation omitted).

Further, the agency's rationale must address the parties' principal arguments.  *See CS Wind Vietnam Co. v. United States,* 832 F.3d 1367, 1375-1381 (Fed. Cir. 2016) (analyzing in detail an agency's obligation to set forth a comprehensible and satisfactory justification for its determinations "as a reasonable implementation of statutory directives supported by substantial evidence").  In *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350-52 (D.C. Cir. 2014), the Court underscored the importance of an agency's obligation to "articulate an explanation for its action," stating that "a fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action", referencing *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001).  Finally, an abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).

## III.    STATEMENT OF FACTS

The U.S. Department of Commerce issued antidumping and countervailing duty orders on Quartz Surface Products from China on July 11, 2019.  *See Certain Quartz Surface Products From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84, Fed. Reg. 33,053 (Dep't Commerce, July 11, 2019) (the "*QSP from China* Orders").

On September 8, 2022, Cambria Company LLC ("Cambria" or the "Alleger") filed a secret EAPA allegation against SCS, alleging that SCS evaded AD CVD duties on Chinese

quartz countertops subject to the *QSP from China* Orders by importing from Kales Quartz Company Limited ("Kales"), an exporter and producer located in Vietnam. *See* Ltr. from Schagrin Associates, re: Quartz Surface Products from the People's Republic of China: Request for an Investigation under the Enforce and Protect Act of Superior Commercial Solutions LLC (Sept. 8, 2022) ("EAPA Allegation"), **PV01, BC04**. In its EAPA allegation, Cambria did not allege that SCS evaded the Orders by importing from its sole Vietnamese supplier of countertops, Engga Company Limited ("Engga"); however, as further discussed below, SCS later subsequently learned that Engga functions as the sales and export department of Kales, who manufactured the countertops. And there were a few instances where Kales' name appeared on commercial and shipping documents as opposed to Engga's, despite the fact that SCS had only placed orders with, and made payment to, Engga.

In its allegation, Cambria submitted SCS' import data obtained from [          ] – a data subscription service company - to establish that SCS was importing QSP from Kales. *Id.* at 6 & Exhibit 3, **PV01, BC04**. Cambria then alleged that Kales imported QSP from China into Vietnam and exported the same QSP to SCS in the United States within a short time frame. *See id.* at 5-8. In attempting to establish that SCS imported those same QSP from China, Cambria relied on the Kales' import data and Kales' export data, also from [          ], submitted in Exhibits 8 and 9, respectively, and picked five shipment line items of stone products of different product codes but the same specifications in length, width, and thickness. *Id.*

TRLED did not acknowledge receipt of the allegation until a month later, on October 6, 2022. *See* TRLED – Official Receipt Email (Oct. 6, 2022), **PD03**. Fifteen business days following the acknowledgement of receipt, CBP initiated the instant EAPA Investigation. *See*

TRLED - Initiation Checklist (Oct. 28, 2022), **PD05**; TRLED – Initiation Memo (Oct. 28, 2022), **PV06, BC06**. In November and December of 2022, TRLED placed two memorandums on the administrative record that contain a total of 72 attachments. *See* TRLED – Adding Information to the Administrative Record of EAPA 7783 (Nov. 30, 2022) ("November 2022 Memorandum"), **PV07, BC08**; TRLED – Adding Information to the Administrative Record of EAPA 7783 (Dec. 29, 2022) ("December 2022 Memorandum"), **PV07, BC08**.

In the meantime, a CBP Import Specialist issued CF-28s to SCS on Entry # [        ]9051, Entry # [        ]3193, Entry # [        ]6816, and Entry # [        ]6873. In the CF-28s, without any mention of the EAPA investigation, CBP requested voluminous documentation that neither originated from SCS nor were accessible to SCS normally, including, *inter alia*, SCS' supplier's raw material purchase documents, production documents, list of equipment, etc. SCS timely submitted documents that were in its possession, including entry summary documents and commercial documents normally included in the entry package, and any information it successfully obtained from its Vietnamese supplier Engga Company Limited ("Engga"). Unaware the CF-28s were anything other than routine, SCS did not retain counsel for this project. Several months later, those CF-28 responses were re-submitted onto the EAPA administrative record pursuant to CBP's request. *See* Ltr. from deKieffer & Horgan, re: SCS Refiling CF-28 Response (Mar. 17, 2023), **BC37, PV27**.

On January 26, 2023, CBP announced, for the first time to SCS via email, that EAPA Inv. 7783 was initiated on October 28, 2022, and that CBP has decided to impose Interim Measures. *See* TRLED – Notice of Initiation of Investigation and Interim Measures External email (Jan. 26, 2023) ("Email Notice of NOI & Interim Measures"), **PD10**. On February 2, 2023,

CBP released the Interim Measures Notice.  *See* TRLED - Notice of Initiation and Interim

Measures – EAPA Case 7783 (Feb. 2, 2023) ("Interim Measures Notice"), **PV11, BC10**.

In the Interim Measures Notice, CBP re-stated Cambria's allegations.  *See* Interim

Measures Notice at 2-5, **PV11, BC10**.  CBP identified certain documents missing from the CF-

28 responses but gave no consideration that those documents belong to the foreign exporters and

not SCS.  *Id.* at 7.  CBP also listed certain discrepancies after reviewing the documents, which

were later addressed and resolved in the Vietnamese companies' RFI responses.  In addition,

CBP compared documents in the CF-28 responses to attachments from the November 2022

Memorandum and December 2022 Memorandum and identified discrepancies.  *See generally, id.*

at 12-15.  Most of these portions of the Interim Measures Notice were redacted and undisclosed

to SCS because the text included confidential information that SCS was not permitted to review

throughout the administrative proceeding.

Further, CBP's imposition of interim measures included refiling entry summaries

submitted within the 300-day entry summary rejection period as Type 3 with cash deposits of

antidumping and countervailing duties amounting to 371.47 percent *ad valorem*, requiring live

entries and the aforementioned cash deposits, extending liquidation of entries entered before the

October 28, 2022 initiation date, and suspending liquidation of entries entered on or after the

October 28, 2022 initiation date.  *See* Email Notice of Interim Measures, **PD10**; Interim

Measures Notice at 16, **PV11, BC10**.

In the days following the Interim Measures, CBP released public versions or public

documents it received and/or collected, including the aforementioned EAPA allegation filed by

Cambria, the October 28, 2022 Initiation Memo, and November/December 2022 Memoranda, to

SCS.  At no time in the EAPA proceeding did CBP release a business confidential version of any record documents.

CBP then issued its initial Request for Information ("RFI"), to which SCS responded on March 1, 2023, and a supplemental RFI, to which SCS responded on May 9, 2023.  *See See* Ltr. from deKieffer & Horgan, re: SCS RFI Response (Mar. 1, 2023) ("SCS RFI Rsp."), **PV34, BC20-21**; Ltr. from deKieffer & Horgan, re: SCS Supplemental RFI Response (May 9, 2023) ("SCS Supp. RFI Rsp."), **PV43, BC31**.  CBP also issued both RFIs and Supplemental RFIs to three Vietnamese companies, Engga Company Limited ("Engga"), Kales Quartz Company Limited ("Kales"), Strry Manufacturing Company Limited ("Strry"), to which the companies responded fully.  *See* Ltr. from deKieffer & Horgan, re: Engga and Kales Consolidated RFI Response (Mar. 1, 2023) ("Engga & Kales RFI Rsp."), **PV33, BC15**; Ltr. from deKieffer & Horgan, re: Strry RFI Response (Mar. 1, 2023) ("Strry RFI Rsp."), **PV35, BC26**; Ltr. from deKieffer & Horgan, re: Kales and Engga Supplemental RFI Response (May 15, 2023) ("Kales & Engga Supp. RFI Rsp."), **PV44, BC34;** Ltr. from deKieffer & Horgan, re: Strry Supplemental RFI Response (May 15, 2023) ("Strry Supp. RFI Rsp."), **PV45, BC36**.

In SCS' response, it explained that the company was founded in 2018 as a project-based subcontractor that bids on kitchen and bath projects across industries but primarily on multi-family, senior living communities, and student housing.  *See* SCS RFI Rsp. at 2, **PV34, BC20**. In 2019, SCS learned of Engga through online research, and made a trip to Vietnam in person in [          ] to visit Engga and a few other Vietnamese quartz countertop producers.  *See* SCS Supp. RFI Rsp. at 7, **PV43, BC31**. During the visit, SCS toured Engga's factory to observe its production operations and equipment; the tour was accompanied by Engga's sales person named

Sofie, who then become SCS's main point of contact.  *See* SCS RFI Rsp. at 18-19, **PV34, BC20**.

Sofie informed SCS that the factory had obtained the necessary license and certifications to

operate their business in Vietnam, and showed SCS Engga's purported-business license. *See* SCS

Supp. RFI Rsp. at 6, **PV43, BC31**.  After the trip, SCS placed a test order with Engga.  Engga

performed well by producing countertops in accordance with the drawings and keeping within

the timeline set by the overall construction schedule; so SCS started using Engga as a vendor.

*See* SCS RFI Rsp. at 19, **PV34, BC20**.  SCS had intended to visit Engga every six to eight

months to oversee production but was unable to do so due to the unprecedented COVID-19

pandemic.  *Id.* As a result, SCS did not learn until well into this EAPA investigation that the

factory it toured [

].

          As to SCS's purchase and sales process, prior to a project, the General Contractor sends

SCS and other subcontractors "Intention To Bid" for kitchen and/or bath for the entire project.

*See id.* at 15.  After bidding and if the project is awarded to SCS, SCS sends Engga customer

approved "Shop Drawings" that specify the color and dimensions for all countertops and sinks

units in one project.  *Id.* at 15-16.  Engga then provides SCS with a full project pricing in the

form of a Proforma Invoice for SCS' approval; and the approved Proforma Invoice serves as the

order confirmation.  *Id.*  Then, once the products are produced, Engga issues the commercial

invoice, packing list, and bill of lading to SCS and receives payment from SCS.

          On the side of the Vietnamese companies, in 2019, three former colleagues at a Chinese

QSP producer Xiamen Lexiang Import & Export Co., Ltd. ("Xiamen Lexiang") saw a business

opportunity and decided to leave Xiamen Lexiang and start their own business in Vietnam.  *See*

Kales & Engga Supp. RFI Rsp. at 3, **PV44, BC34.**  As foreigners, they looked for Vietnamese people as partners in setting up Kales, Engga and Strry, so a few Vietnamese shareholders were brought into the companies.  *Id.*  The Chinese team is the one that mainly supervised the companies' day-to-day operations.  *Id.*; *see also, id.* at 10-11.  Of the three factories, Strry produces quartz slabs from mainly quartz powder/quartz sand, resin, and titanium dioxide, while Kales produces countertops from quartz slabs. *See* Strry RFI Rsp. at 6 & Exhibit 8, **PV35, BC26**; Engga & Kales RFI Rsp. at 16-17, **PV33, BC15.**  Strry supplies quartz slabs to Kales but both companies also have other customers/suppliers, as shown on their respective customer and supplier list. *See* Strry RFI Rsp. at Exhibit 14, **PV35, BC26**; Engga & Kales RFI Rsp. at Exhibit 26, **PV33, BC15**.

Kales was first registered under the name "Engga" in August 2019.  *See* Engga & Kales RFI Rsp. at 2-4, **PV33, BC15.**  In June 2021, the former Engga company went through a simple name change, to Kales.  *Id.* By then, all customers know the factory by the name "Engga", so management elected to register the current Engga company (in June 2021) to function as Kales' sales and export department, with no other stand-alone business activities. *Id.*  The companies further explained that Kales tracks its production orders by purchase order/proforma invoice numbers, so they are able to segregate countertops that were produced from Chinese quartz slabs sourced from various companies, and the countertops that were produced from Vietnamese quartz slabs sourced from various companies including Strry.  *See id.* at 16-17 & Exhibit 24.  In the sales listing of POI shipments to SCS, Kales marked the sales that were produced from Chinese quartz slabs, which were [

       ]. *Id.*  SCS acknowledged that those [              ] were likely covered merchandise, because although Kales processes them into countertops, the *QSP from China*

*Orders* cover both quartz slabs and quartz countertops.  Of course, SCS was not aware of this until it reviewed Engga and Kales' RFI responses filed in this EAPA proceeding.  Prior to this proceeding, SCS always understood that the countertops from Engga/Kales were fully manufactured in Vietnam in accordance with SCS's stated policy of not purchasing goods subject to AD CVD Orders.  *See* SCS RFI Rsp. at 29, **PV34, BC20-21**.  With that said, Kales maintained (and SCS submits) that the remaining [     ] shipments of quartz countertops produced solely from quartz slabs made in Vietnam are not covered merchandise.

Kales' designation of covered merchandise versus non-covered merchandise shipments is supported by other record evidence.  In the RFI issued to Engga and Kales, CBP sampled a total of 16 shipments (including 3 sales from Kales, and 13 sales from Engga) to SCS (i.e., the "Appendix I Shipments").  *See* Engga & Kales RFI Rsp. at Kales Appendix I and Engga Appendix I, **PV33, BC15.**  Amongst the 16 Appendix I Shipments, 5 of them were shipped prior to the POI.  Engga provided the requested sales documents including email communications with SCS as related to each shipment and payment.  *See id.* at 18-19 & Exhibits 15.1 – 15.16.  And for the Appendix I shipments that fell within the POI (i.e., a total of 11 shipments), Kales provided the production records and quartz slabs purchase records, and Strry's raw materials purchase records where applicable.  *Id.* at 21-22 & Exhibits 16.1-16.11, Exhibits 27.1-27.11.

On April 20, 2023, CBP notified counsel that it will verify Engga, Kales, and Strry on June 21-23 & 26-30, 2023 via Email.  On June 2, 2023, CBP postponed the written arguments and rebuttal written arguments until after the scheduled verification.  *See* TRLED, EAPA 7783 – Extension of Written Arguments Deadline (June 2, 2023), **PD46**.  On June 7, 2023, CBP revised the verification date to June 22-23 & 26-30, 2023, via Email.  On June 9, 2023, the companies informed CBP that they have decided not to participate in the scheduled verification as the

companies have extremely limited resources left, after losing the vast majority of their business since the imposition of interim measures.  *See* Ltr. from deKieffer & Horgan, re: Foreign Manufacturers Notice of Intent Not to Participate in Verification (June 9, 2023), **PD47**.

On June 14, 2023, CBP set the deadlines for the submission of written arguments and rebuttal written arguments.  *See* TRLED, EAPA 7783 – Extension of Written Arguments Deadline (June 14, 2023), **PD48**.  SCS and Cambria each filed affirmative written arguments and rebuttal written arguments.  *See* Ltr. from deKieffer & Horgan, re: SCS Written Argument (June 26, 2023), **PV52, BC41**;  Ltr. from Schagrin Associates on behalf of Cambria: Written Comments (June 26, 2023), **PD51**; Ltr. from deKieffer & Horgan, re: SCS Response to the Written Arguments Filed by Alleger (July 11, 2023), **PV54, BC42**; Ltr. from Schagrin Associates on behalf of Cambria: Response to Written Comments (July 11, 2023), **PD53**.

On June 14, 2023, unbeknownst to SCS, CBP uploaded a memorandum that contained 80 attachments, split into two PDF files, to the EAPA web-portal.  *See* TRLED – Adding Information to the Administrative Record of EAPA 7783 (June 14, 2023) ("June 2023 Memorandum"), **PV49-50, BC37-40**.  While certain attachments are public documents, others contain redacted business confidential information or are redacted in their entirety, for which the contents were not disclosed to SCS and to which SCS was unable to respond in a meaningful manner in the agency proceeding below.  *See id.*  Critically, because CBP never served the memorandum with attachments on SCS, SCS did not have any opportunity to even respond to the public documents.  SCS was completely unaware that the June 2023 Memorandum was added on the EAPA web-portal System until long after the 10-day rebuttal deadline had passed and written arguments had been filed.

On August 31, 2023, CBP made an affirmative determination of evasion.  *See* TRLED –
EAPA Case 7783, Notice of Determination as to Evasion (Aug. 31, 2023) ("August 31
Determination"), **PV56, BC44.**  CBP purportedly compared the Vietnamese Exporters' and
Strry's RFI and supplemental RFI responses to attachments within the November 2022
Memorandum and June 2023 Memorandum, with blocks of discussion bracketed and not
available to SCS at the time, and determined that the Vietnamese companies failed to report 12
affiliated companies, thereby impeding the investigation.  *See id.,* at 11-23.  CBP also contended
that Kales and Engga's response that only [

                           ] in USD were produced from Chinese-origin quartz slabs was
undercounted.  *Id.* at 26.

Additionally, CBP found Kales' counting of QSP shipments to SCS that were entirely
manufactured in Vietnam unverified and unreliable, as Kales' refusal of verification prevented
CBP from "discussing and verifying the information on the case record and making on-site
requests for information" or to "issue more supplemental RFI questions in lieu of the planned
verification discussion."  *Id.* at 29.  CBP also noted, for the first time, certain perceived
inconsistencies and irregularities in the Exporters' production documents.  *Id.* at 32-36.  CBP
stated that it was applying adverse inferences with respect to the Exporters, though "enough
evidence exists on the record to determination that there is evasion without its use."  *Id.* at 38.
CBP also used these inconsistencies as the reason to discount the shipment-specific production
documents Kales submitted.  *Id.* at 46-48.

Proceeding to address other arguments raised in SCS' and Cambria' written arguments,
CBP determined that it is adverse to Engga's and Kales' interests to find that the QSP they
exported be considered Chinese-origin and therefore it will apply that inference notwithstanding

the "collateral consequences" on SCS.  *Id.* at 40-42.  CBP dismissed two of SCS' procedural challenges, finding that the timing of alerting SCS of the investigation months after the case was initiated was permitted under the EAPA statute and regulation, and that there was no due process violation caused by CBP withholding confidential information in the three memoranda CBP placed on the record and used against SCS in the August 31 Determination, because its determination of evasion "relies in large part on information that SCS, Kales/Engga, and Strry submitted to CBP."  *Id.* at 42-44.  Further, CBP contends that it need not find that SCS acted with any level of culpability in reaching an affirmative finding of evasion.  *Id.* at 45-46.

On October 16, 2023, SCS timely filed an administrative review request, followed by rebuttal filed by the EAPA Alleger. *See* Ltr. from deKieffer & Horgan, re: SCS Request for Administrative Review (Oct. 16, 2023), **PV59, BC46**; Ltr. from Schagrin Associates, re: Alleger's Response to Request for Administrative Review (Oct. 31, 2023), **PD62**.

On January 11, 2024, CBP issued its final administrative review determination, affirming CBP's August 31 Determination of evasion.  *See* CBP RR, re: Enforce and Protect Act ("EAPA") Case Number 7783; Certain Quartz Surface Products From the People's Republic of China: Antidumping and Countervailing Duty Orders, 84 Fed. Reg. 33,053 (Dep't of Commerce July 11, 2019); Superior Commercial Solutions LLC; 19 U.S.C. § 1517 (Jan. 11, 2024) ("Final RR Determination"), **PV68; BC47.**

In doing so, CBP did not rely on any of the three CBP memoranda that contained redacted documents (most of which relate to the alleged 12 unreported affiliates of Engga, Kales, and Strry) to avoid a remand based on the intervening CAFC opinion in *Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) (finding that CBP's failure to provide unredacted information not provided by the importer itself, but used against the importer in CBP's

affirmative finding, "is a clear violation of due process."). Likewise, the Final RR Determination did not rely on the inconsistencies and discrepancies noted in the August 31 Determination, presumably because SCS demonstrated that TRLED's claim that the production records for Appendix I Shipments accounted for only a small amount of slabs produced and a small amount of countertops produced was due to TRLED's error in using the incorrect units of measure (UOM). *See* SCS - Req. for Administrative Review at 24-27, **PV59, BC46**. With the correct UOM used, the piece number of the slabs and countertops produced match each of the shipments CBP examined. *Id.*

Nonetheless, CBP found that SCS evaded the QSP from China Orders because SCS itself acknowledged in its written arguments and request for administrative review (based on the Joint Defense Agreement between SCS and the Vietnamese companies, that allowed SCS to review their RFI responses without an Administrative Protective Order) that some portion of the countertops SCS entered were produced from Chinese quartz slabs. *See* Final RR Determination at 11-12, **PV68; BC47.** CBP claimed that it did not need to address whether the [    ] shipments that Kales designated as countertops produced entirely from Vietnamese-origin slabs contained Vietnamese-origin slabs or Chinese origin slabs because CBP was not required to conduct an entry-by-entry review of SCS' entries. *Id.* at 12 & 15-16.

CBP continued to apply adverse inferences to the Vietnamese companies for refusing verification, citing that it did not need to avoid the "collateral consequences" to a fully cooperating party – SCS. *Id.* at 13-15. Further, CBP rejected SCS' argument that the EAPA Statute imposed a culpability or intent element, and whether SCS exercised reasonable care in declaring the entries from Engga/Kales Type 1 without AD CVD duties was irrelevant. *Id.* at 16-17. CBP also rejected the argument that TRLED should have served SCS the June 2023

Memorandum, *id.* at 17; however, since CBP did not rely on the June 2023 Memorandum in its Final RR Determination, SCS understands that this issue is moot.[2]  Lastly, CBP claimed that it provided notice of interim measures 95 days after the initiation pursuant to the regulation, which was allowed under the Statute.  *Id.* at 17-18.

## IV.    SUMMARY OF ARGUMENT

The Court should remand CBP's Final RR Determination of evasion for CBP's failure to initiate EAPA Inv. 7783 within the statutory 15-business-day deadline. CBP also failed to notify SCS of the initiation at the time of initiation.  Both actions CBP took were consistent with its regulation promulgated under an Interim Final Rule, but inconsistent with the law.  The 147-day delay substantially prejudiced SCS and can only be remedied by excluding entries entered during those 147 days from any of the interim measures or final measures applying AD/CVD duties. Further, CBP is tasked to determine whether "covered merchandise" has been entered through evasion, and apply enforcement measures to "such covered merchandise."  19 U.S.C. § 1517(d). CBP's broad-sweeping affirmative evasion determination, however, failed to comply with the implicit requirement of the law that the determination be made on an entry-by-entry basis.

CBP failed to adhere to the statutory definition of evasion, which requires CBP to make a finding that the targeted importer intentionally entered covered merchandise through evasion before making an affirmative determination. Record evidence establishes that SCS exercised reasonable care in making entry the way it did.  As such, the case should be remanded to remove

---

[2] We note that CBP has since changed their EAPA Portal; CBP now sends out an automated email alert - similar to the email alerts sent from IA Access utilized by the Department of Commerce and PACER system utilized by the Federal Courts - to interested parties when a new document is placed on the record by CBP.

all AD/CVD measures against SCS.  Lastly, after finding that Engga/Kales failed to cooperate to

the best of their ability, CBP unjustly drew adverse inferences that were only adverse to SCS, the

fully-cooperating party.

## V.    ARGUMENT

### A.    CBP Violated the Law When It Failed to Initiate The Case Within The Statutory Timeline And Failed to Notified SCS of the Initiation of EAPA Inv. 7783 At The Time of Initiation.

As discussed above in factual background, in this case, CBP received Cambria's EAPA

Allegation on September 8, 2022.  *See* EAPA Allegation, **PV1; BC4**.  CBP, however, did not

acknowledge "receipt" of the allegation until October 6, 2022. TRLED – Official Receipt Email

(Oct. 6, 2022), **PD3**.  Fifteen (15) business days after October 6, 2022, on October 28, 2022,

CBP initiated EAPA Inv. 7783, finding that the information presented in Cambria's allegation

reasonably suggest that SCS entered covered merchandise through evasion.  TRLED – Initiation

Memo (Oct. 28, 2022), **PV6, BC6.**  Ninety (90) days after the initiation, on January 26, 2023,

CBP sent SCS a one-page email and announced for the first time that an EAPA investigation

against SCS had been initiated several months ago, and that CBP is imposing interim measures

based on a reasonable suspicion that evasion occurred.  *See* Interim Measures Notice, **PV11,**

**BC10**.  SCS challenges two actions on CBP's part.  First, CBP acted contrary to law when it

failed to initiate the EAPA investigation 15 business days after it received Cambria's September

8, 2022 allegation, i.e., on September 29, 2022.  Second, CBP's failure to notify SCS that an

investigation had been initiated at the time of initiation violated SCS' due process right to timely

notice.

CBP has a statutory deadline to follow upon receiving an EAPA Allegation.  In pertinent part, the Statute states:

> **(b) Investigations**
>> **(1) In general**
>>
>> Not later than 15 business days after receiving an allegation described in paragraph (2) or a referral described in paragraph (3), the Commissioner shall initiate an investigation if the Commissioner determines that the information provided in the allegation or the referral, as the case may be, reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion.
>>
>> **(2) Allegation described**
>>
>> An allegation described in this paragraph is an allegation that a person has entered covered merchandise into the customs territory of the United States through evasion that is—
>>
>>> (A) filed with the Commissioner by an interested party; and
>>>
>>> (B) accompanied by information reasonably available to the party that filed the allegation.

19 U.S.C. §§ 1517(b)(1)-(2).

The Statute is clear that CBP must determine within 15 business days after receiving an allegation, based on information provided in the allegation, whether to initiate the EAPA investigation.  In reality, EAPA allegations are all filed electronically with CBP, whether it through an email to the EAPA Team's designated email account in the earlier days of EAPA, or since April 1, 2021 when CBP announced that all parties should file EAPA allegations on a designated website (i.e., the EAPA Portal).  Therefore, once an EAPA allegation is filed with CBP, it is received by CBP instantly.  Congress was clear and unambiguous, and it did not afford CBP the discretion to create an extra step involving an undefined amount of time to consider whether the allegation is proper.

Even assuming that there is ambiguity as to when the 15-business-day deadline starts,

which SCS submits that there is not, it is a question of law that this Court owes no deference to

CBP.  In its recent opinion overturning *Chevron*, the Supreme Court held that based on

jurisprudence and the Administrative Procedure Act ("APA"), Courts owe no deference to the

agency with respect to pure legal question. *See generally*, *Loper Bright Enters. V. Raimondo,*

144 S. Ct. 2244 (2024).  In relevant parts, the Court reasoned:

> The Framers {} envisioned that the final "interpretation of the laws" would be
> "the proper and peculiar province of the courts." *Id.*, No. 78, at 525 (A.
> Hamilton). …… To ensure the 'steady, upright and impartial administration of the
> laws," the Framers structured the Constitution to allow judges to exercise that
> judgment independent of influence from the political branches." (citation
> omitted). *Id.*, at 522; *see id.*, at 522-524; *Stern v. Marshall*, 564 U. S. 462, 484,
> 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).
>
> … And in the following decades, the Court understood "interpret[ing] the laws, in
> the last resort," to be a "solemn duty" of the Judiciary. *United States v. Dickson*,
> 40 U.S. 141, 15 Pet. 141, 162, 10 L. Ed. 689 (1841) (Story, J., for the Court).
> When the meaning of a statute was at issue, the judicial role was to "interpret the
> act of Congress, in order to ascertain the rights of the parties." *Decatur v.
> Paulding*, 39 U.S. 497, 14 Pet. 497, 515, 10 L. Ed. 559 (1840).
>
> ……
>
> *Chevron* cannot be reconciled with the APA, as the Government and the dissent
> contend, by presuming that statutory ambiguities are implicit delegations to
> agencies. See Brief for Respondents in No. 22-1219, pp. 13, 37-38; *post*, at 4-15
> (opinion of KAGAN, J.). …
>
> ……
>
> …[W]hen faced with a statutory ambiguity in [] a case, the ambiguity is not a
> delegation to anybody, and a court is not somehow relieved of its obligation to
> independently interpret the statute. Courts in that situation do not throw up their
> hands because "Congress's instructions have" supposedly "run out," leaving a
> statutory "gap." *Post*, at 2 (opinion of KAGAN, J.). **Courts instead understand
> that such statutes, no matter how impenetrable, do—in fact, must—have a
> single, best meaning.** That is the whole point of having written statutes; "every
> statute's meaning is fixed at the time of enactment." Wisconsin Central Ltd. v.
> United States, 585 U. S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)
> (emphasis deleted). **So instead of declaring a particular party's reading
> "permissible" in such a case, courts use every tool at their disposal to**

**determine the best reading of the statute and resolve the ambiguity.**

*Id.,* at 2257-66. (Emphasis supplied).

In 2016, CBP promulgated the EAPA regulation 19 C.F.R. § 165.12,[3] and created the concept of "date of receipt," which it claims to trigger the 15-business-day deadline rather than the day that the allegation is filed.  However, this regulation (published as Interim Final Rule without the notice and comment process) gave CBP unchecked time between the alleger's filing of an EAPA allegation and its "date of receipt."  *See* 19 C.F.R. § 165.12.  This rule effectively allowed CBP to circumvent the statutory deadline to render a preliminary decision on imitation based on information presented in the allegation within the time allowed after receiving the allegation, *see* 19 U.S.C. § 1517(b), yet CBP merely stated that it needs such extra time to "determine that the EAPA allegation contains all the information and certifications required in § 165.11 of this part and transmits notice thereof together with a CBP-assigned control number to the party that filed the allegation." *See* CBP, *Investigation of Claims of Evasion of Antidumping and Countervailing Duties, Interim Regulations*, 81 Fed. Reg. 56,477, 56,480 (Aug. 22, 2016) ("CBP Interim Final Rule FR").

CBP's regulation 165.11, however, imposes the most rudimentary requirements for filing EAPA allegation. 19 C.F.R. § 165.11.  This provision of the regulation requires the alleger to provide its own name and email address, a statement that qualifies the alleger as an interested party, name and address of the targeted importer, description of alleged covered merchandise,

---

[3] On April 17, 2024, CBP's amended regulations went into effect. *See Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 89 Fed. Reg. 19,239 (Mar. 18, 2024). Because CBP's regulations that were in effect in 2022 and 2023 governed during EAPA Inv. 7783, all discussions on EAPA regulations herein refer to the old regulation.

applicable AD CVD orders, and information reasonably available to the alleger that supports its allegation. *Id.* All of these types of information should naturally be included in an EAPA allegation filed. Moreover, upon receiving an insufficient allegation, CBP does not impose any sanction or penalties such as dismissing the allegation with prejudice. Indeed, "{i}f an allegation is found to be insufficient, the party who filed the allegation will be notified of the insufficiencies and be given the opportunity to remedy them." CBP Interim Final Rule FR at 56,480.

In other words, CBP could have easily rejected the improperly-filed EAPA allegation and asked the alleger to refile with the identified deficiencies remedied, at any time as a new allegation and restart the 15-business-day clock. There is no rational connection between CBP's reasoning and its CBP's decision to indefinitely prolong the 15-business-day statutory deadline by creating this "date of receipt." Not only that, there is no evidence that CBP was thorough in its consideration. CBP gave a one-sentence nonsensical reason for it. As such, not only is CBP's action contrary to the plain meaning of the Statute, it also does not survive the more deferential *Skidmore* standard of review. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that the Court would determine the amount of deference to give an agency depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Second, CBP's reliance on the silence of the Statute and its regulation to not provide notice of initiation to SCS until it imposes interim measure is misplaced. In its Final Administrative Review Determination, CBP claimed that SCS was not entitled to any notice

under the Statute because "{t}he EAPA statute contains only one notification requirement regarding determinations, which pertains to allegers and not importers …" Final RR Determination at 17, **PV68, BC47,** citing 19 U.S.C. § 1517(c)(4).  CBP further points to its regulation that states it will "issue notification of its decision to initiate an investigation to all parties to the investigation no later than 95 calendar days after the decision has been made{.}" *Id.*, at 18, citing 19 C.F.R. § 165.15(d)(1).

It is true that the Section 1517(c)(4) is the only provision in Section 1517 that explicitly provides for notification of the TRLED Final Determination, and CBP is only required to provide such notification to the alleger.  However, it is difficult to fathom how Congress intended for CBP to administer EAPA proceedings without providing any notice to the target importer, at any time during its 300-day investigation.  To read the silence in the Statute to mean that the Statute does not require notice to the targeted importer, and apply it in that manner, CBP would not need to give any notice to SCS that an EAPA investigation had been initiated, nor is CBP required to provide SCS written notice of all consequential actions including decision to initiate under Section 1517(b)(1), decision to impose interim measures under Section 1517(e), TRLED's determination made under Section 1517(c)(1), and RR's administrative review determination made under Section 1517(f).  *See generally*, 19 U.S.C. § 1517.  To do so would be a profound violation of the procedural due process rights of the targeted importers, which the CAFC has confirmed that importers targeted in EAPA proceeding enjoy.  *Royal Brush Mfg.*, 75 F.4th at 1257 ("We have previously held that importers in antidumping proceedings are entitled to procedural due process. The government agrees that importers in evasion proceedings enjoy rights to procedural due process."). If CBP is free to withhold notice of its decisions and its

reasoning to take the actions it took at any point up to and including the administrative review decision, the targeted importer would be deprived of the fundamental procedure due process right, "to notice and a meaningful opportunity to be heard." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012), quoting *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 756, 139 L. Ed. 2d. 695, 700 (1998).

"When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *California v. Arizona*, 440 U.S. 59, 66 (1979), quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932). Reading the EAPA Statute as a whole, it is more plausible that Congress's presumed that CBP will inform the targeted importers of the investigation when it makes each of the consequential determination (*see* 19 U.S.C. §§ 1517(b)(1), (c)(1), (e), (f)), whereas CBP does not need to inform the EAPA alleger of any of its decision but for the TRLED final determination of evasion, as specified in 19 U.S.C. § 1517(c)(1). *Id.,* at §§1517(c)(1) & (4).

In the FR notice promulgated to implement EAPA, CBP stated that:

Section 165.15 specifies that CBP will decide if an investigation is warranted based on whether the allegation made under § 165.11 or a request from a Federal agency made under § 165.14 reasonably suggests that evasion has occurred ( *i.e.,* the covered merchandise at issue has been entered into the customs territory of the United States through evasion). The deadline to decide whether to initiate an investigation is 15 business days from the date of receipt by CBP of a properly filed allegation or request. If CBP determines that it will initiate an investigation, it will notify all known parties to the investigation no later than 95 calendar days after the initiation of the investigation. **CBP will use this 95 calendar-day period in order to investigate the allegation. This timeframe for notification takes into account the dual considerations of transparency and the need to provide adequate time for CBP's investigatory process.** Alternatively, if CBP determines that it will not initiate an investigation, it will notify the interested

party who filed the allegation within five business days of that determination.

CBP Interim Final Rule FR, 81 Fed. Reg. at 56,480. (Emphasis supplied).

As before, there is no rational connection between the choices CBP made and the reasoning provided. Announcing to the importer the initiation of the EAPA proceeding at the time of initiation indeed promotes transparency. It also does not diminish in any way CBP's need for adequate time for the investigatory process. CBP has a set amount of time between the initiation and imposition of interim measures - 90 days – to investigate and decide whether it should impose interim measures. That timeline does not change, regardless of whether CBP informs the targeted importer of the initiation or not.

CBP has no conceivable interest in keeping the initiation of EAPA investigation secret for 90 days before informing SCS of the initiation. Once CBP informed SCS of the EAPA investigation on January 26, 2023, SCS immediately ceased importing from Engga and turned around shipments that were on the water. It was commercially prohibitive for SCS to enter goods at a combined AD CVD cash deposit rate of 371.47 percent. Had CBP notified SCS of the initiation when it actually initiated, SCS would have stopped importing at that time and immediately would have turned shipments around.

The purpose of the EAPA law is not to maximize the Government's revenue, but rather *prevent* the evasion of AD and CVD Orders. *See* Trade Facilitation and Trade Enforcement Act of 2015, Title IV, "Prevention of Evasion of Antidumping and Countervailing Duty Orders", Public Law 114-125 (Feb. 24, 2016) ("TFTEA"). Section 411 of the TFTEA establishes CBP's "Trade Remedy Law Enforcement Division," which shall be dedicated – (A) to the development

and administration of policies to **prevent** and counter evasion . . ..” TFTEA Sec. 411(a)(3)(A)

(Emphasis supplied). Meanwhile, the purpose of the U.S. AD/CVD law is to preserve “the

ability of U.S. industries to obtain meaningful relief from dumped imports into the U.S. market

and ensures U.S. exporters fair treatment in foreign antidumping investigations.” Uruguay

Round Agreements Act ("URAA"), Statement of Administrative Action, H.R. Rep. No. 103-316

(1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4151, 1994 WL 16137731 ("SAA"). Certainly,

the importer’s **immediate cessation** of importing subject merchandise that the alleger claims to

be covered merchandise subject to an AD or CVD Order achieves the purpose of the U.S.

AD/CVD law.

     Moreover, CBP is enforcing Commerce’s AD/CVD laws with an important distinction:

New AD/CVD petitions or circumvention allegations are prospective only; whereas CBP’s

actions in EAPA proceedings have significant retroactive effect and capture all unliquidated

entries that the importers have made. Thus, there is no “safe harbor” for importers that would be

created by CBP timely notifying the importers of the investigation. SCS only wanted to comply

with the law and has demonstrated full cooperation in attempting to do so throughout this

investigation. There is no reason to allow, through CBP’s silence, importers such as SCS to

accrue 370 percent of entered value liabilities for months once CBP secretly initiates the

investigation.

     Whether or not the allegation ultimately proves to be true, the U.S. importer cannot

afford to continue importing the covered merchandise, and the EAPA alleger receives immediate

relief from the perceived threat of the foreign imports. Timely notice to SCS would not have

impeded CBP’s investigation in any way because all documents, including the business

documents between SCS and Engga, and other relevant documents normally in the possession of

the foreign producers such as production records already existed at that time.  Such timely notice

is a basic requirement of the importer's procedural due process right to timely notice, in addition

of being afforded an opportunity to defend the allegation against them.  *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is **notice**

**reasonably calculated, under all the circumstances, to apprise interested parties of the**

**pendency of the action** and afford them an opportunity to present their objections.") (Emphasis

supplied).  As such, the Court should find CBP's failure to inform SCS the initiation of EAPA

Inv. 7783 at the time of initiation a violation of SCS' due process right.

It is an established principal that a "simple failure of an agency to follow a procedural

requirement does not void subsequent agency action," unless the plaintiff "establish that it was

substantially prejudiced by Customs' noncompliance." *Dixon Ticonderoga Co. v. United States*,

468 F.3d 1353, 1355 (Fed. Cir. 2006).  In discussing substantial prejudice, the *Dixon* court

analyzed another case in detail; in particular, the Court found that the foreign exporter PAM who

did not receive timely notice of a Petitioner-filed administrative review request was not

substantially prejudiced because "[u]ltimately, PAM was given a 29-day extension to file its

response to the questionnaires subsequently provided by Commerce", so "'the total amount of

additional time Commerce granted to PAM … far exceeded the 17 days PAM lost due to the lack

of service" by the domestic producer.'" *Id.,* at 1355-56, citing *PAM, S.p.A. v. United States*, 463

F.3d 1345, 1349 (Fed. Cir. 2006).  In this case, CBP not only failed to follow the EAPA Statute

to initiate within 15 business days of receiving the EAPA allegation, CBP also did not inform

SCS of the initiation until 90 days after the initiation. Had CBP acted in accordance with law, CBP would have initiated the EAPA investigation by September 29, 2022, and informed SCS on that day.  Following that, SCS would have stopped making any of the entries it made between September 29, 2022 and January 26, 2023, consisting of more than a dozen of entries that are currently suspended by CBP pursuant to EAPA Inv. 7783.  As with Commerce's action in *PAM*, CBP can only remedy the substantial prejudice SCS suffered by lifting the enforcement action it imposed on the portion of SCS' entries, which SCS would not have entered but for CBP's violation of the law.

> **B.    CBP Erred in Finding That It Need Not Make An Entry-By-Entry Determination.**

In its determination, CBP sustained the August 31 Determination based on SCS conceding that [    ] out of the [    ] shipments by Kales/Engga to SCS in the POI contained Chinese quartz slabs, and "RR does not need to address whether the other [    ] shipments contained Vietnamese-origin or Chinese-origin slabs."  Final RR Determination at 12, **PV68; BC47**; *see id.*, at 15-16 (stating that CBP is not required to conduct an entry-by-entry review but instead determines whether there is substantial evidence within the administrative record, as a whole, that evasion has occurred).  CBP's interpretation of the EAPA review is inconsistent with the EAPA Statute, which states:

> **(d) Effect of determinations**
>
> **(1) In general**
>
> If the Commissioner makes a determination under subsection (c) that covered merchandise was entered into the customs territory of the United States through evasion, the Commissioner shall—
>
> **(A)**

**PUBLIC VERSION**

(i) suspend the liquidation of unliquidated entries of such covered merchandise that are subject to the determination and that enter on or after the date of the initiation of the investigation under subsection (b) with respect to such covered merchandise and on or before the date of the determination; or

(ii) if the Commissioner has already suspended the liquidation of such entries pursuant to subsection (e)(1), continue to suspend the liquidation of such entries;

**(B)** pursuant to the Commissioner's authority under section 1504(b) of this title—

(i) extend the period for liquidating unliquidated entries of such covered merchandise that are subject to the determination and that entered before the date of the initiation of the investigation; or

(ii) if the Commissioner has already extended the period for liquidating such entries pursuant to subsection (e)(1), continue to extend the period for liquidating such entries;

…

**(D)** require the posting of cash deposits and assess duties on entries described in subparagraphs (A) and (B) in accordance with the instructions received from the administering authority under paragraph (2); and

……

19 U.S.C. §§ 1517(d)(1)(A) – (B) & (D).

For CBP to suspend the liquidation of "entries of such covered merchandise," extend the liquidation of "such covered merchandise," and require the posting of cash deposits and assess duties on "entries described in subparagraphs (A) and (B)," CBP must first make a determination the universe of entries of the alleged-covered merchandise subject to the EAPA investigation. Covered merchandise is defined as merchandise subject to an antidumping duty order or a countervailing duty order, in this case, the *QSP from China Orders*. *See id.*, § 1517(a)(3).

Record evidence demonstrates that only [                    ] POI shipments contain countertops manufactured using Chinese quartz slabs. Kales fabricates quartz countertops based

on orders, and there it can trace all shipments to SCS back to a certain quartz slab purchases and

ascertain whether it was purchased from Vietnam or from China.  *See* Engga & Kales RFI Rsp.

at 16-17, **PV33, BC15**.  In the sales listing of POI shipments to SCS, Kales marked the sales that

were produced from Vietnamese quartz slabs, which were [                    ].  *Id.*, at

Exhibit 24.  Moreover, Kales' designation of covered merchandise versus non-covered

merchandise shipments is supported by other record evidence, in that Kales provided detailed

countertop production records, quartz slabs purchase documents, quartz slabs production

documents (for the slabs sourced from Strry).  *Id.,* at Exhibits 15.1 – 15.16, Exhibits 16.1-16.11,

Exhibits 27.1-27.11.  In its Final RR Determination, CBP no longer contended that there are

inconsistencies or discrepancies in these records.  As such, CBP should have found that these

[   ] shipments SCS entered that were manufactured using Vietnamese-origin slabs were not

"covered merchandise," and refrain from imposing any measures under 19 U.S.C. § 1517(d) to

these entries.

### C.    SCS Did Not Evade the AD CVD Orders With Intent Or Culpability.

SCS detailed the due diligence it had undertaken prior to start purchasing from Engga,

including that its management visited Engga in [          ], prior to making the first trial

purchase, and observed the production process and equipment.  *See* SCS RFI Rsp*.* at 18 &

Exhibits 20, **PV34, BC20-21**. [




                                                                      ], after

reviewing Kales and Engga's consolidated RFI and Supp. RFI responses.  *Compare* SCS Supp.

RFI Rsp. at 6, **PV34, BC20-21**, *with* Kales & Engga Supp. RFI Rsp. at 10, **PV44, BC34**.  After selecting Engga as a vendor, SCS had planned to visit Engga every six to eight months but was unable to do so due to the COVID pandemic and associated grave health risks and travel restrictions in place.  *See* SCS RFI Rsp. at 19, 28 & 30, **PV34, BC20-21**.

At the time that SCS placed orders with and received shipments from Engga, it exercised reasonable care in declaring the quartz countertops products of Vietnam and entered the entries Type 1.  SCS did not intentionally or negligently enter covered merchandise by an act that is material and false, or any omission that is material.  Indeed, SCS was not aware that the Engga/Kales imported *any* quartz slabs from China.  SCS always understood that the countertops from Engga/Kales were fully manufactured in Vietnam in accordance with SCS's stated policy of not purchasing goods subject to AD CVD Orders.  *See id.,* at 29.  This is supported by the hundreds of pages of email communications between SCS and Engga placed on the record upon CBP request.  *See* SCS – RFI Rsp. at 20-25, Exhibits 21-33; SCS – Supp. RFI Rsp. at 2-3, Exhibits SQ-2 – SQ-7 and Exhibit SQ-21.  At no time did Engga indicate to SCS that they were purchasing Chinese quartz slabs for fabrication in Vietnam.

"A determination of evasion requires three elements: (1) entering covered merchandise into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material; and (3) that results in any applicable cash deposit or other security being reduced or not applied to the merchandise." *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378, 1383 (Ct. Int'l Trade 2022), *citing* 19 U.S.C. § 1517(a)(5)(A).  Record evidence demonstrates that the statutory criteria that SCS made false statements at entry is not met in this EAPA investigation.

In *Diamond Tools Tech. LLC's* first remand, the Court found CBP's EAPA

Determination that the importer, DTT USA, entered covered merchandise by means of a material

and false statement or a material omission, in declaring the covered merchandise Thai-origin

instead of Chinese-origin to be unreasonable. *Diamond Tools Tech. LLC v. United States*, 545 F.

Supp. 3d 1324, 1356 (Ct. Int'l Trade 2021). As the Court noted: "'False' is defined as: 'Untrue .

. . Deceitful . . . Not genuine; inauthentic . . . What is false can be so by intent, by accident, or by

mistake . . . Wrong; erroneous . . . .' *False*, BLACK'S LAW DICTIONARY (11th ed. 2019). An

'omission' is defined as: 'A failure to do something; esp., a neglect of *duty* . . . [t]he act of

leaving something out . . . [t]he state of having been left out or of not having been done . . .

[s]omething that is left out, left undone, or otherwise *neglected*.' *Omission*, BLACK'S LAW

DICTIONARY (11th ed. 2019)." {emphasis in original}.

Furthermore, the Court found:

Customs in the Final Determination stated that "[b]ecause EAPA does not have a knowledge requirement for evasion as defined under 19 CFR 165.1, there is no requirement that the importer know of the material or false statement and, thus, [Customs] does not need to determine any level of culpability only that evasion occurred with entry." Similarly, citing 19 C.F.R. § 165.1 and 19 U.S.C. § 1517(a)(5), Customs in the Final Administrative Determination found that "a finding of evasion does not require an intentional or purposeful attempt by an importer to avoid duties."

Customs' statements are insufficient as a matter of law in at least three respects. First, Customs' comment that it "does not need to determine any level of culpability only that evasion occurred with entry" is unclear at best and potentially tautological. Second, even if Customs' statement were readily comprehensible, neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish "any level of culpability." *See* 19 U.S.C. § 1517(a)(5)(A); 19 C.F.R. § 165.1. Third, the plain language of Customs' decision does not address the issue of material omission, or material and false statement or act, which is covered both by the statute and Customs' regulations.

*Id.* at 1355 {internal citation omitted}.

**PUBLIC VERSION**

CBP cites this Court's holding in *Ikadan*, claiming that EAPA Statute is a strict-liability law which does not require any intent or culpability on SCS' part.  *See* Final RR Determination at 16-17, **PV68; BC47**.  CBP's reliance on *Ikadan* is misplaced, however, because the plaintiff in *Ikadan* presented the argument as a purely legal question, citing that it was a "good faith disagreement" with CBP about the scope of the Orders.  *See Ikadan Sys. United States, Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 91, Slip Op. 2023-88 at 13 (June 13, 2023).  In the instant case, SCS agrees with CBP to the extent that quartz countertops fabricated in Vietnam from Chinese-origin slabs are subject to the *QSP from China* Orders, and the ones fabricated in Vietnam with Vietnamese-origin slabs are not subject.  This was not a case of disagreement of the Orders, but a case where SCS received partially incorrect information and believed that none of the countertops it imported from Engga/Kales were produced from Chinese-origin slabs.

Similar to the importer-plaintiff in *Diamond Tools*, SCS did not make any material omission, or material and false statement or act, in the process of making entries, as required by the material and false statement or material omission provision of the statute.  *See Diamond Tools Tech.*, 545 F. Supp. 3d at 1353-55; 19 U.S.C. § 1517(a)(5)(A).  CBP's affirmative evasion determination where it failed to find that SCS evaded the Orders *intentionally* is inconsistent with the Statute and cannot be sustained.

**D.    CBP's Application of Adverse Inferences Is Unreasonable.**

The EAPA Statute provides that CBP "may" use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available to make the determination if the party failed to cooperate by not acting to the best of their ability.  *See* 19 U.S.C. § 1517(c)(3)(B).  Based on the Vietnamese companies' refusal to participate in

verification, CBP concluded that it should apply adverse inferences to find that all the countertops Engga/Kales exported during the POI to SCS are Chinese-origin, claiming that is the finding adverse to the Vietnamese companies.  *See* Final RR Determination at 13-15**, PV68, BC47**.  In doing so, CBP states that the collateral consequence on SCS is unavoidable. *Id.*

SCS does not dispute that the Vietnamese companies declined verification and failed to cooperate to the best of their abilities.  However, CBP cannot apply adverse inferences in a way that only affects SCS, who has fully cooperated in this investigation.

The EAPA statute provides that:

> (A) In general - If the Commissioner finds that a party or person described in clause (i), (ii), or (iii) of paragraph (2)(A) has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, the Commissioner may, in making a determination under paragraph (1), use an inference that is **adverse to the interests of that party or person** in selecting from among the facts otherwise available to make the determination.

19 U.S.C. § 1517(c)(3)(A) {emphasis supplied}.

 CBP's determination under adverse inferences, however, did precisely the opposite as directed by the Statute.  A determination that the countertops exported from Engga/Kales to SCS during the POI would all be considered Chinese-origin is not adverse to Engga/Kales, because they do not have an interest, financial or otherwise, in shipments they **have already sold** to SCS and that were entered into the United States by SCS.  To assess duties on all POI entries SCS made, the only party affected by this is SCS.

Instead, CBP can limit its application of adverse inferences to the Vietnamese companies by subjecting all their **future** shipments to the U.S. to the applicable rate from the QSP from China Orders.  For instance, the Department of Commerce places exporters who fail to cooperate

in a circumvention proceeding on a list consisting of companies not allowed to certify that their shipments to the U.S. were not inquiry merchandise found to be in the scope of the Order, therefore eliminating their ability to sell in the future absent a change in circumstances demonstrating elimination of the circumvention practice. CBP should have adopted a similar approach in this case. This will also satisfy any policy goal CBP would have to induce cooperation from foreign exporters in the future.

In its determination, CBP claimed that "similar to the importer in *Skyview*, SCS failed to provide information that would lessen the impact of adverse inferences against its own interests." Final RR Determination at 15, **PV68, BC47**, citing *Skyview Cabinet USA, Inc. v. U.S.*, Ct. No. 1:22-cv-00080, 2023 Ct. Intl. Trade LEXIS 95, at \*31 (2023). However, *Skyview* does not support CBP's proposition. In that case, the importer cooperated to the extent they could while the foreign exporter did not respond to any of CBP's questionnaires. *Id.* at \*29-30. The "specific evidence" that would have lessened the impact of adverse inferences against the importer, as the court contemplated, can only be production documents that show that none or a lesser amount of the alleged-covered merchandise are covered merchandise. That information already exists on the record of EAPA Inv. 7783, and CBP erred in disregarding that.

Moreover, SCS is not affiliated with Engga/Kales, and thus has no control over the Exporters. In appeals from antidumping and countervailing proceedings, the courts have emphasized that it is unfair and contrary to law for Commerce to apply an adverse inference when the cooperating party has no control over the non-cooperating suppliers. *See Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326, 1333-1334 (Ct. Int'l Trade, 2019), *citing Mueller Comercial de Mexico S. De R.L. de C.V. v. United States*, 753 F.3d 1227, 1235 (Fed.

**PUBLIC VERSION**

Cir. 2014).  The courts are adamant that "there is no justification for an AFA rate based in deterrence where the rate would affect only the cooperating party."  *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade, 2019), citing to *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1379 (Fed. Cir. 2012).

The collateral consequences on SCS from CBP's AFA application in this case is especially harsh and unreasonable.  At the minimum, CBP must take into consideration the unique circumstances in this proceeding and lessening the collateral consequence for SCS of the adverse inference it applied against the Vietnamese companies.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, Plaintiff respectfully requests that the Court remand this case to CBP with instructions to lift all current enforcement measures on entries SCS made between September 29, 2022 and January 26, 2023, and for CBP to reconsider its affirmative evasion findings on certain other entries in accordance with the court's opinion.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang[**]
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com

Date: August 7, 2024                    *Counsel to Plaintiff*

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

PUBLIC VERSION

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **11,117** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*