**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | | |
|---|---|---|
| SUPERIOR COMMERCIAL SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | Court No. 24-00052 |
| v. | ) ) | **PUBLIC VERSION** |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

LIRIDONA SINANI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:    (202) 353-2188
Facsimile:    (202) 307-0972
Email:        Liridona.Sinani@usdoj.gov

OF COUNSEL:

NICOLAS A. MORALES
Attorney
Office of Chief Counsel
U.S. Customs and Border Protection

November 15, 2024

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT PURSUANT TO RULE 56.2 ............................................................ 1

    I.    Administrative Determination Under Review ....................................... 1

    II.    Issues Presented For Review .................................................................. 2

STATEMENT OF FACTS ........................................................................................ 3

    I.    Enforce And Protect Act ......................................................................... 3

    II.    The Investigation .................................................................................... 4

        A.    The Pertinent Antidumping And Countervailing Duty Orders .................. 4

        B.    Investigation Of SCS And TRLED's Final Determination ....................... 5

        C.    Review Determination ................................................................. 8

SUMMARY OF THE ARGUMENT ........................................................................ 9

ARGUMENT ........................................................................................................... 10

    I.    Standard Of Review ............................................................................... 10

    II.    The Court Should Sustain CBP's Determination Of Evasion ............... 11

        A.    SCS Has Abandoned Its Claim That CBP Acted Contrary To Law When It Did Not Initiate The Investigation Within The Statutory Timeframe; In Any Event, This Claim Lacks Merit ......................................................... 11

            1.    SCS Failed To Present This Claim In Its Complaint And Before CBP ................................................................................ 12

            2.    Even If The Court Considers SCS's Argument, The Argument Fails .................................................................................... 13

        B.    SCS's Due Process Claim Fails Because SCS Does Not Establish A Constitutionally Cognizable Interest ......................................................... 17

        C.    CBP Was Not Required to Make An Entry-By-Entry Determination ...... 21

i

D.    The EAPA Statute Does Not Require A Finding Of Intent ......................25

E.    CBP Reasonably Applied Adverse Inferences ..........................................30

F.    The Court Should Dismiss Counts Of SCS's Complaint That
SCS Has Abandoned ...................................................................................32

CONCLUSION ...........................................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A Classic Time v. United States*,
   123 F.3d 1475 (Fed. Cir. 1997)...................................................................... 20
*All One God Faith, Inc. v. United States*,
   589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022) ............................................... 31
*Altx, Inc. v. United States*,
   370 F.3d 1108 (Fed. Cir. 2004)...................................................................... 22
*Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*,
   751 F.2d 1239 (Fed. Cir. 1985)................................................................ 18, 20
*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
   526 U.S. 40 (1999)........................................................................................ 19
*Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*,
   No. 20-03914, 2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) .................. 17, 19
*American Farm Lines v. Black Ball Freight Serv.*,
   397 U.S. 532 (1970)...................................................................................... 14
*Arnett v. Kennedy*,
   416 U.S. 134 (1974)...................................................................................... 19
*Aspects Furniture Int'l, Inc. v. United States*,
   607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ............................................... 19
*Aspects Furniture Int'l, Inc. v. United States*,
   651 F. Supp. 3d 1328 (Ct. Int'l Trade 2023) ............................................... 24
*Barnhart v. Peabody Coal Co.*,
   537 U.S. 149 (2003)...................................................................................... 14
*Board of Regents v. Roth*,
   408 U.S. 564 (1972)................................................................................ 18, 19
*Brock v. Pierce Cnty.*,
   476 U.S. 253 (1986)...................................................................................... 16
*Canadian Fur Trappers Corp. v. United States*,
   884 F.2d 563 (Fed. Cir. 1989)...................................................................... 14
*CBOCS West, Inc. v. Humphries*,
   553 U.S. 442 (2008)...................................................................................... 28
*CEK Grp. LLC v. United States*,
   633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023) ............................................... 31
*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)...................................................................................... 27
*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007)................................................................ 12, 13
*De Laval Separator Co. v. United States*,
   511 F. Supp. 810 (Ct. Int'l Trade 1981) ..................................................... 32
*Dep't of Com. v. New York*,
   139 S. Ct. 2551 (2019).................................................................................. 11
*Diamond Tools Tech. LLC v. United States*,
   545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ....................................... passim

*Diamond Tools Technology LLC v. United States*,
  609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ............................................... 26
*Dickerson v. United States*,
  530 U.S. 428 (2000) ........................................................................ 28
*Dixon Ticonderoga Co. v. United States*,
  468 F.3d 1353 (Fed. Cir. 2006) ........................................................... 15
*Dorbest Ltd. v. United States*,
  604 F.3d 1363 (Fed. Cir. 2010) ........................................................... 12
*Ewing v. Mytinger & Casselberry*,
  339 U.S. 594 (1950) ........................................................................ 20
*Fine Furniture (Shanghai) Ltd. v. United States*,
  748 F.3d 1365 (Fed. Cir. 2014) ........................................................... 31
*Gilda Indus., Inc. v. United States*,
  622 F.3d 1358 (Fed. Cir. 2010) ........................................................... 14
*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ........................................................................ 28
*Hannah v. Larche*,
  363 U.S. 420 (1960) ........................................................................ 20
*Hitachi Home Elecs., Inc. v. United States*,
  661 F.3d 1343 (Fed. Cir. 2011) ........................................................... 14
*Home Prods. Int'l, Inc. v. United States*,
  837 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ............................................ 12
*Ikadan Sys. USA, Inc. v. United States*,
  639 F. Supp. 3d 1339 (Ct. Int'l Trade 2023) ......................................... 24, 25, 27, 28
*Int'l Custom Prods., Inc. v. United States*,
  791 F.3d 1329 (Fed. Cir. 2015) ........................................................... 19
*KYD, Inc. v. United States*,
  607 F.3d 760 (Fed. Cir. 2010) ......................................................... 30, 32
*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 224 (2024) ...................................................................... 16
*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008) ....................................................... 12, 13
*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................. 11, 24, 26
*Mueller Commercial De Mexico v. United States*,
  753 F.3d 1227 (Fed. Cir. 2014) ........................................................... 32
*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) ........................................................... 28
*Norwegian Nitrogen Prods. v. United States*,
  288 U.S. 294 (1933) ........................................................................ 20
*PAM, S.p.A. v. United States*,
  463 F.3d 1345 (Fed. Cir. 2006) ........................................................... 15
*Phoenix Metal Co. v. United States*,
  No. 23-00048, 2024 WL 2891503 (Ct. Int'l Trade June 10, 2024) .................... 19, 31
*Royal Brush Mfg., Inc. v. United States*,
  75 F.4th 1250 (Fed. Cir. 2023) ........................................................... 20

iv

*Rubin v. Islamic Republic of Iran*,
  138 S. Ct. 816 (2018) ............................................................................... 18, 29, 30
*Russello v. United States*,
  464 U.S. 16 (1983) ............................................................................................ 28
*Sandvik Steel Co. v. United States*,
  164 F.3d 596 (Fed. Cir. 1998) .......................................................................... 12
*Skyview Cabinet USA, Inc. v. United States*,
  No. 1:22-CV-00080, 2023 WL 4073781 (Ct. Int'l Trade June 20, 2023) ............... 31
*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ........................................................... 21, 22, 28, 32
*Star Fruits S.N.C. v. United States*,
  393 F.3d 1277 (Fed. Cir. 2005) .......................................................................... 11
*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) ............................................................................................ 14
*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) .......................................................................... 10

## Statutes

19 U.S.C. § 1504(c) ................................................................................................. 3
19 U.S.C. § 1514 ................................................................................................... 25
19 U.S.C. § 1517 ............................................................................................... 2, 17
19 U.S.C. § 1517(a)(5)(A) ..................................................................................... 28
19 U.S.C. § 1517(a)(5)(B) ..................................................................................... 28
19 U.S.C. § 1517(b)(1) ................................................................................... passim
19 U.S.C. § 1517(b)(1)-(2) .......................................................................... 11, 12, 14
19 U.S.C. § 1517(c) ........................................................................................... 1, 24
19 U.S.C. § 1517(c)(1)(A) ....................................................................................... 4
19 U.S.C. § 1517(c)(2) ................................................................................... 3, 4, 16
19 U.S.C. § 1517(c)(3)(A) ..................................................................................... 31
19 U.S.C. § 1517(c)(3)(B) ..................................................................................... 31
19 U.S.C. § 1517(e) ......................................................................................... 3, 14
19 U.S.C. § 1517(f) ................................................................................................. 4
19 U.S.C. § 1517(g) ............................................................................................. 24
19 U.S.C. § 1517(g)(1) ............................................................................................ 4
19 U.S.C. § 1517(g)(2) ......................................................................................... 10
19 U.S.C. § 1592 ................................................................................................... 29
19 U.S.C. § 1677(1) ............................................................................................... 25
19 U.S.C. § 1677e(b) ............................................................................................. 32
28 U.S.C. § 1581(c) ............................................................................................... 12
Pub. L. No. 114-125 ............................................................................................... 2

## Regulations

19 C.F.R. § 165.12 ........................................................................................ 11, 12, 16
19 C.F.R. § 165.15(d)(1) ...................................................................................... 3, 18
19 C.F.R. § 165.21 ................................................................................................... 4

19 C.F.R. § 165.22 ........................................................................................ 4

19 C.F.R. § 165.23 ..................................................................................... 3, 4

19 C.F.R. § 165.23(a) .................................................................................... 4

19 C.F.R. § 165.24(c) ............................................................................... 3, 18

19 C.F.R. § 165.26 ........................................................................................ 4

19 C.F.R. § 165.41(f)(5) ............................................................................... 12

19 C.F.R. § 171 ........................................................................................... 29

19 CFR 165.12(a) .................................................................................. 5, 6, 7

84 Fed. Reg. 33053-01 (Dep't Commerce July 11, 2019) .............................. 4

C.F.R. § 165.15(d)(1) .................................................................................. 18

**Other Authorities**

*Procedures for Investigation of Claims of Evasion of Antidumping and Countervailing Duties*,
    89 Fed. Reg. 19239 (CBP March 18, 2024) .............................................. 16

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| _____ ) | | |
| SUPERIOR COMMERCIAL SOLUTIONS LLC, ) | | |
| ) | | |
| Plaintiff, ) | Court No. 24-00052 | |
| v. ) | | |
| ) | **PUBLIC VERSION** | |
| UNITED STATES, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response in opposition to the

motion for judgment on the agency record filed by plaintiff, Superior Commercial Solutions LLC

(SCS). As demonstrated below, U.S. Customs and Border Protection (CBP) lawfully conducted

its investigation, and the affirmative evasion determination is supported by substantial evidence

and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the

law. Accordingly, we respectfully request that the Court deny SCS's motion, and sustain CBP's

evasion determination.

### STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

SCS challenges CBP's administrative review of the final determination as to evasion by

CBP's Office of Trade, Regulations & Rulings Directorate (R&R) in Enforce and Protect Act

(EAPA) Case Number 7783 (Jan. 11, 2024), CR47, PR 68  (Review Det.), which affirmed the

determination of evasion under 19 U.S.C. § 1517(c) by CBP's Trade Remedy & Law

Enforcement Directorate (TRLED), Notice of Determination as to Evasion (Aug. 31, 2023), CR 44, PR56 (Final Det.).[1]

## II.  <u>Issues Presented For Review</u>

1.    Whether SCS has abandoned its claim that CBP acted contrary to law when it did not initiate the Enforce and Protect Act (EAPA) investigation within the statutory timeframe;

2.    Whether SCS has shown that it has any constitutionally cognizable interest at the initiation stage of an EAPA investigation;

3.    Whether CBP was required to make an entry-by-entry evasion determination;

4.    Whether EAPA requires intent or culpability in a finding of evasion;

5.    Whether substantial evidence supports CBP's application of an adverse inference;

6.    Whether SCS has waived claims in its complaint for which it has provided no arguments in its opening brief.

## <u>STATEMENT OF FACTS</u>

## I.  <u>Enforce And Protect Act</u>

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP administrative procedure for investigating allegations of evasion of antidumping and countervailing duty orders as part of the United States' efforts to ensure a level playing field for domestic industries.  *See generally* 19 U.S.C. § 1517.  Upon receiving an allegation from an interested party, the statute mandates a formal investigation process and statutorily directed

---

[1] "CR __" refers to the document number in the Confidential Administrative Record, ECF No. 16; "PR __" refers to the document number in the Public Administrative Record, ECF No. 15.  Citations to specific pages are to the confidential version unless only a public version exists.

investigation timeline.  CBP's regulations establish additional deadlines and procedures governing the investigation, which facilitate CBP's compliance with its statutorily required deadlines.

Generally, the investigation of an EAPA allegation proceeds as follows:  Within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests that covered merchandise has been entered through evasion, CBP must initiate an investigation.  19 U.S.C. § 1517(b)(1).  Within 90 calendar days, CBP must make its initial determination of reasonable suspicion of evasion and, if it determines so, must issue interim measures, which includes the suspension and extension of certain unliquidated entries subject to the EAPA investigation.  19 U.S.C. § 1517(e).[2]  The EAPA statute is silent as to a time frame for when CBP must provide notice of initiation of an investigation or interim measures.  However, in accordance with its regulations, "CBP will issue notification of its decision to initiate an investigation to all parties to the investigation no later than 95 calendar days after the decision has been made," and "no later than five business days after interim measures are taken."  19 C.F.R. § 165.15(d)(1); *see also* 19 C.F.R. § 165.24(c) (regarding interim measures).

The EAPA statute grants CBP broad discretion to determine the scope and means of the investigation, including authority to collect and verify any information it deems necessary to make its evasion determination.  19 U.S.C. § 1517(c)(2).  CBP's regulations set forth the requirements governing various parties' submissions of factual information to CBP.  19 C.F.R. § 165.23.  For example, the parties to the investigation may voluntarily submit information to

---

[2]  With respect to suspension of liquidation, 19 U.S.C. § 1504(c) provides that "{i}f the liquidation of any entry is suspended, the Secretary shall by regulation require that notice of the suspension be provided, in such manner as the Secretary considers appropriate, to the importer of record or drawback claimant, as the case may be, and to any authorized agent and surety of such importer of record or drawback claimant."

CBP or may provide information in response to requests by CBP.  *Id.*  Parties to the investigation have 200 days from the date of the initiation of the investigation to submit factual information on the record, and 230 calendar days to submit written arguments.  *Id.*; 19 C.F.R. § 165.26.  Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments.  19 C.F.R. § 165.26.  Interested parties who are not parties to the investigation may also provide information in response to requests by CBP.  19 C.F.R. § 165.23(a).

During the investigation, CBP maintains an administrative record of material obtained and considered during the investigation.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the initiation of the investigation, CBP is normally required to make a determination as to whether substantial evidence exists based on the administrative record to find evasion.  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  A person determined to have entered covered merchandise through evasion or an interested party that filed an allegation which resulted in the initiation of an investigation is permitted to request a review of an initial determination, and CBP must complete the review and issue a final administrative determination no later than 60 business days after such a request.  19 U.S.C. § 1517(f).  EAPA permits for judicial review in this Court of CBP's final administrative determination and the original determination as to evasion.  19 U.S.C. § 1517(g)(1).

II.    **The Investigation**

A.    **The Pertinent Antidumping And Countervailing Duty Orders**

On July 11, 2019, the Department of Commerce (Commerce) issued antidumping and countervailing duty orders on quartz surface products (QSP) from the People's Republic of China (China).  *Certain Quartz Surface Products From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33053-01 (Dep't Commerce July

4

11, 2019) (hereafter, AD/CVD Orders).

**B.    Investigation Of SCS And TRLED's Final Determination**

On September 8, 2022, Cambria Company LLC (Cambria), a domestic producer of QSP,

submitted an allegation to CBP that SCS was evading the AD/CVD Orders on QSP from China.

Cambria Allegation (Sept. 8, 2022), CR 4, PR 1.  Cambria alleged that SCS was importing QSP

from China into the United States that was transshipped through Vietnam.  *Id.* at 1, 5-9 & Exs. 3,

8-9.  The allegation provided trade data indicating that Chinese companies, Xiamen Lexiang

Importing & Exporting Co., Ltd. and Xiamen Stone Display Co., Ltd. exported the QSP to Kales

Quartz Co., Ltd. (Kales) [3] in Vietnam, and Kales then exported the QSP to SCS in the United

States.  *See id.* at 6-8 (summarizing a portion of the trade data provided in Exhibits 3, 8, and 9).

On October 6, 2022, CBP acknowledged receipt of the allegation.  Official Receipt

Checklist (Oct. 6, 2022), PR 2; Official Receipt Email (Oct. 6, 2022), PR 3; *see* 19 CFR

165.12(a).  Fifteen business days later, on October 28, 2022, CBP initiated EAPA investigation

7783 based on a finding that the information in the allegation reasonably suggested that SCS has

engaged in evasion of the AD/CVD Orders.  Final Det. at 2; Initiation of Investigation for EAPA

Case 7783 (Oct. 28, 2022) at 2, 5-6, CR 6, PR 6.

On November 3-4, 2022, CBP issued CBP Form 28 (CF-28) requests for information to

SCS regarding four entries of QSP, requesting the corresponding entry and documentation for

each entry.  Final Det. at 2 & n.9.  SCS responded to this request, but it failed to provide several

categories of information requested by CBP, or request an extension to do so.  *Id.*; SCS Refiled

CF-28 Resp. (Mar. 17, 2023), CR 27, PR 37.  CBP added two memoranda to the administrative

record that contained CBP's research results, including website screenshots and entry

---

[3]  Kales company is also known as Cong Ty Tnhh Kales Quartz.  Review Det. at 2 & n.4.

documentation concerning Kales and its affiliation with other exporters and manufacturers of QSP in Vietnam and China.  Review Det. at 4; Memo to the File (Nov. 30, 2022), CR 7, PR 7; Memo to the File (Dec. 29, 2022), CR 8, PR 8.

After evaluating the information on the record at that time, CBP determined that reasonable suspicion existed that SCS imported Chinese-origin QSP into the United States that had been transshipped through Vietnam.  Final Det. at 3-4; Notice of Investigation and Interim Measures (Feb. 2, 2023), CR 10, PR 11 (NOI).  Consequently, on January 26, 2023, CBP sent SCS and Cambria an email, notifying them that CBP had determined that there is reasonable suspicion of evasion of the AD/CVD Orders by SCS and that CBP had decided to initiate interim measures.  Notice of Initiation of Investigation and Interim Measures External Email (Jan. 26, 2023), PR 10 (Jan. 26, 2023 Notice Email).  On February 2, 2023, CBP issued a notice of initiation of investigation and imposed interim measures on SCS.  NOI at 1.  In the NOI, CBP provided the reasoning for the initiation of the investigation and the decision to impose interim measures based on reasonable suspicion of evasion, as well as the details regarding the interim measures imposed.  *See Id.*

To further investigate the claim of evasion, CBP issued Requests for Information (RFIs) to SCS and three Vietnamese exporters:  Kales, Engga Company Limited (Engga), and Strry Manufacturing Company Limited (Strry).  Final Det. at 5; *see* SCS RFI Resp. (Mar. 1, 2023), CR 20-24, PR 34; SCS Suppl. RFI Resp. (May 9, 2023), CR 31, PR 43; Engga, Kales RFI Resp. (Mar. 1, 2023), CR 15-19, PR 33; Engga, Kales Suppl. RFI Resp. (May 15, 2023), CR 32-34, PR 44; Strry RFI Resp. (Mar. 1, 2023), CR 26, PR  35; Strry Suppl. RFI Resp. (May 15, 2023), CR 35-36, PR 45.  The four companies responded, with Kales and Engga providing a joint response

"due to their close relationship" and affiliated status.[4]  Final Det. at 5 & n.31 (quoting Engga,

Kales RFI Resp. at 2).  According to Kales/Engga's and Strry's RFI Responses, Strry purchased

raw materials to produce quartz slabs in Vietnam and provided the quartz slabs it produced to

Kales/Engga to perform additional processing steps in Vietnam.  Review Det. at 5 & n.21 (citing,

among others, Engga, Kales RFI Resp. at 9; Strry RFI Resp. at 6, 10, 11; SCS RFI Resp. at 33-

34).  Kales/Engga claimed that it purchased [████████████] and performed further

processing steps to produce the covered merchandise it sold to the United States.  *Id.* at 5 & n.22

(citing SCS Admin. Review Req. (Oct. 16, 2023) at 4-5, CR 46, PR 59).  To verify each

exporter's claim that it produced QSP in Vietnam, CBP sought to conduct on-site verifications of

Kales/Engga's and Strry's respective facilities in Vietnam.  Final Det. at 5, 29.  CBP also

requested that certain individuals attend the verifications in person to explain the companies'

procedures and records and answer CBP's questions.  Final Det. at 29; Engga, Kales Suppl. RFI

Resp. at 1, CR 34; Strry Suppl. RFI Resp. at 1, CR 35.  The exporters initially agreed to

participate in verification but later rescinded their offer to allow CBP to conduct a verification at

their facilities.  Final Det. at 5, 29; Email re: Extension of Written Arguments Deadline (June 2,

2023), PR 46; Foreign Manufacturers Notice of Intent Not To Participate in Verification (June 9,

2023), PR 47.  Subsequently, CBP added another memorandum to the administrative record

composed of additional research results, such as entry documents and website screenshots.

Review Det. at 6; Memo to the File (June 14, 2023), CR 37-40, PR 49-50.

    Cambria and SCS submitted written arguments on June 26, 2023, and rebuttal comments

on July 11, 2023.  Final Det. at 5; SCS Written Args. (June 26, 2023), CR 41, PR 52; SCS

---

[4]  As R&R observed, Kales and Engga "are actually the same company."  Review Det. at 5
n.19 (quoting Kales/Engga's RFI Resp. at 4, PR 33.  Thus, like R&R, we refer to the companies
as "Kales/Engga."  *Id.*

Rebuttal Written Args. (July 11, 2023), CR 42, PR 54.  On August 31, 2023, TRLED issued a notice of determination as to evasion, finding that substantial evidence demonstrates that SCS imported QSP from China into the United States "by undervaluation and/or transshipment through Vietnam."  Final Det. at 1; *see also id.* at 23-39 (discussing evidence).  In addition, TRLED applied adverse inferences to Kales/Engga and Strry, finding that they failed to cooperate to the best of their ability with CBP's RFIs and finding their submissions to be unreliable due to "the submission of material false statements, fraudulent documentation, the omission of material facts, and the fact that the information was not verified."  *Id.* at 39.  Consequently, TRLED inferred that all of SCS's entries of QSP into the United States from Kales/Engga and Strry during the period of investigation were of Chinese origin, but noted that "enough evidence exists on the record to determine that there is evasion without" the application of adverse inferences.  *Id.* at 39; *see also id.* at 23-37 (discussing the totality of the evidence).

## C.    Review Determination

SCS requested an administrative review of TRLED's determination.  Review Det. at 6; SCS Admin. Review Req.  On January 11, 2024, upon *de novo* administrative review, R&R affirmed TRLED's finding of evasion.  Review Det. at 1, 20.

R&R determined that substantial evidence on the record demonstrates that SCS entered Chinese-origin QSP that was transshipped through Vietnam into the United States.  Review Det. at 11.  Based on SCS's own description of the QSP it imported from Kales/Engga and Strry, R&R determined that the QSP fell within the plain language of the scope of the AD/CVD Orders.  *Id.* at 11, 12.  Additionally, based on SCS's own admission that [█] of [█] shipments by Kales/Engga to SCS contained [████████████████████████], R&R determined that substantial evidence demonstrates that the QSP that SCS imported was of Chinese origin.  *Id.* at

12.  R&R considered the [█] shipments to constitute "a significant portion of shipments during the period of investigation."  *Id.*  Further, R&R determined that substantial evidence demonstrates that SCS entered covered merchandise by means of material and false statements. *Id.* at 12-13.

Moreover, R&R determined that, although not necessary for R&R's finding of evasion, TRLED's application of an adverse inference was warranted because Kales/Engga and Strry failed to cooperate to the best of their abilities with CBP's RFIs.  *Id.* at 13-14.  In particular, the exporters' refusal to permit TRLED to conduct on-site verifications of their facilities in Vietnam, which was necessary to confirm the information that had been placed on the record, amounted to a failure to cooperate to the best of their abilities.  *Id.*  TRLED also rejected SCS's claims that CBP cannot apply an adverse inference against the exporters if the inference has collateral consequences on SCS, that CBP was required to made individualized determinations of evasion on an entry-by-entry basis, that CBP denied SCS's due process, and that the EAPA statute requires intent or culpability for a finding of evasion.  *Id.* at 14-19.

This appeal followed.

## SUMMARY OF THE ARGUMENT

CBP lawfully initiated and administered the investigation.  SCS has abandoned its procedural challenge to the timeliness of CBP's initiation of the investigation for both failing to plead this issue in its complaint and failing to raise it during the administrative proceeding.  Even if the Court were to entertain SCS's abandoned claim, the claim lacks merit because the deadline in 19 U.S.C. § 1517(b)(1) is merely precatory, not mandatory.  Further, SCS fails to demonstrate that it had a constitutional due process right to notice of the initiation of investigation on the day CBP initiated the EAPA investigation.  This Court has on multiple occasions rejected similar

arguments on constitutional grounds, and should reject them here.  Otherwise, SCS does not, and cannot, dispute that CBP provided SCS timely notice under the regulations.

CBP's evasion determination is supported by substantial evidence on the record, and its decision was not arbitrary, capricious, or contrary to law.  Substantial evidence, including SCS's own admission that a portion of its entries contained QSP subject to the AD/CVD Orders, supports CBP's evasion determination.  CBP was not required to undertake an entry-by-entry analysis of evasion, nor could it do so given the exporters' lack of cooperation.  Further, the EAPA statute does not require a finding of intent for an evasion determination.  Moreover, CBP reasonably used an adverse inference against the exporters for their failure to cooperate to the best ofn.11 their ability, and CBP was permitted to do so even though the adverse inference had collateral consequences on SCS.

SCS has failed to offer any arguments in support of Counts III, IV, V, and X listed in its complaint.  Failure to do so means that SCS has abandoned those claims.  Accordingly, the court should dismiss those counts.

## ARGUMENT

### I.    Standard Of Review

In reviewing CBP's evasion determinations, this Court determines whether CBP complied with procedures under the EAPA statute and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  The scope of the

"arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that

of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983). The Court "determine{s} only whether the {agency} examined 'the relevant

data' and articulated 'a satisfactory explanation' for {its} decision, 'including a rational

connection between the facts found and the choice made.'" *Dep't of Com. v. New York*, 139 S.

Ct. 2551, 2569 (2019) (quoting *Motor Vehicle*, 463 U.S. at 43). "An abuse of discretion occurs

where the decision is based on an erroneous interpretation of the law, on factual findings that are

not supported by substantial evidence, or represent an unreasonable judgment in weighing

relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

II.    **The Court Should Sustain CBP's Determination Of Evasion**

   A.    **SCS Has Abandoned Its Claim That CBP Acted Contrary To Law When It Did Not Initiate The Investigation Within The Statutory Timeframe; In Any Event, This Claim Lacks Merit**

SCS argues that CBP violated 19 U.S.C. § 1517(b)(1)-(2) when it did not initiate the

EAPA investigation within 15 business days from the date Cambria filed the allegation.

Confidential Pl.'s Rule 56.2 Mem. in Supp. of Mot. for J. Upon the Agency R. (Pl.'s Mem.) at

16-20, ECF No. 21. SCS also argues that CBP's EAPA regulation, 19 C.F.R. § 165.12—which

defines "date of receipt" the date on which CBP provides an acknowledgment of receipt of a

properly filed allegation—allows CBP to circumvent the statutory deadline in 19 U.S.C.

§ 1517(b)(1). SCS has abandoned these claims for failing to plead them in its complaint and for

failing to present them to CBP. Even if the Court addresses the merits of SCS's argument, the

arguments fail on the merits.

1.    **SCS Failed To Present This Claim In Its Complaint And Before CBP**

SCS argues that CBP acted contrary to law when it did not initiate the EAPA

investigation within 15 business days from September 8, 2022, the date Cambria filed the

allegation.  *See* Pl.'s Mem. at 16-20.  SCS has abandoned the issue for failing to plead the issue

in its complaint.  *See Compl.*, ECF No. 4; *Home Prods. Int'l, Inc. v. United States*, 837 F. Supp.

2d 1294, 1299, 1299-1300 (Ct. Int'l Trade 2012) (ignoring claim that plaintiff failed to plead in

the complaint); USCIT R. 8 Practice Comment ("For an action described in 28 U.S.C. § 1581(c),

the complaint shall contain . . . a statement of the issues presented by the action . . .").  SCS's

complaint includes 10 counts, none of which concerns issues of whether CBP violated 19 U.S.C.

§ 1517(b)(1)-(2) or the validity of CBP's regulation, 19 C.F.R. § 165.12, which defines "date of

receipt."  *See* Compl. at 7-15; Pl's Mem. 19-20.

Moreover, SCS has likewise waived the issue by failing to raise the issue in its request

for administrative review.  *See* SCS Admin. Review Req., CR 46, PR 59.  "{N}o one is entitled

to judicial relief for a supposed or threatened injury until the prescribed administrative remedy

has been exhausted."  *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed.

Cir. 2008) (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998)).  The

Federal Circuit has emphasized that parties must exhaust their arguments in accordance with

agency regulations on pain of waiver.  *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed.

Cir. 2010) (discussing Commerce's regulations, 19 C.F.R. § 351.309(c)(2)); *Corus Staal BV v.

United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (same).  The EAPA regulations require that

"each request for review must set forth the . . . argument expressing clearly and accurately the

points of fact and of law presented and citing the authorities and statutes relied on."  19 C.F.R. §

165.41(f)(5).  However, SCS did not make its arguments about the timeliness of the initiation of

the investigation at the appropriate time before R&R.[5]  *See* SCS Admin. Review Req.  SCS

cannot challenge CBP's determination based upon arguments that it never made to that

administrative body.  *See*, *e.g.*, *Mittal Steel*, 548 F.3d at 1383-84; *Corus Staal*, 502 F.3d at 1379.

Accordingly, the Court should deem the timeliness issue abandoned and not address the

merits.

        **2.**        **<u>Even If The Court Considers SCS's Argument, The Argument Fails</u>**

Even if the Court addresses the merits of SCS's abandoned argument, which it should

not, the argument fails on the merits.  SCS seeks to set aside the interim and final measures on

entries before January 26, 2023 (the date SCS received notice of investigation and interim

measures) because CBP initiated the investigation more than 15 business days after Cambria

filed the allegation, whereas the statute directs, "{n}ot later than 15 business days after receiving

an allegation," CBP "shall initiate an investigation if the Commissioner determines that the

information provided in the allegation . . . reasonably suggests that overed merchandise has been

entered into the customs territory of the United States through evasion."  Pl.'s Mem. at 15, 26.

Even accepting, for argument's sake, SCS's contention that the 15-day deadline began to run on

September 8, 2022 (the date Cambria filed the allegation), rather than on October 6, 2022 (the

date CBP acknowledged receipt of the allegation), the 15-day time provision in 19 U.S.C.

§ 1517(b)(1) is not mandatory, and SCS does not show that it suffered substantial prejudice by

reason of the delay.

The 15-day deadline in section 1517(b)(1) is merely precatory, not mandatory because

Congress did not provide any consequences for failure to meet this benchmark.  The Supreme

Court and the Federal Circuit have consistently held that the Executive does not lose its power to

---

    [5]  In fact, nor did SCS raise the issue before TRLED.  *See* SCS Written Args.

act beyond statutory deadlines unless Congress intends to impose such a consequence for the failure to timely act. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993); *Hitachi Home Elecs., Inc. v. United States*, 661 F.3d 1343, 1345-46 (Fed. Cir. 2011); *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1365 (Fed. Cir. 2010); *Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563, 566 (Fed. Cir. 1989)).  Nor can SCS proffer any congressional intent that the 15-day deadline be mandatory, given that it is merely an internal deadline for the CBP to follow and provides no substantive or procedural rights to interested parties.  Indeed, interpreting another similarly worded provision of EAPA— 19 U.S.C. § 1517(e), which provides, "{n}ot later than 90 calendar days after initiating an investigation . . ., the Commissioner shall decide . .  if there is a reasonable suspicion" of evasion and impose interim measures—this Court has held that the statute's use of "shall" does not alone limit the agency's power.  *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1333-1335 (Ct. Int'l Trade 2021).  Relying on a collection of Supreme Court and Federal Circuit precedent, the Court held that, in the absence of a consequence for noncompliance with a statutory deadline, the timing provision of 19 U.S.C. § 1517(e) is at best precatory, not mandatory.  *Id.*  The same result follows with respect to 19 U.S.C. § 1517(b)(1).  Further, the legislative history of EAPA supports the precatory nature of the deadline in section 1517(b)(1).  As the Court in *Diamond Tools* observed, EAPA's legislative history "indicates that Congress included the deadlines . . . to spur the agency into action to identify evasion rather than to cut off its power to act past the deadline."  *Id.* at 1336.

SCS has failed to demonstrate that it suffered substantial prejudice by reason of the delay. A party seeking to overturn an administrative determination on procedural grounds must show actual substantial prejudice by reason of the alleged procedural error.  *American Farm Lines v.*

*Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970); *PAM, S.p.A. v. United States*, 463 F.3d 1345, 1349 (Fed. Cir. 2006); *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006). SCS avers, "{h}ad CBP acted in accordance with law, CBP would have initiated the EAPA investigation by September 29, 2022, and informed SCS *on that day*. Following that, SCS would have stopped making any of the entries it made between September 29, 2022 and January 26, 2023," which is the date CBP imposed interim measures. Pl.'s Mem. at 26 (emphasis added); Jan. 26, 2023 Notice Email. First, as we explain below, SCS fails to establish that it is entitled to notice of the investigation on the date CBP initiates the investigation. Second, SCS's argument "focuses on the injury, if any, caused by the imposition of interim measures themselves, not the injury, if any, caused by Customs' delay in" initiating the investigation, which is insufficient to demonstrate substantial prejudice. *See Diamond Tools*, 545 F. Supp. 3d at 1338. Like the plaintiff in *Diamond Tools*, SCS fails to point to "an injury from Custom's *delay*" in initiating the investigation "and fails to demonstrate that any such injury is to an interest that the statutory deadline was designed to protect." *Id.* In fact, based on SCS's briefing, it is difficult to fathom what prejudice SCS faced. SCS argues that if CBP receives an improperly filed allegation, it can ask the alleger to refile the allegation "with the identified deficiencies remedied, at any time as a new allegation and restart the 15-business day clock." Pl.'s Mem. at 20. Given SCS's assertion, it is difficult to fathom any substantial prejudice caused by the mere failure to insert an extra administrative step of asking the alleger to refile an allegation, which the alleger could presumably do days later, thereby making the date of initiation— previously considered untimely—timely. More likely, if there is any injury to any party by CBP's delay of initiating the investigation, it is on the alleger, who is presumably

15

injured by the consequences of importers' continued failure to pay antidumping and countervailing duties and CBP's failure to act on its allegation.

SCS's argument premised on *Loper Bright Enterprises v. Raimond*o, 144 S. Ct. 224 (2024), Pl.'s Mem. at 18, is irrelevant because it is clear from the text of the statute that Congress did not intend to impose any consequences on the agency—let alone the consequence for which SCS advocates— for the failure to initiate an investigation within 15 business days of receipt of an allegation.  The courts making determinations on whether statues are mandatory or precatory did so without resort to *Chevron* analysis.  *See, e.g.*, *Brock v. Pierce Cnty.*, 476 U.S. 253 (1986); *Diamond Tools*, 545 F. Supp. 3d at 1333-1337.

Finally, SCS's argument that CBP's EAPA regulation, 19 C.F.R. § 165.12, allows CBP to circumvent the statutory deadline to initiate an investigation is without merit because, as explained above, the statutory deadline is not mandatory.  Congress granted CBP considerable discretion in investigating EAPA allegations.  *See, e.g.,* 19 U.S.C. § 1517(b)(1) (authorizing CBP to initiate investigation if the information in the allegation "reasonably suggests" evasion); 19 U.S.C. § 1517(c)(2) (broadly authorizing CBP to "collect such additional information as is necessary to make the determination through such methods {CBP} considers appropriate").  CBP explained its reasoning behind the definition of "date of receipt" when it promulgated EAPA regulations.  *See Procedures for Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 89 Fed. Reg. 19239, 19244 (March 18, 2024).  Specifically, CBP stated that allegation cannot be considered to be received unless it is properly filed according to § 165.11, and that "{i}nitiating an investigation within 15 business days of an allegation being in CBP's possession could lead to an inefficient use of CBP's resources, as poorly filed allegations

or incomplete allegations would cause CBP to perform work that should have been done by the alleger." *Id.* Thus, there are myriad reasons to reject SCS's arguments on the merits.

    **B.**     **SCS's Due Process Claim Fails Because SCS Does Not Establish A Constitutionally Cognizable Interest**

      SCS argues that CBP violated SCS's right to due process by failing to inform SCS when CBP initiated the investigation. Pl.'s Mem. at 16; *see id.* at 20-26. As explained below, SCS admits that the EAPA statute is silent as to when CBP must provide notice of initiation of an investigation; SCS does not dispute that CBP provided timely notice in accordance with its regulations; and SCS's constitutional due process claim fails because SCS does not identify any protected interest of which it was deprived.

      As this Court has observed, EAPA is silent as to when CBP must give notice of initiation of an investigation. *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, No. 20-03914, 2023 WL 4288346, at *5 (Ct. Int'l Trade June 22, 2023); *see generally* 19 U.S.C. § 1517. SCS acknowledges as much, contending, "{i}t is true that the Section 1517(c)(4) is the only provision in Section 1517 that explicitly provides for notification of the TRLED Final Determination, and CBP is only required to provide such notification to the alleger." Pl.'s Mem. at 21. Nevertheless, based on nothing but mere speculation, SCS avers that "it is more plausible that Congress{} presumed that CBP will inform the targeted importers of the investigations when it makes each of the consequential terminations (*see* 19 U.S.C. §§ 1517(b)(1), (c)(1), (e), (f)), whereas CBP does not need to inform the EAPA alleger of any of its decision but for the TRLED final determination of evasion{.}" Pl.'s Mem. at 22. To the contrary, Congress's inclusion of a notification requirement pertaining to the alleger demonstrates that if Congress likewise intended to provide notice to a targeted importer at any particular point in the investigation, it certainly

"knew how to say so." *See generally Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018).

CBP's regulation states, in general, that "CBP will issue notification of its decision to initiate an investigation to all parties to the investigation no later than 95 calendar days after the decision has been made," and "no later than five business days after interim measures are taken." 19 C.F.R. § 165.15(d)(1); *see also* 19 C.F.R. § 165.24(c) (regarding interim measures). Nothing in the regulations requires CBP to inform importers of a potential EAPA investigation before CBP finds "reasonable suspicion" of evasion and imposition of interim measures. *See* C.F.R. § 165.15(d)(1). Here, CBP notified SCS of the initiation of investigation on January 26, 2023 (90 days after deciding to initiate an investigation), and provided further information in its NOI five business days later, on February 2, 2023. Jan. 26, 2023 Notice Email; NOI. SCS admits that it received notice on January 26, 2023, and therefore cannot credibly dispute—nor does it attempt to dispute—that CBP complied with its regulations. Pl.'s Mem. at 16. Thus, given that the statute is silent on when CBP must give notice of the initiation of the investigation and SCS does not argue that CBP failed to comply with its regulation that prescribes when such notice is due, SCS's argument that CBP procedurally erred in not notifying SCS of the initiation of the investigation is untenable.

Likewise, SCS's constitutional due process fails because SCS fails to identify any protected interests of which it was deprived. "A prerequisite for due process protection is some interest worthy of protecting." *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985). The Court "look{s} to see if the interest is within the Constitution's protection of liberty and property." *Id.* "A protectable interest must be more than a unilateral expectation." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 571

(1972)).  "Those seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations."  *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)).  Thus, without a constitutionally cognizable interest, the due process inquiry ends.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

Nowhere in its briefing does SCS even mention "protected interest," let alone attempt to establish that it has one.  The Court has on multiple occasions rejected due process challenges, similar to SCS's here, to CBP's imposition of interim measures without prior notice and opportunity to be hard, finding that the plaintiff failed to meet its burden to establish a protected interest sufficient to give rise to a due process right.  *See Phoenix Metal Co. v. United States*, No. 23-00048, 2024 WL 2891503, at *8 (Ct. Int'l Trade June 10, 2024), *dismissed*, No. 2024-2222, 2024 WL 4534014 (Fed. Cir. Oct. 21, 2024); *Am. Pac. Plywood*, 2023 WL 4288346, at *7-8; *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022); *Diamond Tools*, 545 F. Supp. 3d at 1341-42.  For example, in *Phoenix*, the Court rejected the plaintiff's argument that "the ability to mitigate future losses by canceling orders and immediately halting all shipments" constituted a cognizable property interest at the interim measures stage.  2024 WL 2891503, at *9-10 (internal quotation marks, citation, and alternation omitted); *see* Pl.'s Mem. at 23 (arguing, similarly, that had it received notice, "SCS would have stopped importing at that time and immediately would have turned shipments around.").  SCS argues that it was "commercially prohibitive for SCS to enter goods at a combined AD/CVD cash deposit rate of 371.47 percent."  Pl.'s Mem. at 23.  However, it is well-established that a company does not have a constitutionally protected property interest in any rate of duty, an importation, or even engaging in international trade.  *See Int'l Custom Prods., Inc. v. United*

19

*States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (citing, *e.g., Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294, 318 (1933); *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997); *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp.*, 751 F.2d at 1250)).

SCS states that the Federal Circuit has held that importers participating in an administrative proceeding enjoy procedural due process rights; however, SCS spends no time explaining how the cited case establishes that a legitimate property interest exists at the time CBP initiates the investigation.  Pl.'s Mem. at 21 (citing *Royal Brush Mfg., Inc. v. United State*s, 75 F.4th 1250, 1257 (Fed. Cir. 2023)).  It does not.  *Royal Brush* did not address the same issue.  In *Royal Brush*, the Federal Circuit held that importers in adjudicative EAPA proceedings enjoy rights to procedural due process.  75 F.4th at 1257-1258 & n.8.  However, the Court's specific holding related to the agency disclosing "what evidence is being used against" the defendant.  *Id.* at 1258.  The Court did not address entitlement to due process on the date CPB initiates an investigation or any time before the imposition of interim measures.  As the Supreme Court has explained, "'{d}ue process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts."  *Hannah v. Larche*, 363 U.S. 420, 442 (1960).  Consistent with this principle, the Supreme Court has repeatedly held that where a preliminary decision by an agency is a step in an administrative proceeding, due process does not require an opportunity to be heard at the preliminary stage, as long as that opportunity is provided before the final administrative decision becomes effective.  *See Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 598 (1950) (listing cases).  Similarly here, it suffices that SCS have an opportunity to be heard at some stage before the determination of evasion regardless of any temporary harm prior to that point.  *See Diamond Tools*, 545 F. Supp. 3d at 1341 (explaining that interim measures are temporary).

Without first identifying a protected interest, SCS's constitutional due process claim fails. To the extent SCS attempts to further develop its argument in a reply brief, the Court should deem those arguments waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("{I}s well established that arguments not raised in the opening brief are waived."). In any event, even assuming a property interest exists and sufficient harm is alleged, due process under the circumstances here has been met. Although SCS received official notice of the investigation on January 26, 2023, SCS received the CF-28 on November 3-4, 2022, and responded to that on December 2, 2022. Final Det. at 4 & n.9; *see also* CS Refiled CF-28 Resp. SCS, therefore, did have an opportunity to be heard regarding the allegations of evasion before imposition of the interim measures, except that SCS wasted that opportunity to by failing to provide numerous types of information that CBP requested. Final Det. at 2. Moreover, SCS did have an opportunity to be heard, and availed itself of that opportunity, before the TRLED and the R&R reached their evasion determinations. *See* SCS Written Args.; SCS Rebuttal Written Args.; SCS Admin. Review Req.

### C.     CBP Was Not Required to Make An Entry-By-Entry Determination

SCS contends that CBP should have conducted individualized analysis on an entry by entry basis to determine that SCS entered each shipment through evasion. Pl.'s Mem. at 26-28. While conceding that the record undeniably shows that [█] out of the [█] entries by Kales/Engga and Strry were transshipped Chinese merchandise, SCS argues that the record evidence supports a finding of no evasion for the other [█] entries because those entries were produced with Vietnamese quarts slabs. *See* Pl.'s Mem. at 27-28. As support for its claim, SCS points to Kales/Engga' responses to CBP's requests for information, including its sales listing in which it designated which sales were produced with Chinese quarts slabs, and other production

documents.  *Id.* at 28.  According to SCS, "CBP no longer contended that there are inconsistencies or discrepancies" in these documents; accordingly, the Court should accept these documents at face value and find that [█] entries that Kales/Engga claimed were manufactured using Vietnamese quarts slabs were produced in Vietnam and not "covered merchandise." *Id.* SCS's arguments lack legal and factual bases.

As CBP properly observed, "CBP must determine whether there is substantial evidence within the administrative record, as a whole, that evasion has occurred."  Review Det. at 16 & n.109 (citing 19 U.S.C. § 1517(f)(1), 19 C.F.R. § 165.45)).  "Substantial evidence requires more than a mere scintilla but is satisfied by something less than the weight of the evidence."  *Id.* at 7 & n.35 (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (internal citations and quotation marks omitted)).  By SCS's own admission, [█] of [█] shipments SCS imported from Kales/Engga was of Chinese origin.  Review Det. at 12.  As R&R reasonably found, these shipments constitute a significant portion of the shipments during the period of investigation, and SCS's admissions with respect to these shipments are sufficient to find by substantial evidence that covered merchandise was entered into the United States through evasion.  *Id.* at 12.

In addition, however, contrary to SCS's assertion, *see* Pl.'s Mem. at 28, CBP found that the record did *not* demonstrate that the remaining shipments originated in Vietnam.  As TRLED explained, CBP could not rely on SCS's claim that only [█] shipments were composed of Chinese-origin QSP, and that remaining [█] shipments were of Vietnamese origin.  "Due to Kales/Engga's and Strry's claims that they produced QSP in Vietnam, CBP decided that a verification was needed and planned to verify the information on the case record at Kales/Engga and Strry's facilities in Vietnam during June 22-23 and June 26-30, 2023," but was unable to

verify the information because each exporter withdrew from participating in the verification. Final Det. at 29; *see also id.* at 25-26, 29-30, 32-37, 39, 48 (detailing the various reasons to question the veracity of the claim that QSP was produced in Vietnam and why Kales/Engga's and Strry's documents and statements were unreliable).  Thus, there was no reliable, verified, evidence on the record to show that the remaining shipments were not of Chinese origin.  R&R agreed with TRLED's assessments, specifically citing to the very page where TRLED explained why it could not verify the claim that the remaining shipments were of Vietnamese origin. Review Det. at 14 & n.90 (citing, among others, Final Det. at 29).  Accordingly, the record does not demonstrate that R&R "no longer contended that there are inconsistences or discrepancies in {Kales/Engga's} records," as SCS contends.  Pl.'s Mem. at 28.

Further, as R&R also correctly observed, SCS did "not contest the accuracy of the information Kales/Engga and Strry provided to TRLED," their refusal to cooperate, or CBP's authority to apply adverse inferences to these companies.  Review Det. at 14.  While R&R did not specifically address whether [█] entries contained Chinese origin merchandise, as TRLED found in its determination, the record was rife with evidence of Kales/Engga's Chinese affiliation, Final Det. at 17-22, evidence that Kales/Engga sourced [█] percent of Quartz slabs from China, *id.* at 25-26, as well as evidence of double invoicing by Kales and Engga, *id.* at 27-28.  CBP even noted that Kales/Engga imported so much Chinese slab as opposed sourcing Vietnamese product, that it would be impossible for them to exclusively export Vietnamese origin QSP to SCS in the amounts that SCS required.  *See* Final Det. at 26.  The exporters' refusal to allow CBP to conduct an on-site verification made it impossible for CBP to verify whether the remaining [█] shipments were manufactured in Vietnam.  *Id.* at 28.  As a result, CBP found that it "cannot rely on this {[█] out of [█]} proportion to discern which entries

contain covered merchandise." *Id.* at 29.   Thus, even if CBP was required to conduct an entry

by entry review, the record evidence, and the lack of cooperation by Strry and Kales/Ennga

rendered it impossible for CBP to do so.  Review Det. at 16 n.111.  Thus, CBP was not required

to, nor could it, conduct an entry-by-entry analysis of evasion.  *See* A*spects Furniture Int'l, Inc.*

*v. United States*, 651 F. Supp. 3d 1328, 1339, 1341 (Ct. Int'l Trade 2023) (sustaining evasion

determination even though "Customs did not engage in an entry-by-entry analysis of specific

entries and merchandise").

> Moreover, as R&R correctly stated, the issue of an entry-by-entry duty assignment is not

the proper subject of an EAPA administrative review where the purpose of R&R's *de novo*

review is to determine whether substantial evidence of evasion exists.  Review Det. at 15-16 &

n.108 (citing *Ikadan Sys. USA, Inc. v. United States*, 639 F. Supp. 3d 1339, 1354 (Ct. Int'l Trade

2023)).  Per statute, this Court is reviewing CBP's determination whether substantial evidence

exists that evasion occurred—not the final duty rates applied to any given entry at liquidation

(which has not yet occurred).  As the statute provides, "a person determined to have entered such

covered merchandise through evasion or an interested party that filed an allegation {} may seek

judicial review of the determination under subsection (c) and the review under subsection (f) in

the United States Court of International Trade to determine whether the determination and

review is conducted in accordance with subsections (c) and (f)." 19 U.S.C. § 1517(g) (emphasis

added).  Subsections (c) and (f) of § 1517 refer to CBP's "Determination of Evasion" and the *de*

*novo* review by RR, respectively— not the eventual application of a duty rate to a given entry at

liquidation.  19 U.S.C. § 1517(c),(f).

> The actual application of a duty rate based on a determination of evasion is contemplated

by subsection (d) of § 1517, as SCS sets forth in its brief.  *See* Pl.'s Mem. at 26-27.  That

subsection, entitled "Effect Of Determinations," provides that CBP "shall" suspend or continue to suspend the liquidation of those entries "that are subject to the determination and that enter on or after the date of the initiation of the investigation" and "that are subject to the determination and that entered before the date of the initiation of the investigation." 19 U.S.C. § 1517(d)(1)(A)-(B). CBP next "notif{ies} the administering authority[6] of the determination and request{s} that the administering authority {} identify the applicable antidumping or countervailing duty assessment rates for entries" and then "require{s} the posting of cash deposits and assess{es} duties on {the} entries." *Id.* at (C)-(D). And, of course, § 1517(g) does not provide for this Court's review of CBP's actions under subsection (d). Because parties commencing an EAPA action in this Court typically seek an injunction against the liquidation of the entries during the pendency of judicial review, the assessment of duties thus occurs after any judicial appeal. The review of those duties as applied to particular entries is thus beyond the scope of this Court's review under § 1517(g).

Of course, plaintiffs have recourse if they believe that the results of the evasion determination have been incorrectly applied to an entry that does not include subject merchandise: they can submit argument and documentation to CBP before the duties are assigned (but after review of the actual evasion determination in this Court are completed), protest CBP's assignment of duties under 19 U.S.C. § 1514, and, if necessary, appeal the results of that protest to this Court. *See Ikadan*, 639 F. Supp. 3d at 1354.

### D.    The EAPA Statute Does Not Require A Finding Of Intent

SCS appears to argue that CBP's evasion determination is contrary to law or unsupported by substantial evidence because SCS exercised "due diligence" and "reasonable care" in

---

[6]  Pursuant to 19 U.S.C. § 1677(1), the "administering authority" is Commerce.

declaring the QSP as Vietnamese-origin on type "01" entries.  Pl.'s Mem. at 29.  SCS cites to

*Diamond Tools Technology LLC v. United States*, 609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022), in

support of this assertion.  *Id.* at 29-30.  These arguments have been previously rejected by the

Court, and the Court should reject them in this case.

Plaintiffs' reliance on *Diamond To*ols is misplaced.  As set forth in the first remand

opinion in *Diamond Tools*, CBP determined that certain "diamond sawblades and parts thereof"

from China had been entered by means of evasion.  545 F. Supp. 3d at 1329.  In response to the

finding, the importer alleged that, though it sources certain components from China, the

sawblades were assembled in Thailand, and the order "did not address expressly whether

'covered merchandise' included diamond sawblades that resulted from the joining of subject

components in Thailand."  *Id.* 1330.  CBP referred the question to Commerce, which merged the

referral with a circumvention inquiry considering the same issue.  *Id.*  Commerce ultimately

found that diamond sawblades composed of Chinese components but assembled in Thailand did

circumvent the applicable AD/CVD order, and CBP –relying on that conclusion – found evasion.

*Id.*

The Court held that CBP's determination was not in accordance with law because, during

the 2006 investigation into diamond sawblades and until the anti-circumvention order (effective

December 1, 2017), Commerce's position had been that "the country of origin should be

determined by the location of where the segments are joined to the core."  *Id.* at 1352.  Thus, the

Court reasoned, CBP's determination that the plaintiff had made a material omission – i.e. failing

to indicate that some of its merchandise contained components of Chinese origin – was not in

accordance with law "{g}iven Commerce's clearly stated conclusion" that country of origin is

determined by assembly location, the plaintiff "did not make a material and false statement by

importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful'" based on Commerce's position prior to the anticircumvention order issued during the investigation.  *Id.*

The Court thus did not – as SCS implies here – conclude that CBP must establish some level of intent before making an evasion determination.  *See* Pl.'s Mem. at 29-30.  Rather, the Court found that under the specific circumstances of that case – with Commerce explicitly stating that the country of assembly is the country of origin for AD/CVD purposes – CBP's determination that doing otherwise was "material" and "false" was in accordance with law.  The same is not true here.  SCS points to no contradictory guidance from either CBP or Commerce as to the application of the AD/CVD Orders, as in *Diamond Tools;* indeed, SCS admits that it very clearly understood the scope and application of the AD/CVD Orders.  Pl.'s Mem. at 31. *Diamond Tools* is inapposite.

In fact, the Court in *Ikadan* rejected a similar argument that *Diamond Tools* supported reading an intent or culpability requirement in the EAPA statute.  639 F. Supp. 3d at 1343-1349. As CBP observed, the Court held that "EAPA read as a whole supports CBP's strict liability interpretation of the definition of evasion."  Review Det. at 16 & n.114 (quoting *Ikadan*, 639 F. Supp. 3d at 1349); *see* Final Det. at 45-46.  We understand that the Court in *Ikadan* performed a *Chevron* step two analysis in reaching its determination.  639 F. Supp. 3d at 1349 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).  In *Loper Bright*, the Supreme Court overturned the second step of the *Chevron* analysis, directing courts to "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity."  144 S. Ct. at 2266.  The Supreme Court made clear, however, that overruling *Chevron* did not overrule other cases, even if those cases relied on *Chevron*.  *Id.* at 2273 (citing

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 456 (2008); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014); *Dickerson v. United States*, 530 U.S. 428, 443 (2000)). SCS does not contend that *Ikadan*, which relied on *Chevron* is no longer good law. *See* Pl.'s Mem. at 31 (only arguing that CBP's reliance on *Ikadan* is "misplaced" based on factual differences). Accordingly, to the extent it has such an argument, it has waived it for failing to develop it. *SmithKline*, 439 F.3d at 1319.

In any event, the plain language of the definition of "evasion" in EAPA contains no intent or culpability requirement. 19 U.S.C. § 1517(a)(5)(A). Moreover, there is an explicit exception for clerical errors that provides that "the term 'evasion' does not include entering covered merchandise . . . by means of {documents or statements that are false or omissive} as a result of a clerical error" unless "the clerical error is part of a pattern of <u>negligent</u> conduct." *Ikadan*, 639 F. Supp. 3d at 1349 (quoting 19 U.S.C. § 1517(a)(5)(B) (alterations in original). "{W}here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Further, reading an intent requirement into the EAPA statute would violate principles of law applicable to all AD/CVD proceedings. Both this Court and the Federal Circuit have declined to read an intent requirement into AD/CVD law for a simple reason: in the limited time CBP and Commerce are required to conduct their investigations they do not possess the ability or resources to conduct a full-scale criminal-like investigation into alleged wrongdoing by an importer and comb through what would be large volumes of information to identify evidence of scienter. *See, e.g., Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003) ("While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the

statute does not contain an intent element … {t}he statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent"). As a result, the agencies must rely on the limited information that is provided by importers and, in some instances, gathered at verification. Given Commerce's and CBP's reliance on what a foreign producer chooses to provide, it is unclear how—absent a concession or error on the part of an importer—any finding of intent could ever be made. Moreover, when Congress intends for the motivations behind a party's actions to impact the penalty for improper importation, it says as much in the statutory language: maximum penalties under 19 U.S.C. § 1592 shift depending on whether an act was taken by "fraud, gross negligence, or negligence," or the extent to which a party was aware of its illegal behavior.[7] *Cf. Rubin*, 138 S. Ct. at 826 (if Congress intended a statute to have certain effect, it "knew how to say so"). It did not do so in the EAPA statute.

    Although as outlined above, the EAPA statute does not require CBP to find an intent or culpability element, SCS nevertheless argues that it did not know, and only found out through Kales/Engga's RFI responses, that the exporters were exporting any quartz from China. Pl.'s Mem. at 28-29. Although irrelevant to CBP's finding of evasion, SCS's statements also strain credulity given that (1) CBP had already issued the interim measures and had provided the NOI to SCS before the exporters filed their RFI responses; (2) the Kales/Engga Chinese affiliation was publicly available on [ ███████████████ ]; and (3) the shipments could be traced to China on [ █████ ]. *See* NOI at 1, 6, 8, 12-13. Thus, in addition to being irrelevant to an evasion analysis, SCS's claims of lack of knowledge are also not credible.

---

    [7] *See* Appendix B to 19 C.F.R. § 171 for CBP's definitions of "Degrees of Culpability Under Section 592."

E.    **CBP Reasonably Applied Adverse Inferences**

Although SCS does not dispute that Kales/Engga and Strry failed to cooperate to their

best of their ability—which, consequently, would permit CBP to use an inference against these

companies—SCS argues that CBP cannot use an inference "in a way that only affects SCS."

Pl.'s Mem. at 32.  According to SCS, CBP's inference that all of the QSP exported by

Kales/Engga and Strry during the period of investigation was of Chinese origin "is not adverse"

to Kales/Engga because the exporters have already sold the QSP.  *Id.*  SCS argues that it was a

cooperating party and, thus, should not face collateral consequences from this adverse inference.

To be clear, CBP drew inferences adverse to the interests of the exporters from facts

available on the record and found that all the QSP Kales/Engga and Strry sold to SCS during the

period of investigation was of Chinese origin and subject to the AD/CVD Orders.  That finding

has consequences on SCS—because as a result of the determination that QSP exported by

Kales/Engga and Strry constituted covered merchandise, SCS is responsible for paying the

antidumping and countervailing duties.  The publication of a determination that Kales/Engga and

Strry were involved in an evasion scheme to transship Chinese-origin QSP is adverse to the

interests of these exporters—even though their shipments to SCS have already occurred—

because it will dissuade future potential customers from importing QSP from them to avoid the

risk of EAPA liability.  *See* Review Det. at 15.  As CBP aptly explained,

> an adverse inference that China is the country of origin of all of the QSP that
> Kales/Engga and Strry export remains regardless of the QSP's change in
> geographic location or ownership.  Thus, the adverse inference would necessarily
> impact downstream importers of Kales/Engga and Strry by affecting the
> exporters' abilities to ship QSP into the United States without potentially
> incurring AD/CVD liability and EAPA liability.  In short, Kales/Engga and Strry
> will no longer be able to "avoid the adverse inferences permitted by statute simply
> by selecting an unrelated importer."

Review Det. at 15 & n.104 (quoting *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir.

2010) (other quotation marks, footnotes, and citations omitted).

Second, CBP may apply an adverse inference against a party that "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information…" 19 U.S.C. § 1517(c)(3)(A). SCS's argument that CBP may not use an adverse inference if it has collateral consequences against a cooperating party is contrary to the language of 19 U.S.C. § 1517(c)(3)(B), which provides that "adverse inferences may be used 'without regard to whether another person involved in the same transaction or transactions under examination has provided the information sought.'" *Phoenix*, 2024 WL 2891503, at *7 (quoting 19 U.S.C. § 1517(c)(3)(B)). The Court has affirmed this principle by holding: (1) "{a}ny collateral consequences {from} the decision to draw an adverse inference . . . {are} permissible under the statute," *Skyview Cabinet USA, Inc. v. United States*, No. 1:22-CV-00080, 2023 WL 4073781, at *8 (Ct. Int'l Trade June 20, 2023); (2) whether a gap in the record exists is not determinative to whether CBP may use an adverse inferences, *CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369, 1379 (Ct. Int'l Trade 2023); and (3) CBP may "apply adverse inferences in response to the alleged manufacturers' failure to cooperate even if {the importers} obtained accurate information regarding the original manufacturer and exporter of the Subject Entries," *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1251 (Ct. Int'l Trade 2022). Thus, the EAPA statute permitted CBP to use inferences against the exporters, even if that inference has collateral consequences on the SCS, the importer.

Moreover, the Federal Circuit has rejected arguments similar to the one SCS makes, in the context of AD/CVD investigations and administrative reviews. *See e.g., Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1372 (Fed. Cir. 2014) ("{C}ollateral impact on a cooperating party does not render the application of adverse inferences in a CVD investigation

improper.") (citing *KYD, Inc.*, 607 F.3d at 768).  For example, in *Mueller Commercial De Mexico v. United States*, 753 F.3d 1227, 1236 (Fed. Cir. 2014), the Federal Circuit sated that, under 19 U.S.C. § 1677e(b), Commerce is not barred "from drawing adverse inferences against a non-cooperative party that have collateral consequences for a cooperating party."  Accordingly, CBP's use of an adverse inference was reasonable.

    **F.**    **The Court Should Dismiss Counts Of SCS's Complaint That SCS Has Abandoned**

    The Court should dismiss Counts III, IV, V, X in SCS's Complaint, ECF No. 4, because SCS has abandoned those claims in its opening brief.

    As stated above, "is well established that arguments not raised in the opening brief are waived."  *SmithKline*, 439 F.3d at 1319.  This Court has also explained, "it is axiomatic that any claim which is not pressed is deemed abandoned."  *De Laval Separator Co. v. United States*, 511 F. Supp. 810, 812 (Ct. Int'l Trade 1981).  SCS has raised 10 counts in its complaint, but has since failed to address Counts III, IV, V, and X.  SCS raised no arguments in its opening brief regarding any of those counts.  Accordingly, SCS has abandoned those claims and the Court should dismiss them.

## CONCLUSION

    For these reasons, we respectfully request that the Court deny SCS's motion for judgment on the agency record, sustain CBP's evasion determination, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/Liridona Sinani
OF COUNSEL:                         LIRIDONA SINANI
                                    Senior Trial Counsel
NICOLAS A. MORALES                  Commercial Litigation Branch
Attorney                            Civil Division
Office of Chief Counsel             U.S. Department of Justice
U.S. Customs and Border Protection  P.O. Box 480
                                    Ben Franklin Station
                                    Washington, DC 20044
                                    Telephone:    (202) 353-2188
                                    Facsimile:    (202) 307-0972
                                    Email:        Liridona.Sinani@usdoj.gov

November 15, 2024                   *Attorneys for Defendant*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| SUPERIOR COMMERCIAL SOLUTIONS LLC,   ) | |
| ) | |
| Plaintiff,   ) | |
| v.   ) | Court No. 24-00052 |
| ) | |
| UNITED STATES,   ) | |
| ) | |
| Defendant.   ) | |

<u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied, and it is further

ORDERED that the final determination of the U.S. Customs and Border Protection is sustained in its entirety, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated _____                    _____
      New York, N.Y.                                                      Judge

### <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief contains 10,093 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<em><u>s/Liridona Sinani</u></em><br>LIRIDONA SINANI