## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| _____ ) | |
| SUPERIOR COMMERCIAL SOLUTIONS, LLC, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Ct No. 24-00052 |
| ) | |
| ) | |
| UNITED STATES, ) | **PUBLIC VERSION** |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>PLAINTIFF'S REPLY BRIEF</u>

Gregory S. Menegaz
Judith L. Holdsworth
Alexandra H. Salzman
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: December 6, 2024

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................2

   I.   SCS Exhausted Administrative Remedies, and Exception to the Exhaustion
      Doctrine Otherwise Apply ...................................................................................2

   II.  CBP's Violation of Statutory Deadline And Notice Requirement Prejudiced
      SCS      .........................................................................................................7

   III. CBP Failed to Perform An Entry-By-Entry Review........................................13

   IV. CBP Erred in Not Considering Intent or Culpability In Making an EAPA
      Determination ....................................................................................................19

   V.  CBP's Application of Adverse Inference Was Unlawful and Unreasonable ................20

   VI. Counts III, IV, V, X in SCS' Complaint............................................................22

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022) ..............21

*Brock v. Pierce County*, 476 U.S. 253, 259-260 (1986) ................................................11

*CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369 (Ct. Int'l Trade 2023)............................21

*Connally v. General Constr. Co.*, 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1926)..................4

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ............................................................................................................19

*FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012) ............................................1, 4, 5

*H&E Home, Inc. v. United States*, 714 F. Supp. 3d 1353 (Ct. Int'l Trade 2024) ........................16

*Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011) ...................11

*Home Prods. Int'l, Inc. v. United States*, 837 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ............ 6-7

*Intercargo Ins. Co v. United States*, 83 F.3d 391 (Fed. Cir. 1996) ................................12

*Jacobs Project Mgmt. Co. v. United States DOI*, 64 F.4th 123 (3rd Cir. 2023) ..........................11

*Johnson v. City of Shelby,* 574 U.S. 10 (2014) ................................................6

*Loper Bright Enters. V. Raimondo,* 144 S. Ct. 2244 (2024)........................................9

*NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998) ........................................9

*Papachristou v. Jacksonville*, 405 U. S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972)...................4

*Phoenix Metal Co. v. United* States, 2024 Ct. Intl. Trade LEXIS 69*, No. 20-00048, Slip Op. 2024-68 (June 10, 2024) ..................................................................8

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012) ..............................9

*Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448 (5th Cir. 1979) ........................................9

*Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023)............................3, 9

*Skyview Cabinet USA, Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 95, *8, SLIP OP. 2023-91, 2023 WL 4073781 (June 20, 2023)..........................................................21

*Thai I-Mei Frozen Foods Co. v. United States*, 477 F. Supp. 2d 1332 (Ct. Int'l Trade

2007) ...................................................................................................................5

*Thuan An Prod. Trading and Serv. Co. v. United States*, 348 F. Supp. 3d 1340 (Ct. Int'l Trade 2018) ...................................................................................................... 5-6

*United States v. Alcan Foil Products Div. of Alcan Aluminum Corp.*, 889 F. 2d 1513 (6th Cir. 1989) .......................................................................................................... 11-12

*United States v. Appendagez, Inc.*, 5 C.I.T. 74 (1983) ..................................................6

*United States v. General Motors Corp.*, 876 F.2d 1060 (1st Cir. 1989), *aff'd*, 496 U.S. 530 (1990) ..................................................................................................................11

## STATUTES

19 U.S.C. § 1515(a) ..................................................................................................11

19 U.S.C. § 1517(b)(1) ........................................................................................2, 7, 9

19 U.S.C. §§ 1517(b)(1)-(2) .....................................................................................5

19 U.S.C. §§ 1517(b)(2)(A)-(B) ...............................................................................7

19 U.S.C. §§ 1517(c)(1)(A)-(B) ...............................................................................7

19 U.S.C. § 1517(c)(3)(A) .......................................................................................20

19 U.S.C. § 1517(c)(4)...............................................................................................8

19 U.S.C. § 1517(d)(1) ......................................................................................13, 14

19 U.S.C. § 1517(e) ...................................................................................................7

19 U.S.C. § 1517(f)(2) ............................................................................................ 7-8

42 U.S.C. § 7413(b) ...........................................................................................12, 13

## REGULATIONS

19 C.F.R. § 165.41(f)(5) .....................................................................................3, 4, 5

19 C.F.R. § 351.309(c)(2) .........................................................................................3

**OTHER AUTHORITIES**

Trade Facilitation and Trade Enforcement Act of 2015, H.R. Rep. No. 114-114, pt. 1, at 23 (2015) ...................................................................................................................................10

Trade Facilitation and Trade Enforcement Act of 2015, Conference Report to Accompany H.R. 644, H.R. Rep. No. 114-376, at 35 (2015) .........................................................................10

Plaintiff Superior Commercial Solutions, LLC ("SCS") hereby responds to the Defendant's response brief.  U.S. Response Brief (Nov. 15, 2024), **ECF No. 25**.  As detailed below, SCS exhausted its administrative remedy with respect to CBP's failure to timely initiate EAPA Investigation No. 7783 and provide notice to SCS at that time.  Although SCS did not specifically cite the statutory provision, SCS' argument before CBP Trade Remedy & Law Enforcement Directorate (TRLED) and Office of Trade, Regulations and Rulings (RR) were sufficient to put CBP on notice, and according to CBP, it did review the statutory provision now asserted by SCS before issuing the determination. Additionally, CBP failed to provide fair notice to SCS that it is now interpreting 165.41(f)(5) differently to require administrative exhaustion. *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012) (affirming private party's right to fair notice of federal agency's change of policy in the laws implemented).

Alternatively, SCS' challenge on this issue concerns only the interpretation of the statutory language and does not require the application of any special expertise by CBP or the development of additional factual record, and thus the "pure legal issue" exception applies.  The Government's claim that SCS abandoned the argument by failure to plead this issue in its complaint should likewise be rejected. SCS' complaint has met the basic requirement under USCIT Rule 8, practice comment, that it has a "statement of the issues presented by the action". *See* USCIT Rule 8; *Johnson v. City of Shelby,* 574 U.S. 10 (2014) (reversing the Fifth Circuit's dismissal of appellant's complaint for failure to state the proper legal theory for the requested relief).

SCS established that it suffered substantial prejudice from CBP's failure to timely initiate the EAPA investigation and notify SCS of the investigation. Although such failure does not serve

as a jurisdictional bar, a less drastic remedy is available. The Court should order CBP to exclude

entries entered during CBP's delay and the time that SCS was deprived of timely notice.

Further, the Court should remand CBP's affirmative EAPA determination because CBP

failed to perform an entry-by-entry review and erroneously included entries that are non-covered

merchandise in its affirmative determination. The Government's argument that there are

discrepancies based on information CBP collected in the questionnaires issued is contrary to

record evidence.   Moreover, CBP failed to conduct an inquiry into SCS' intent or culpability as

required by the EAPA Statute.  CBP also failed to consider the distinction between the instant

case and prior cases where the Court upheld its application of adverse inference in light of all

parties' cooperation up to the verification, and instead applied adverse inference that affects only

SCS.

## <u>Argument</u>

### I.    <u>SCS Exhausted Administrative Remedies, and Exception to the Exhaustion Doctrine Otherwise Apply.</u>

The Government argues that SCS failed to plead its challenge against CBP's failure to

initiate the EPA investigation within 15 business days from September 8, 2022 (when Cambria

first filed the allegation) as required by 19 U.S.C. § 1517(b)(1).  Rsp. Br. at 12.  The Government

further contends that SCS waived the issue by failing to raise it in its Request for Administrative

Review brief filed before CBP RR.  *Id.*  The Court should reject these arguments.

In SCS' written arguments filed before TRLED and its request for administrative review

brief filed before RR, SCS alleged that EAPA Investigation 7783 suffers from multiple

procedural deficiencies, including that it did not inform SCS of EAPA Inv. 7783 until the time it

decided to impose Interim Measures, causing a 140-day delay.  *See* SCS Written Argument at 17-19 (June 26, 2023), **PV52, BC41;** SCS Request for Administrative Review at 20-22 (Oct. 16, 2023), **PV59, BC46**; CBP's Final Administrative Review Determination issued by the Office of Trade, Regulations and Rulings at 8 ("RR") (Jan. 11, 2024) ("Final RR Determination") (summarizing SCS' argument challenging the 140-day delay), **PV68, BC47**.  Therefore, CBP had sufficient notice and did consider SCS' challenge to the 140-day delay between the time that Cambria first filed to the time it notified SCS of the imposition of interim measures.  As with TRLED, RR maintained that "nothing in the EAPA statute {} affirmatively requires CBP to inform importers of a potential EAPA investigation before CBP finds 'reasonable suspicion' of evasion and imposition of interim measures {}." Final RR Determination at 18.

Further, the government cites 19 C.F.R. § 165.41(f) for requiring exhaustion and implies that the case law discussing Commerce's administrative exhaustion regulation 19 C.F.R. § 351.309(c)(2) is applicable.  *See* Rsp. Br. at 12.  CBP's regulation requires "{t}he argument expressing clearly and accurately the points of fact and law presented and citing the authorities and statutes relied on." 19 C.F.R. § 165.41(f)(5).  Unlike Commerce's regulation that requires "{t}he case brief must present *all* arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results," 19 C.F.R. § 351.309(c)(2) (emphasis supplied), CBP's regulation does not unambiguously require that "all" arguments be raised in the submitter's request for administrative review brief.

CBP's regulation was not enforceable since the EAPA Statute came into effect.  CBP's entire fact-finding phrase of EAPA Inv. 7783 was concluded prior to the CAFC decision in *Royal Brush Mfg. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023), and like all the EAPA investigations pre-dating *Royal Brush*, interested parties including their counsel had no access to confidential

information even when the confidential information was placed on the record by that party. Interested parties often cannot raise arguments at the administrative level due to the extensive redaction to pleadings on the records and CBP's analysis of those record documents. As CBP disputed all along that it did not need to set up an APO prior to the *Royal Brush* CAFC ruling, it was not in a position to enforce the regulation requiring exhaustion under 19 C.F.R. § 165.41(f)(5).

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012), citing *Connally v. General Constr. Co.*, 269 U. S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); *Papachristou v. Jacksonville*, 405 U. S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids' " (other citations omitted). In *FCC*, the contested issue relates to a fine against ABC over seven seconds of nudity. The government argued that ABC had notice that the brief nude scene would be considered indecent in light of a 1960 decision where the FCC declared "televising of nudes might well raise a serious question or programming contrary to 18 U.S.C. 1464." *FCC v. Fox TV*, 567 U.S. at 256. The Supreme Court held that "ABC lacked constitutionally sufficient notice prior to being sanctioned" in light of the record of agency decisions where it previously declined to find isolated and brief moments of nudity actionably indecent and the absence of any timely notice that seven seconds of nude scene would

now be found indecent.  *Id.* at 257.  Likewise, CBP cannot start enforcing 19 C.F.R. §

165.41(f)(5) and depart from its prior practice without adequate notice to interested parties.

To the extent that the Government argues that SCS failed to specifically cite 19 U.S.C. §

1517(b)(1)-(2) in its agency-level brief, because CBP did so based on its agency regulation that

provided CBP unchecked time between the alleger's filing of an EAPA allegation and its "date of

receipt", *see* 19 C.F.R. § 165.12, it is a pure legal issue whether CBP's action and regulation was

inconsistent with 19 U.S.C. § 1517(b)(1)-(2).  The "pure legal issue" exception applies when the

argument "require[es] neither further agency involvement nor additional fact finding or opening

up the record, and the inquiry must neither create undue delay nor cause expenditure of scare

party time and resources."  *Thai I-Mei Frozen Foods Co. v. United States*, 477 F. Supp. 2d 1332,

1354-55 (Ct. Int'l Trade 2007) (citation omitted).  SCS' challenge concerns only the

interpretation of the statutory language and does not require the application of any special

expertise by CBP or the development of additional factual record.

The Court should also find the Government's argument that SCS abandoned the issue for

failing to plead the issue in its complaint unpersuasive.  In SCS' complaint, it has detailed the

events that transpired in the 140-day prior to CBP announcing the imposition of interim

measures.  *Compl.* ¶ 8-10, ECF No. 4.  Count II of SCS' complaint challenges "CBP TRLED's

withholding of notice of the ongoing investigation to SCS in the 140 days {.}"  *Id.* ¶ 26-27.

SCS' complaint has met the basic requirement under USCIT Rule 8, practice comment, that it

has a "statement of the issues presented by the action".  *See* USCIT Rule 8. In prior case, the

Court has found respondent's complaint satisfies the Rule 8 requirement where it alleges

Commerce's application of adverse facts available and the rate applied were "not supported by

substantial evidence" and "not in accordance with law," even though the plaintiff did not

specifically challenge Commerce's statutory authority to impose a Vietnam-wide rate in an antidumping review. *Thuan An Prod. Trading and Serv. Co. v. United States*, 348 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2018). In *United States v. Appendagez, Inc.*, this Court declined to dismiss the Government's complaint in an action brought under 19 U.S.C. § 1592 that allegedly failed to specify the acts that constitute gross negligence or negligence. *United States v. Appendagez, Inc.*, 5 C.I.T. 74, 78-79 (1983). Discussing Rule 8(a) and Rule 8(f)(1) of the Court of International Trade (now part of the Practice Comment and Rule 8(e)(1)), the Court kept with the liberalization of pleading rules in federal courts and found the Government's complaint sufficient and otherwise directed defendant to file a motion for a more definite statement under the Court's rule if the defendant "requires more particularity in order to marshal his defenses." *Id.* In *Johnson v. City of Shelby,* 574 U.S. 10 (2014), rejecting Circuit Court's reasoning that the complaint must expressly invoke 42 U.S.C. § 1983 - the jurisdictional statute - because it services a notice function to the defendant, the Supreme Court held that unlike the stringent requirement for factual allegations pleaded in a complaint, pleadings of legal question only " 'call for a short and plain statement of the claim showing that the pleader is entitled to relief,' {the Federal Rules of Civil Procedure} do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 574 U.S. at 11 (citation omitted).

Lastly, the Government's reliance on *Home Products. Int'l* is misplaced. *See* Rsp. Br. at 12, *citing Home Prods. Int'l, Inc. v. United States*, 837 F. Supp. 2d 1294 (Ct. Int'l Trade 2012). In *Home Prods.*, the company Since Hardware challenged Commerce's selection of surrogate financial statements, and despite the Court's scheduling order to address the exhaustion issue, Since Hardware failed to do so in its opening brief. *Home Prods.* at 1298-99. The Court thus

sustained Commerce's determination on the basis that Since Hardware failed to exhaust administrative remedies before Commerce and failed to challenge Commerce's rejection of their affirmative case brief in their opening brief filed with the Court. *Id.* The Court's holding did not concern Since Hardware's complaint. Further, unlike Since Hardware, SCS submits that it raised the issue regarding the untimeliness of CBP's notice at the administrative level, and according to CBP, it considered SCS' argument in conjunction with the EAPA Statute. SCS fully briefed the issue in its moving brief.

## II.    CBP's Violation of Statutory Deadline And Notice Requirement Prejudiced SCS.

The EAPA Statute states that CBP shall "initiate an investigation if the Commissioner determines that the information provided in the allegation described in paragraph (2) reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(b)(1). Paragraph (2) of the statute states that an allegation needs to be filed with the Commissioner by an interested party, and "accompanied by information reasonably available to the party that filed the allegation." §§ 1517(b)(2)(A)-(B). In other words, the statute does not require that the allegation cover an exhaustive or illustrative element, but only "information reasonable available" to the alleger. CBP need only make a determination whether to the information contained in the allegation reasonably suggests evasion and then initiate or decline to initiate accordingly.

In the course of an EAPA investigation, CBP is directed by the statute to make several determinations throughout the course of the investigation. In addition to § 1517(b)(1) discussed above, § 1517(e) requires CBP to make a preliminary determination as to whether to impose interim measures within 90 days after initiation; §§ 1517(c)(1)(A)-(B) require CBP to render a Final Determination as to evasion within 300 days or 360 days after initiation; § 1517(f)(2)

7

requires CBP to conduct an Administrative Review to sustain or reverse such Final Determination within 60 business days upon receiving a timely filed request from the importer or the alleger.  None of these statutory provisions explicitly states that CBP should notify the targeted importer of the EAPA Investigation.  In contrast, the statute specifically states only once that CBP should notify the alleger no later than 5 business days after making a Final Determination under § 1517(c). *See* § 1517(c)(4).  The Government argues that Congress's inclusion of a notification requirement pertaining to the alleger demonstrates that Congress did not intend to provide notice to the targeted importers at any particular point in the investigation.  Rsp. Br. at 17-18.  SCS disagrees.  Congress' silence in all these provisions with respect to the targeted importer only shows a presumption that CBP would provide the targeted importer timely notice after each of the consequential decisions.

The Government argues that SCS failed to identify any protected interests of which it was deprived because "it is well-established that a company does not have a constitutionally protected property interest in any rate of duty, an importation, or even engaging in international trade."  Rsp. Br. at 18-20 (discussing, *inter alia*, *Phoenix Metal Co. v. United* States, 2024 Ct. Intl. Trade LEXIS 69*, No. 20-00048, Slip Op. 2024-68 (June 10, 2024), where the Court found that Phoenix Metal did not allege sufficient cognizable property interest and redressable harm present at the interim stage to trigger the kind of due process right it requests).  The Government misconstrued SCS' argument.  SCS does not argue that it is entitled to due process specifically at the stage prior to CBP's imposition of interim measures.  Instead, SCS argues that the EAPA Statute as a whole would be unconstitutional and violates private parties' due process right if CBP's interpretation of (the lack of) notice requirement to targeted importers in the EAPA statute is allowed.  Under such reading, CBP would have no obligation to notify SCS of EAPA Inv. 7783

at any time.  However, "in adjudicative administrative proceedings, due process includes the right to know what evidence is being used against one." *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1258 (Fed. Cir. 2023), *citing Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 452 (5th Cir. 1979).  The protected interest that the importer plaintiff in *Royal Brush* enjoys is the same protected interest that SCS should enjoy, which is the "right to notice and a meaningful opportunity to be heard."  *Royal Brush.* at 1257 & Fn 5 (citing *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-66 (Fed. Cir. 2012) ("The due process right to which [the importer] was entitled [in the antidumping proceeding] was the right to notice and a meaningful opportunity to be heard.") (internal quotations and citation omitted); *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998) ("NEC['s] claim[] that the determination of certain contested facts regarding the pending antidumping investigation against it was tainted by prejudgment . . . is a procedural due process claim of the kind generally cognizable under the Fifth Amendment of the Constitution.")).

To avoid the serious doubt of constitutionality of the EAPA Statute, therefore, the Court should find that the EAPA Statute has an implicit requirement that CBP notify the targeted importer of the investigation at each crucial point of time throughout the investigation, including when CBP first decides to initiate the investigation pursuant to 19 U.S.C. § 1517(b)(1).  *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2250-51 (2024) (overturning Chevron's second step to defer to agency when "the statute [was] silent or ambiguous with respect to the specific issue at hand", and instead courts should "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity.").

The legislative history also supports that CBP should provide timely notice to the targeted importer when the investigation is initiated.  As with the final Trade Facilitation and Trade

Enforcement Act, Title IV, *see* SCS Rule 56.2 Brief at 23-24 (Aug. 8, 2024) **ECF No. 21**, the

section title to the EAPA law is "*Prevention* of Evasion of Antidumping and Countervailing Duty

Orders." *See also*, Trade Facilitation and Trade Enforcement Act of 2015, H.R. Rep. No. 114-

114, pt. 1, at 23 (2015); Trade Facilitation and Trade Enforcement Act of 2015, Conference

Report to Accompany H.R. 644, H.R. Rep. No. 114-376, at 35 (2015). "Prevention" is defined as:

"the act of stopping something from happening or of stopping someone from doing something."

Cambridge Online Dictionary, at

https://dictionary.cambridge.org/us/dictionary/english/prevention (last accessed December 4,

2024). Surely, the most effective way of preventing evasion is to alert the targeted importer of

the evasion at the time of initiation, so that the targeted importer can choose to immediately

cease the importation of goods that are suspected to be covered merchandise.

Therefore, it is two factors – CBP's failure to initiate the investigation within 15 business

days, and CBP's failure to notify SCS of EAPA Inv. 7783 until imposition of interim measures –

that lead to CBP's extraordinary delay in notifying SCS of EAPA Inv. 7783. The Government

asserts in passing that although SCS did not receive official notice of the investigation until

January 26, 2023, it received the CF-28s on November 3-4, 2022. *See* Rsp. Br. at 21. To the

extent that the Government implies that the CF-28s serve as notice, the Court should reject this

argument. The CF-28s SCS received in no way informed SCS that an EAPA investigation had

been initiated. *See* SCS – Refiling CF-28 Response, Appendix 1 at pp. 2-5, Appendix 2 at pp. 2-

5, Appendix 3 at pp. 2-5, Appendix 4 at pp. 2-5 (Mar. 17, 2023), **BC27, PV37.** CBP routinely

issues CF-28s to importers to inquire about all aspects of entries made. These CF-28s give no

indication that an EAPA investigation had been initiated, nor did they put SCS on notice that they

might need legal counsel's help to complete the CF-28s.

SCS does not dispute that in the absence of specific consequence in the EAPA statute of CBP's failure to meet its deadline, the failure of CBP to observe a procedural deadline does not void the agency determination rendered after the deadline.  *Brock v. Pierce County*, 476 U.S. 253, 259-260 (1986); *Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011) (dismissing Hitachi's suit to recover duty deposits paid on entries when Customs failed to act on Hitachi's protest within 2 years as directed by 19 U.S.C. § 1515(a)).  However, that is not to say that CBP can freely ignore deadlines.

When the agency does not comply with its deadlines, the court can review if there are "less drastic remedies available for failure to meet a statutory deadline."  *Brock*, 476 U.S. at 260. In *Jacobs Project Mgmt. Co. v. United States DOI*, in rejecting appellant's request to set aside Department of Interior's (DOI) investigation report issued after the statutory deadline, the court, citing to other cases including *Brock*, explained that the appellant can "file suit under the Administrative Procedure Act ('APA') to 'compel agency action unlawfully withheld or unreasonably delayed[.]" *Jacobs Project Mgmt. Co. v. United States DOI*, 64 F.4th 123, 129-130 (3rd Cir. 2023) (internal citation omitted).

In *United States v. General Motors Corp.*, the court rejected GM's request for an enforcement bar against the Environmental Protection Agency (EPA) for failure to approve or reject the revised state implementation plan (SIP) within the four-month deadline.  *United States v. General Motors Corp.*, 876 F.2d 1060, 1067 (1st Cir. 1989), *aff'd*, 496 U.S. 530 (1990). Nonetheless, the court suggested that the company can either bring suit to compel agency action, or "[if] the district court finds that GM was prejudiced by the Agency's lengthy review and that the delay was not justified or that some portion of the delay was not justified, it may reduce the penalties in a manner it sees fit."  *Id.* at 1068; *United States v. Alcan Foil Products Div. of Alcan*

*Aluminum Corp.*, 889 F. 2d 1513, 1521 (6th Cir. 1989) (similarly holding that in the case that EPA failed to act on the revised SIP, the most effective remedy is that "[a]ny prejudice to the violator resulting from EPA's delay in ruling on a proposed SIP revision and EPA's reasons for delay [] be taken into account in determining penalties.") The enforcement statute referenced herein states that EPA can assess civil penalty of not more than $25,000 per day for each violation in certain instance. 42 U.S.C. § 7413(b).

As discussed in its R56.2 brief, SCS suffered substantial prejudice by continuing to make imports and accrue liability during the 140-days that it was deprived of notice.  The Government cites *Diamond Tools I* for the proposition that such prejudice must be "to an interest that the statutory deadline was designed to protect."  Rsp. Br. at 15, *citing Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1338 (Ct. Int'l Trade 2021).  However, in that case, CBP only missed the deadline by "three days", and DTT USA made a different argument regarding substantial prejudice.  *Id.* Moreover, the court's holding in *Diamond Tools* relied on *Intercargo Ins. Co v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996).  *Id.*

SCS submits that *Intercargo* is not applicable.  The plaintiff in *Intercargo* received timely notice of CBP's extension of liquidation although CBP's notice did not clearly state the reason for doing so, which resulted in a "technical defect."  *Intercargo*, 83 F.3d at 393-94.  In discussing Intercargo's request for the court to set aside the agency action (i.e., CBP's extension) entirely, the Federal Circuit analyzed the "substantial prejudice" factor under the harmless error doctrine and held "[p]rejudice, ***as used in this setting***, means an injury to an interest that the statute, regulation, or rule in question was designed to protect."  *Id.* (Emphasis supplied).  Whereas here, the Court need only consider if CBP's delay caused prejudice to SCS and apply a less drastic remedy than total enforcement bar.  To be clear, SCS was unable to bring suit to compel agency

action 15 business days after CBP received the EAPA allegation, as it was not notified of CBP's

initiation until months after the initiation.  However, like the civil penalties outlined in 42 U.S.C.

§ 7413(b) that accrues each day when the private party is not in compliance of EPA's

requirement, SCS' liability accrues with each entry as time progressed.

Therefore, the Court therefore should reduce SCS's AD CVD liability from the entries it

made during CBP's unreasonable delay.

### III.    <u>CBP Failed to Perform An Entry-By-Entry Review.</u>

In its moving brief, SCS argued that the statutory language on the effect of an affirmative

evasion determination supports a finding that CBP needs to make an entry-by-entry

determination.  *See* R56.2 Br. at 26-28.  In particular, 19 U.S.C. § 1517(d)(1) states that if CBP

makes a Final Determination that covered merchandise was entered, CBP needs to suspend or

continue to suspend the liquidation "of such covered merchandise" entered between the date of

initiation and date of determination, § 1517(d)(1)(A), and extend or continue to extend

liquidation "of such covered merchandise" that entered before the date of initiation, §

1517(d)(1)(B).  As the Government noted, CBP is directed to "require the posting of cash

deposits and assess duties on entries described in subparagraph (A) and (B) in accordance with

the instruction" from the Department of Commerce.  §§ 1517(d)(1)(C)-(D); Rsp. Br. at 24-25.

However, Commerce is not the agency that conducted the EAPA investigation.  Commerce

therefore can only inform CBP the cash deposit rates and duty assessment rates on whichever

entries CBP found to be "such covered merchandise" under subparagraph (A) & (B).  In fact,

record documents show that CBP did not require Commerce to inform it of the appropriate cash

deposits and duty assessment rate when it notified Commerce of the Final Determination, much

less require Commerce to identify what entries should be subject to such rates.  *See* TRLED – Notifying DOC of EAPA Determination (Sept. 5, 2023), **BC45, PV58**.

The Government goes on to explain that these are merely the effect of determination and not subject to judicial review.  Regardless of whether the effect of determination under § 1517(d)(1) in and of itself is subject to judicial review, the language in § 1517(d)(1) necessitates CBP's EAPA Final Determination and therefore the subsequent Administrative Review determination to be based on a specific set of entries that CBP found to be "covered merchandise."  In this case, substantial evidence on the record shows that only [                    ] POI shipments contain countertops manufactured using Chinese quartz slabs.  CBP erred in not segregating those [    ] entries from the other [    ] entries.

The Government also disputes SCS' statement that in the Final RR Determination CBP no longer contended that there are inconsistencies or discrepancies in the purchase and production documents which demonstrates that [    ] shipments SCS entered were manufactured using Vietnamese-origin slabs.  It claims erroneously that RR agreed with TRLED's assessment and specifically cited to certain pages in TRLED's August 31 Determination.  Rsp. Br. at 23, *citing* CBP TRLED's Final Determination of Evasion as to SCS (August 31, 2023) ("August 31 Determination"), **PV56, BC44.**

To be clear, in that determination, aside from applying adverse inferences due to the exporters cancelling verification, CBP noted inconsistencies in the questionnaire responses submitted by the exporters to say that it cannot rely on those documents to find that [    ] shipments SCS entered were not covered merchandise.  *See* August 31 Determination at 32-37 & 47-48.  In particular, TRLED found two "inconsistencies" in each set of production records cited, that (1) the corresponding Strry Production Progress sheet does not show Strry produced all of

the QSP pulled out of inventory by Kales, and (2) the Kales Production Process Record does not

show that Kales packed all pieces of QSP that were listed on the corresponding commercial

invoice for the entry.  *See e.g.*, August 31 Det. at 32-36 (discussing SCS Entry 6818, 6873, 6907,

9051, 6931, 1905, 0197, 4517, 6426).  SCS used the entry ending 6816 as an example to show

that TRLED's perceived inconsistency was based on a misunderstanding of the unit of measure

on the records.  For that entry, TRLED found:

> Entry [         ]6816's Material Withdraw Ticket ostensibly indicates that
> Kales/Engga pulled [    ] QSP slabs out of inventory for this entry. It denotes "ST
> Strry" in the note column, however, … the Strry Production Progress Sheet
> ostensibly indicates that Strry only produced [    ] of the entry's QSP
> slabs. …Additionally, the Kales Production Process Record indicates that
> Kales/Engga ... [              ] QSP slabs for the entry. However, these [
>       ] QSP slabs do not account for most of the [      ] PCE of QSP listed on
> the entry's commercial invoice.

*Id.* at 32-33 (internal citation omitted)**.**

        In response, SCS identified that TRLED's counting of [    ] pieces QSP slabs

Kales/Engga pulled out of inventory for this entry, and the subsequent discussion relating to only

[              ] pieces of QSP slabs were produced by Strry in Vietnam was wrong, and

numbers on the Kales/Engga raw materials withdrawal ticket and the later-issued commercial

invoice were in square meters (m2) instead of pieces.  As SCS aptly explained:

> Strry's Production Progress Sheet shows that it produced [
>                        ]. [
>                              ] as noted.  The surface area of
>                                          ].  The
> corresponding Kales' Material Withdraw Ticket indeed shows Kales withdrew
> [                          ]. As such, 100% of this entry's QSP
> slabs Kales withdrawn are accounted for in Strry's production records.
> …
> Kales' Production Process Record shows that they packed [    ] m2 at the end of
> the production run (i.e., [              ]).  The corresponding commercial

invoice for this entry, invoice #[                    ], has a column under Quantity
that listed the QSP surface area for each product line item.  SCS added the m2
figures listed in all [     ] rows under this column, and the total comes out to
[        ] m2.  The [                                        ] is likely caused
by rounding.... As such, … all finished countertop products packed and shipped
were accounted for, in shipments that the Exporters reported to be entirely
manufactured in Vietnam.

SCS - Request for Administrative Review, at 25-26 (Oct. 16, 2023) (internal citation omitted),

**PV59, BC46.**

Nowhere in the Final RR Determination did RR contend that there were unaccounted

quartz slabs Kales withdrew in the universe of [     ] shipments of non-covered merchandise.  In

its brief, the Government was only able to cite to Final RR Determination page 14 and footnote

90 and even that lacks merits.  Rsp. Br. at 23; *but see,* Final RR Determination 14 (discussing

only that CBP can apply adverse inference because Kales/Engga withdrew their participation

before the scheduled on-site verification) & n.90 (quoting a sentence on page 29 of the August

31 Determination that pertains to cancelling verification).

It is thus clear that RR reviewed and agreed with SCS' clarification to the "discrepancies"

that TRLED failed to follow up in its investigation.  We note that contrary to CBP's conduct in

this investigation, it has taken a position elsewhere that TRLED is ***obligated*** to follow up with

interested parties on perceived discrepancies in their questionnaire response.  *H&E Home, Inc. v.*

*United States*, 714 F. Supp. 3d 1353, 1368 & 1379-80 (Ct. Int'l Trade 2024) (sustaining CBP's

remand redetermination to reverse a prior affirmative evasion finding, in part due to that

"TRLED failed to 'follow up' on the claimed discrepancies, and that, had TRLED done so, it

would have found that the discrepancies could be explained.")

Additionally, the Government claims that the record was "rife with evidence of

Kales/Engga's Chinese affiliation."  Rsp. Br. at 23.  TRLED's finding of Kales/Engga's Chinese

affiliation _were entirely_ based on memoranda TRLED placed on the record and for which the unredacted version was not available to SCS throughout the investigation.  *See* August 31 Determination at 17-22.  On the contrary, in the questionnaire responses filed by Kales/Engga, Strry, the companies provided a chart listing all of their affiliated companies, and none of them were Chinese companies.  *See e.g.,* Engga and Kales Consolidated RFI Response, at Exhibit 2 (Mar. 1, 2023) ("Engga & Kales RFI Rsp."), **PV33, BC15**.  On the administrative level, in response to SCS' argument that the use of such confidential information violates SCS' due process right, RR specifically stated that it no longer relies on those documents.  Final RR Determination at 18 ("By contrast, here, RR does not rely on confidential information to which SCS did not have access to reach our determination of evasion.").  The Government cannot now argue that documents in these memoranda and TRLED's prior conclusion on Chinese affiliation supports an affirmative determination of evasion because SCS has not had the opportunity to file rebuttal factual information against them.

The Government also claims that record evidence shows that "Kales/Engga sourced [    ] percent of Quartz slabs from China" and that "Kales/Engga imported so much Chinese slab as opposed sourcing Vietnamese product, that it would be impossible for them to exclusively export Vietnamese origin QSP to SCS in the amounts that SCS required."  Rsp. Br. at 23, *citing* August 31 Determination at 25-26.  It is unclear how these statements contradict SCS' argument that [                    ] shipments were manufactured using only Vietnamese-origin slabs.  First, we note that the [    ] percent figure came from Kales/Engga's own raw materials supplier exhibit, in which Kales/Engga reported purchasing [        ] m2 of Vietnamese-origin slabs and [        ] m2 of Chinese-origin slabs during the POI, and from there one can calculate that the percentage of Chinese-origin slabs were [    ] percent.  *See* Engga & Kales RFI Rsp. at Exhibit 23, **PV33,**

**BC15.**  Further, Kales/Engga did not assert that they exclusively exported Vietnamese origin QSP to SCS in the amounts that SCS required.  The total quantity of quartz slabs in the [    ] non-covered merchandise shipments exported to SCS were only [        ] m2.  *Id.* at Exhibit 24.  The quantity of Vietnamese-origin slabs purchased were indeed not exclusively used in the shipments to SCS, though they were more than sufficient to cover the [   ] shipments to SCS.

In addition, the Government claims that the double invoicing by Kales and Engga undermines SCS' argument on the [   ] shipments.  Rsp. Br. at 23, *citing* August 31 Determination at 27-28.  The so-called "double invoicing" had nothing to do with the evasion investigation.  In Kales/Engga's RFI response, it alerted CBP that "[


]."  Kales and Engga Supplemental RFI Response, at 8 (May 15, 2023) ("Kales & Engga Supp. RFI Rsp."), **PV44, BC34.**  Engga HK [                 ] registered in Hongkong, and its sole purpose was to "[

].  Engga & Kales RFI Rsp. at Exhibit 2, **PV33, BC15.**  This purpose of this arrangement and the related so-called "double invoicing" was to [


], and does not impact in any way the merchandise actually shipped to SCS and whether they were covered merchandise.

Lastly, with respect to the argument that CBP was unable verify on-site the information provided by the exporters, record evidence submitted in the course of the investigation relating to the [   ] shipments is sufficient for purposes of excluding them from the affirmative evasion investigation.

IV.    **CBP Erred in Not Considering Intent or Culpability In Making an EAPA Determination.**

The Government argues that the plain language of the definition of "evasion" in EAPA contains no intent or culpability. In doing so, it attempted to distinguish *Diamond Tools* based on the fact that the diamond sawblades subject to CBP's EAPA scope referral were covered by a pre-existing Commerce scope determination in the original 2006 Antidumping Investigation. *See* Rsp. Br. at 26-2. The Court should reject this distinction.

In *Diamond Tools I,* the production scenario used by the exporter was previously found to be outside of the scope, but Commerce initiated a circumvention inquiry on December 1, 2017 and eventually found that such production scenario was within the scope by way of circumvention. *Diamond Tools*, 545 F. Supp. 3d at 1351-52. The party contested whether DTT USA's entry entered prior to December 1, 2017 (i.e., Commerce's initiation of the circumvention inquiry) can be considered "covered merchandise" in the EAPA investigation, and the Court held it can. *Id.*, at 1348-51 ("[T]he court upholds as a permissible construction of the statute Customs interpretation of the referral provision to find that DTT USA's entries prior to December 1, 2017, are 'covered merchandise.'") Nonetheless, the Court rejected CBP's argument – same as the argument reached in the instant case – that EAPA does not require CBP to determine any level of culpability and only that evasion occurred with entry. *Id.* at 1351-55; *see also*, Final RR Determination at 16-17.

Additionally, the Government's attacks on SCS's statement that with due diligence and reasonable care it still did not know that Kales/Engga used some portion of Chinese-origin slabs fail. *See* Rsp. Br. at 29. First, CBP provided both Initiation Notice and Interim Measures Notice to SCS when it imposed interim measures and in the public versions only. Consequently, they only alerted SCS of the possibility of evasion so SCS immediately ceased importing from

19

Kales/Engga. Still, SCS did not know that evasion occurred for certain entries as a fact until Kales/Engga's filed their RFI response and informed SCS as such.  Second, the Government's statement that "the Kales/Engga Chinese affiliation was publicly available on [

]" is completely void of factual basis.  In the Interim Measure Notice, CBP found information from [                    ] the same corporate tax number was used for both Eagga and Kales, and one representative linked to Strry (i.e., the Vietnamese quartz slabs manufacturer closely affiliated with both Engga and Kales and a supplier to Kales) is also linked to Kales.  *See* Interim Measures Notice at 8 & 11, **PV11, BC10.**  In other words, the [                    ] information CBP put on the record gave no indication that Engga/Kales/Strry had Chinese affiliation, only that these three Vietnamese companies might have been affiliated. These three companies reported so in their RFI responses. Again, had CBP notified SCS of the EAPA investigation when it initiated the case, and had CBP shared the unredacted version of the [

] used to partially support its interim measure determination prior to imposing interim measures, counsel could have clarified for CBP then.  Third, the Government insinuated that SCS could have known about potential evasion through export and import data on [          ]. Rsp. Br. at 29. [          ] is a paid data service that SCS did not use. The Government put forth no efforts to establish that SCS purchased [          ] subscription or that it should have done so in exercising reasonable care.

## V.    CBP's Application of Adverse Inference Was Unlawful and Unreasonable.

CBP's application of adverse inferences should be tailored to the Vietnamese companies and avoid collateral consequences for SCS to the extent possible.  The statutory language is clear that CBP can only use inference that is adverse to the interests of the uncooperative party.  19 U.S.C. § 1517(c)(3)(A).

The Government cites several cases in which the Court upheld CBP's adverse inferences applied, but failed to note that in each of the cases the foreign supplier either did not provide all information requested by CBP or were completely unresponsive in the course of investigation. *See* Rsp. Br. at 31 (citation omitted); *but see Skyview Cabinet USA, Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 95, *8, SLIP OP. 2023-91, 2023 WL 4073781 (June 20, 2023) (the foreign supplier "Rowenda Kitchen failed to respond to any of Customs' inquiries"); *CEK Grp. LLC v. United States*, 633 F. Supp. 3d 1369, 1379 (Ct. Int'l Trade 2023) (both the importer CEK and the supplier NWH provided only partial responses to CBP's questionnaires); *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1251 (Ct. Int'l Trade 2022) (the foreign exporter "either did not respond to CBP's [requests for information], or failed to provide most of the information requested in the [request for information].").  Unlike those cases, SCS and the foreign suppliers in EAPA Inv. 7783 fully responded to CBP's initial request for information and the supplementals, for which CBP did not identify any credible discrepancies.

The Government does not dispute that all entries captured in EAPA Inv. 7783 were entries already sold and imported by SCS.  Moreover, the adverse inference CBP applied to Engga/Kales in this case only affects SCS, contrary to the Government's assertion.  In particular, the Government claims that its affirmative finding is *also* adverse to the exporters because "it will dissuade future potential customers from importing QSP from them to avoid the risk of EAPA liability." Rsp. Br. at 30.  However, for any U.S. importers that are monitoring CBP's EAPA investigations, it already achieved that by issuing the Interim Measures Notice.

In sum, given the special circumstances of this case, CBP's application of adverse inference is unsupported by substantial evidence on the record.

## VI.     Counts III, IV, V, X in SCS' Complaint

The Government asserts that SCS has abandoned Counts III, IV, V, X in its Complaint. To be sure, in Counts III, IV, and V, SCS challenge TRLED's failure to provide unredacted documents to SCS in the course of the investigation, including to set up an APO to make such documents available to SCS' counsel and serve the documents to counsel timely.  Upon closer reviewing of the Final RR Determination, SCS elected to drop Counts III, IV, V in its opening brief because RR refrained from using any redacted documents challenged in those counts in sustaining TRLED's determination.  Information no longer relied upon by the agency in its final determination is not subject to review.

In Count X, SCS challenged TRLED's failure notify Commerce because CBP never made available its internal email to Commerce in the months leading to the SCS bringing this court appeal.  SCS became aware for the first time that CBP alerted Commerce **after** receiving the Administrative Records of this appeal and therefore no longer pursues that count in its complaint.  *See* TRLED – Notifying DOC, **BC45, PV58**.

## Conclusion

For the reasons above, SCS respectfully request that the Court grant SCS' motion for judgment on the agency record and remand CBP's evasion determination for further proceeding consistent with the Court's holding.

Respectfully submitted,

 /s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang[**]
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
Date: December 6, 2024                                    *Counsel to Plaintiff*

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **6,998** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
DEKIEFFER & HORGAN, PLLC
Suite 1101
1156 Fifteenth St., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*