Slip Op. 25-147

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **SUPERIOR COMMERCIAL SOLUTIONS, LLC,** | |
| **Plaintiff,** | **Before: Jennifer Choe-Groves, Judge** |
| **v.** | **Court No. 24-00052** |
| **UNITED STATES,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

[Sustaining U.S. Customs and Border Protection's determination under the Enforce and Protect Act.]

Dated: November 26, 2025

<u>Gregory Stephen Menegaz</u>, <u>Alexandra H. Salzman</u>, <u>Judith L. Holdsworth</u>, and <u>Vivien J. Wang</u>, The Inter-Global Trade Law Group, PLLC, of Washington, D.C., for Plaintiff Superior Commercial Solutions, LLC.

<u>Brett A. Shumate</u>, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief was <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director, <u>Franklin E. White, Jr.</u>, Assistant Director, and <u>Liridona Sinani</u>, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. Of counsel on the brief was <u>Nicolas A. Morales</u>, Attorney, Office of Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C.

Choe-Groves, Judge: This case involves procedural due process challenges to implementation of the Enforce and Protect Act ("EAPA"), alleged in a

Complaint filed by Plaintiff Superior Commercial Solutions, LLC ("Superior" or
"Plaintiff"), an importer of quartz slab countertops, against U.S. Customs and
Border Protection ("Customs"). Compl. ¶¶ 1–2, ECF No. 4. Plaintiff alleges that
Customs violated Plaintiff's procedural due process rights when Customs failed to
initiate an investigation within the statutorily mandated 15 days, and when
Customs failed to notify Plaintiff about the EAPA investigation until the
imposition of interim measures. Id. ¶¶ 23–27. Plaintiff also contends that
Customs' evasion determination was not supported by substantial evidence and the
adverse inference determination was not in accordance with law. Id. ¶¶ 39–52.

Customs determined that Superior evaded antidumping and countervailing
duty orders on quartz surface products imported from the People's Republic of
China ("China") into the United States by underevaluation and/or transshipment
through Vietnam. Notice of Determination as to Evasion (Aug. 31, 2023) ("2023
Determination" or "2023 Det."), PR 56, CR 44[1]; Final Administrative Review
Decision, EAPA Case No.7783 (Jan. 11, 2024) ("2024 Final Administrative
Review Determination" or "2024 Final Admin. Rev. Det."), PR 68, CR 47; see
also Certain Quartz Surface Products From the People's Republic of China

---

[1] Citations to the administrative record reflect the Public Record ("PR"), and the
Confidential Record ("CR"), ECF Nos. 30, 31.

("Orders"), 84 Fed. Reg. 33,053 (Dep't of Commerce July 11, 2019) (antidumping

and countervailing duty orders).

      Before the Court is Plaintiff's Rule 56.2 Motion for Judgment on the Agency

Record, in which Plaintiff requests that this Court order Customs to rescind the

enforcement measures imposed on quartz countertop products imported between

September 29, 2022 and January 26, 2023; remand this case to Customs with

instructions to make determinations on an entry-by-entry basis; remand this case to

Customs with instructions to prove intent or culpability under the EAPA; and

remand this case to Customs with instructions to reconsider its application of an

adverse inference.  Pl.'s R. 56.2 Mem. Supp. Mot. J. Agency Record ("Pl.'s Br."),

ECF Nos. 21, 22.  The United States ("Defendant" or "Government") opposed

Superior's motion.  Def.'s Resp. Opp'n Pl.'s Mot. J. Agency R. ("Def.'s Resp."),

ECF Nos. 25, 26.  Superior filed a reply brief to the Government's opposition.

Pl.'s Reply Br., ECF Nos. 28, 29.  The Court asked the Parties to submit further

briefing in response to questions provided by the Court.  Order (Feb. 24, 2025),

ECF No. 33.  Superior and the Government provided their written responses to the

Court's Order.  Def.'s Resp. Court's Questions, ECF Nos. 35, 36; Pl.'s Resp. Court

Order, ECF No. 39; Def.'s Resp. Court's Questions II, ECF No. 42; Pl.'s Resp.

Questions, ECF No. 43.  For the reasons set forth below, the Court sustains

Customs' final administrative review evasion determination, notwithstanding

several concerns about procedural due process violations that are discussed below.

## BACKGROUND

In 2019, the U.S. Department of Commerce ("Commerce") issued

antidumping and countervailing duty orders on quartz surface products from

China. Orders, 84 Fed. Reg. at 33,053. The Orders instruct Customs to assess

"antidumping duties equal to the amount by which the normal value of the

merchandise exceeds the export price or constructed export price of the subject

merchandise, for all relevant entries of quartz surface products from China" and to

assess "countervailing duties on all relevant entries of quartz surface products from

China." Id. at 33,053, 33,055.

Cambria Company LLC ("Cambria"), a domestic producer of quartz surface

products, submitted an allegation to Customs on September 8, 2022, alleging that

Superior was evading the Orders. Request for an Investigation under the Enforce

and Protect Act of Superior Commercial Solutions LLC (Sept. 8, 2022) ("Cambria

Req. Invest.") at 5–9, PR 1, CR 4; 2024 Final Admin. Rev. Det. at 2. Cambria

alleged that two Chinese companies were exporting quartz surface products to

Kales Quartz Co., Ltd. ("Kales") in Vietnam, and then Kales was exporting the

quartz to Superior in the United States. Cambria Req. Invest. at 5–9; 2024 Final

Admin. Rev. Det. at 2. Customs acknowledged receipt of Cambria's allegation

one month later, on October 6, 2022.  Official Receipt Email (Oct. 6, 2022), PR 3;

2024 Final Admin. Rev. Det. at 2.  Fifteen business days after Customs'

acknowledgment of receipt, Customs initiated an EAPA investigation after

determining that Cambria's allegation reasonably alleged that Superior had evaded

the Orders.  2024 Final Admin. Rev. Det. at 2.

Customs informed Superior of its investigation for the first time on January

26, 2023.  Notice of Initiation of Investigation and Interim Measures External

Email (Jan. 26, 2023), PR 10.  Along with this notice, Customs informed Superior

that it had determined that a reasonable suspicion of evasion existed and that

Customs had decided to initiate interim measures.  Id.  Customs imposed interim

measures on February 2, 2023.  Notice of Initiation of Investigation and Interim

Measures (Feb. 2, 2023) ("Notice of Investigation and Interim Measures") at 1, PR

11, CR 10; 2024 Final Admin. Rev. Det. at 4.

After giving notice of the investigation and interim measures, Customs

issued Requests for Information to Superior, as well as three other Vietnamese

exporters and one Chinese exporter: Kales, Engga Company Limited ("Engga"),

Strry Manufacturing Company Limited ("Strry"), and Xiamen Stone Display.

2024 Final Admin. Rev. Det. at 5.  Xiamen Stone Display did not respond; Kales,

Engga, and Strry all responded to the requests for information; and Kales and

Engga submitted a joint response based on their affiliated status.  Id.  Customs

noted that Kales and Engga "are actually the same company" and often referred to the companies as "Kales/Engga." Id. at 5 n.19.

In their responses, the companies explained that Strry purchased the raw materials used to produce its quartz slabs in Vietnam and then provided its slabs to Kales/Engga for further processing in Vietnam. Id. at 5. Kales/Engga purchased semifinished quartz slabs and then sold the subject merchandise. Id. Customs stated that it intended to verify this process and conduct on-site inspections of each company's facilities in Vietnam. Id. Initially, the Vietnamese companies agreed to the inspections, but they later withdrew their consent. Id. at 5–6.

After receiving comments from both Cambria and Superior,[2] Customs' Trade Remedy & Law Enforcement Directorate issued a notice of determination, asserting that substantial evidence existed to support a determination that Superior imported quartz slab products from China into the United States "by undervaluation and/or transshipment through Vietnam." 2023 Det. at 1; 2024 Final Admin. Rev. Det. at 6. Customs' Trade Remedy & Law Enforcement Directorate also determined that Kales/Engga and Strry failed to cooperate to the best of their ability in the investigation and provided submissions that included "material false statements, fraudulent documentation, the omission of material facts," and unverified information. 2023 Det. at 38.

---

[2] Only Superior's comments were provided in full on the record.

Based on these determinations, Customs' Trade Remedy & Law
Enforcement Directorate applied an adverse inference against Kales/Engga and
Strry.  Id. at 37–39.  Applying the adverse inference, Customs determined that all
of Superior's quartz slab products that entered the United States from Kales/Engga
or Strry during the period of investigation were of Chinese origin.  Id. at 38–39.
However, Customs also noted that "enough evidence exist[ed] on the record to
determine that there is evasion without" the application of adverse inferences.  Id.
at 39; see also id. at 23–37 (discussing the totality of the evidence on the record).

Superior requested an administrative review of Customs' Trade Remedy &
Law Enforcement Directorate's determination, and Customs' Office of Trade,
Regulations & Rulings Directorate affirmed the determination.  EAPA Case No.
7783 – SCS Request for Administrative Review (Oct. 16, 2023) ("Superior
Request for Admin. Review"), PR 59, CR 46.  Superior then appealed to this
Court.  See Compl.  Superior seeks review of Customs' Trade Remedy & Law
Enforcement Directorate's Notice of Initiation and Interim Measures, dated
February 2, 2023; Customs' Trade Remedy & Law Enforcement Directorate's
Final Determination of Evasion, dated August 31, 2023; and Customs' Office of
Trade, Regulations and Rulings' Final Administrative Review Determination,
dated January 11, 2024.  Compl. ¶¶ 1, 10.

In Count One of its Complaint, Superior alleged that Customs violated its "due process right to be heard and defend against allegations of evasion at a meaningful time." Id. ¶ 23. In Count Two, Superior alleged that Customs acted contrary to the legislative intent of the EAPA when it withheld notice of its investigation into Superior. Id. ¶¶ 26–27. In Count Three, Superior alleged that Customs violated its due process right by not providing Superior with every unredacted memorandum in full that Customs used when making its determinations. Id. ¶¶ 28–30. In Count Four, Superior alleged that Customs acted arbitrarily and capriciously when it failed to "provide [Superior] and the Vietnamese entities each a partially-redacted business confidential version final determination and final administrative review decision, consisting, at a minimum, of each's own business confidential information[.]" Id. ¶ 33. In Count Five, Superior alleged that Customs acted arbitrarily and capriciously when it did not provide email notice to the parties that it uploaded the June 2023 memorandum to the EAPA online portal. Id. ¶¶ 34–37. In Count Six, Superior alleged that Customs acted arbitrarily and capriciously when it "misinterpreted a significant amount of information on the record that demonstrate[d] a substantial portion of [Superior's] quartz countertop imports from the Vietnamese exporter Engga was manufactured with only Vietnamese-origin slabs." Id. ¶ 39. In Count Seven, Superior alleged that Customs' affirmative evasion "determination on a substantial

portion of [Superior's] imports is contrary to record evidence." Id. ¶ 43. In Count

Eight, Superior alleged that Customs acted arbitrarily and capriciously when it

applied an adverse inference that impacted Superior when Superior was a

cooperating party to the investigation. Id. ¶¶ 45–47. In Count Nine, Superior

alleged that Customs acted arbitrarily and capriciously when it determined that

Superior submitted false material statements or omissions. Id. ¶¶ 48–49. Lastly, in

Count Ten, Superior alleged that Customs violated 19 U.S.C. § 1517(d)(1)(C)

when it failed to inform Commerce of its affirmative evasion determination or

request an applicable assessment rate from Commerce. Id. ¶¶ 50–52.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade ("CIT") has jurisdiction pursuant to

19 U.S.C. § 1517(g)(1) and 28 U.S.C. § 1581(c). 19 U.S.C. § 1517(g)(2) directs

the Court to examine "whether the Commissioner fully complied with all

procedures under subsection (c) and (f)" and "whether any determination, finding,

or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 19 U.S.C. § 1517(g)(2)). The U.S. Court of Appeals for the

Federal Circuit ("CAFC") has explained:

> Courts have found an agency's decision to be arbitrary and capricious
> when the agency "entirely failed to consider an important aspect of the
> problem, offered an explanation for its decision that runs counter to the
> evidence before the agency, or [the decision] is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise.

Ala. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009)

(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S.

29, 43 (1983)).

## DISCUSSION

### I.   Due Process Right to be Heard at a Meaningful Time (Count I)

### A.   Waiver

In its opening brief, Superior argues that Customs acted "contrary to law when it failed to initiate the EAPA investigation 15 business days after it received Cambria's September 8, 2022 allegation . . . ."  Pl.'s Br. at 16.

The Government avers that Superior waived its challenge to the timeliness of Customs' investigation because Superior failed to raise this claim in the administrative proceeding below and failed to raise this claim in its Complaint filed with this Court.  Def.'s Resp. at 11.

Superior argues that the Court should not find this issue waived simply because Superior "failed to specifically cite 19 U.S.C. § 1517(b)(1)-(2) in its agency-level brief[.]"  Pl.'s Reply Br. at 5.

The issue raised in Superior's opening brief was not adequately pled in the Complaint or in Superior's filings in the administrative proceeding below.  See Compl. ¶¶ 22–25.  EAPA Case No. 7783 – SCS Written Argument (June 26,

2023), PR 52, CR 41; EAPA Case No. 7783 – SCS Response to the Written

Arguments Filed by Alleger (July 11, 2023), PR 54, CR 42; Superior Request for

Admin. Review.

"[T]he Court of International Trade shall, where appropriate, require the

exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  Exhaustion of

administrative remedies establishes "that no one is entitled to judicial relief for a

supposed or threatened injury until the prescribed administrative remedy has been

exhausted."  Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir.

2003) (internal quotation marks and citation omitted).  Generally, administrative

exhaustion requires a party to present all its arguments in the administrative

proceeding before raising those issues in court.  See Dorbest Ltd. v. United States,

604 F.3d 1363, 1375 (Fed. Cir. 2010); 19 C.F.R. §§ 351.309(c)–351.309(d).

There are several exceptions, however, to the administrative exhaustion

requirement.  Consol. Bearings Co., 348 F.3d at 1003.  CIT has not required

exhaustion pursuant to 28 U.S.C. § 2637(d) under four circumstances: when "(1)

plaintiff's argument involves a pure question of law; (2) there is a lack of timely

access to the confidential record; (3) a judicial decision rendered subsequent to the

administrative determination materially affected the issue; or (4) raising the issue

at the administrative level would have been futile."  Ninestar Corp. v. United

States, 48 CIT __, 687 F. Supp. 3d 1308, 1326 (2024) (quoting Gerber Food

(Yunnan) Co. v. United States, 33 CIT 186, 193, 601 F. Supp. 2d 1370, 1377

(2009)).  The pure question of law exception may apply when a party raises an

issue "that can be addressed without further factual development or further agency

exercise of discretion."  Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146

(Fed. Cir. 2013).

Superior avers that the pure legal issue exception applies in this instance.

Pl.'s Reply Br. at 5.  Superior explains that its "challenge concerns only the

interpretation of the statutory language and does not require the application of any

special expertise by [Customs] or the development of additional factual record."

Id.  The Court agrees because the issue of the 15-day requirement is a pure legal

issue of statutory interpretation.  The Court will consider Superior's argument

under the pure question of law exception.

### B.    Timeliness of Customs' Initiation of EAPA Investigation

19 U.S.C. § 1517(b)(1) states:

> Not later than 15 business days after receiving an allegation described
> in paragraph (2) or a referral described in paragraph (3), the
> Commissioner ***shall initiate*** an investigation if the Commissioner
> determines that the information provided in the allegation or the
> referral, as the case may be, reasonably suggests that covered
> merchandise has been entered into the customs territory of the United
> States through evasion.

19 U.S.C. § 1517(b)(1) (emphasis added).

Superior explains that in April 2021, Customs announced that EAPA

allegations should be filed online through its designated portal.  Pl.'s Br. at 17.

Because Cambria submitted its allegation through the online portal, Superior avers

that Customs received it instantly.  Id.  Superior maintains that the date of receipt

in this case should be September 8, 2022, the day Cambria uploaded its allegation

in the online portal, and Customs was required to initiate its investigation no later

than September 29, 2022, 15 business days thereafter.  Id. at 16.  Superior avers

that Congress was clear and unambiguous when drafting 19 U.S.C. § 1517(b) and

"did not afford [Customs] the discretion to create an extra step involving an

undefined amount of time to consider whether the allegation is proper."  Id. at 17.

Post-Loper Bright, Superior asserts that this Court owes no deference to Customs

in deciding how to implement 19 U.S.C. § 1517(b).  Id. at 18; see Loper Bright

Enters. v. Raimondo, 603 U.S. 369 (2024).

Customs' regulation defines "date of receipt" as "the date on which CBP

provides an acknowledgment of receipt of an allegation containing all the

information and certifications required[.]"  19 C.F.R. § 165.12.  Superior avers that

this regulation gives Customs "unchecked time" to circumvent its statutory

responsibility.  Pl.'s Br. at 19.  The Court agrees.

The statute states:

Not later than 15 business days after receiving an allegation described
in paragraph (2) or a referral described in paragraph (3), the

Commissioner *shall initiate* an investigation if the Commissioner determines that the information provided in the allegation or the referral, as the case may be, reasonably suggests that covered merchandise has been entered into the customs territory of the United States through evasion.

19 U.S.C. § 1517(b)(1) (emphasis added). The statute hinges the deadline on a

determination made by the Commissioner, which, pragmatically, cannot happen

instantaneously, but according to the statute, must happen within 15 days.

Customs' regulation defines "date of receipt" as the date when Customs confirms

that the allegation contains "all the information and certifications required[.]" 19

C.F.R. § 165.12. It is important to note that the only information required to file an

evasion allegation is:

> (1) Name of the interested party making the allegation and identification of the agent filing on its behalf, if any, and the email address for communication and service purposes; (2) An explanation as to how the interested party qualifies as an interested party pursuant to § 165.1; (3) Name and address of importer against whom the allegation is brought; (4) Description of the covered merchandise; (5) Applicable AD/CVD orders; and (6) Information reasonably available to the interested party to support its allegation that the importer with respect to whom the allegation is filed is engaged in evasion.

19 C.F.R. § 165.11(b).

The Government contends that Superior's argument that Customs'

investigation was untimely should not prevail because the deadline set forth in 19

U.S.C. § 1517(b)(1) is not mandatory. Def.'s Resp. at 13–17. The Government

asserts that because there is no "hammer" provision or consequence for not

meeting the 15-day deadline, "shall" is optional rather than mandatory.  Id. at 14

(relying on Diamond Tools Tech. LLC v. United States, 45 CIT __, __, 545 F.

Supp. 3d 1324, 1333–35 (2021)).

This Court disagrees because "shall" means "shall," and "shall" is a

mandatory statutory obligation.  The U.S. Supreme Court has stated repeatedly that

"[t]he first sign that the statute imposed an obligation is its mandatory language:

'shall.'"  Maine Cmty. Health Options v. United States, 590 U.S. 296, 310 (2020).

"Unlike the word 'may,' which implies discretion, the word 'shall' usually

connotes a requirement."  Kingdomware Techs., Inc. v. United States, 579 U.S.

162, 171 (2016); see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,

523 U.S. 26, 35 (1998) (observing that "'shall'" typically "creates an obligation

impervious to . . . discretion").

The statute clearly states that "the Commissioner shall initiate an

investigation" no later than 15 business days after receiving an allegation.  19

U.S.C. § 1517(b)(1).  The Court holds that the 15-day deadline set forth in 19

U.S.C. § 1517(b) is mandatory, not optional.

Superior's argument here is not a novel one.  During the comment period for

the new regulations setting forth procedures for the investigation of claims of

evasion of antidumping and countervailing duty orders, including 19 C.F.R.

§ 165.12, "[m]ultiple commenters disagreed with the term 'date of receipt' in

§ 165.12(a)."  Investigation of Claims of Evasion of Antidumping and

Countervailing Duties, 89 Fed. Reg. 19,239, 19,243 (U.S. Customs and Border

Protection, Dep't of Homeland Security, Dep't of Treasury Mar. 18, 2024).  The

commenters argued that the purpose of the Trade Facilitation and Trade

Enforcement Act of 2015 was to require Customs "to proceed swiftly and adhere to

strict deadlines, but claimed that the way the interim regulation is written, the date

of receipt is entirely within [Customs'] control, and thus the regulatory language

runs counter to the statutory language . . . ."  Id.  Customs defined "date of receipt"

in 19 C.F.R. § 165.12 as follows:

> The 'date of receipt' of a properly filed allegation is the date on which
> [Customs] provides an acknowledgment of receipt of an allegation
> containing all the information and certifications required in § 165.11,
> together with a [Customs]-assigned control number, to the party that
> filed the allegation.  [Customs] has 15 business days from the date of
> receipt to determine whether to initiate an investigation under the
> EAPA.

19 C.F.R. § 165.12.

Customs explained that "[t]he statute and interim regulations provide

[Customs] the flexibility to properly examine the allegations as resources allow."

Investigation of Claims of Evasion of Antidumping and Countervailing Duties, 89

Fed. Reg. at 19,244.  Customs stated that this flexibility is necessary because

"[i]nitiating an investigation within 15 business days of an allegation being in

[Customs'] possession could lead to an inefficient use of [Customs'] resources, as

poorly filed allegations or incomplete allegations would cause [Customs] to

perform work that should have been done by the alleger." Id.

The Court disagrees because Congress' intention is clear that Customs must

initiate an investigation quickly, demonstrated by Congress' addition of the

specific 15-day requirement into the EAPA's statutory text.  In Brock v. Pierce

Cnty., the Supreme Court noted that "[t]his Court has frequently articulated the

'great principle of public policy, applicable to all governments alike, which forbids

that the public interests should be prejudiced by the negligence of the officers or

agents to whose care they are confided.'"  Brock v. Pierce Cnty., 476 U.S. 253,

260 (1986) (discussing the failure of the government to make an administrative

decision within a statutorily required timeframe).

In theory, Customs' expansive interpretation with no restrictions would

allow Customs to take a long time, for example, 12 months, to deem an allegation

"received," and then Customs could initiate an investigation 12 months plus 15

days later.  This result would be inconsistent with Congress' intention that

Customs should act quickly to bring EAPA investigations within 15 days.

Congress could have, but did not, give Customs unfettered flexibility in the text of

the EAPA statute.  Rather, Congress required that Customs shall initiate an EAPA

investigation no later than 15 days after receiving a request, clearly demonstrating

Congress' expectation that an investigation would begin quickly.

The information necessary to support an EAPA allegation is minimal under

19 C.F.R. § 165.11.  This provision "requires the alleger to provide its own name

and email address, a statement that qualifies the alleger as an interested party,

name and address of the targeted importer, description of alleged covered

merchandise, applicable AD CVD orders, and information reasonably available to

the alleger that supports its allegation."  Pl.'s Br. at 19–20.  After Customs initiates

an investigation within 15 days under 19 C.F.R. § 165.11, Customs has 90 days to

determine whether there is a "reasonable suspicion" of evasion under 19 C.F.R.

§ 165.24.  19 C.F.R. § 165.24.  Thus, the information required under 19 C.F.R.

§ 165.11 to initiate an EAPA investigation within 15 days is minimal, and is less

than "reasonable suspicion."  Customs is required by statute to initiate an

investigation within 15 days of receiving an allegation under 19 U.S.C. § 1517(b),

unless there are clerical errors or the allegation is withdrawn.  19 C.F.R. § 165.15.

With respect to Customs' regulation 19 C.F.R. § 165.12 that gives the

agency unlimited time to determine "date of receipt," this unfettered ability to

extend the "date of receipt" well beyond 15 days is contrary to the EAPA statute

and contrary to Congress' intent for Customs to initiate EAPA investigations

quickly.  The Court concludes that Customs' regulation 19 C.F.R. § 165.12 is not

in accordance with law to the extent that the regulation allows Customs to extend

and alter Congress' 15-day statutory deadline for an unlimited period of time,

which is inconsistent with 19 U.S.C. § 1517(b) that reflects Congress' intent for

Customs to initiate EAPA investigations quickly within 15 days of receiving an

allegation.

Here, Customs received the EAPA allegation on September 8, 2022, did not

acknowledge receipt of the allegation until October 6, 2022, and did not initiate an

investigation until October 28, 2022.  See 2024 Final Admin. Rev. Det. at 2.

Customs was required by the EAPA statute to initiate the investigation by

September 29, 2022, which was 15 days after the allegation was received.  See 19

U.S.C. § 1517(b).  Customs did not mention any clerical mistakes in the

information submitted that could have arguably justified some delay in

acknowledging receipt of the allegation information.  See 19 C.F.R. § 165.15.

Thus, Customs' initiation of the investigation was approximately 30 days past the

statutory deadline.

Plaintiff argues that "[i]n reality, EAPA allegations are all filed

electronically with [Customs]. . . .  Therefore, once an EAPA allegation is filed

with [Customs], it is received by [Customs] instantly."  Pl.'s Br. at 17.  The Court

observes that Customs stated, "In assessing the basis for the allegation, [Customs]

found that the information the Alleger submitted reasonably suggests that

[Superior] entered merchandise covered by the AD/CVD orders into the customs

territory of the United States through evasion. . . .  Thus, in light of the information

set forth, [Customs] initiated an investigation."  Notice of Investigation and Interim

Measures at 6.

The Court concludes that Customs' failure to meet the 15-day statutory

deadline to initiate an investigation was contrary to the EAPA statute and therefore

not in accordance with law.

The Parties dispute whether there should be any consequence for Customs'

failure to meet the 15-day statutory deadline.  Plaintiff argues that Customs should

lift the enforcement action it imposed on the portion of Superior's entries that

Superior would not have entered but for Customs' late institution of the

investigation.  Pl's Br. at 26.  The Government argues that 19 U.S.C. § 1517 is

optional, rather than mandatory, because the statute does not impose a penalty for

the Government's noncompliance with the statutory deadline.  Def.'s Resp. at 14.

The Court concludes that precluding an EAPA investigation altogether for

Customs' failure to meet the statutory deadline is too strict a remedy,

acknowledging that neither Party suggests that failure to meet the 15-day deadline

should prohibit an EAPA investigation completely.  The Supreme Court has

declined to overturn statutorily untimely agency actions in cases when an agency

failed to act within a specified time period that the statute mandated it "shall" act.

E.g., Brock v. Pierce Cnty., 476 U.S. at 260 (holding that not every failure of an

agency to observe a procedural requirement voids subsequent agency action,

especially where important public rights are at stake; when "there are less drastic

remedies available for failure to meet a statutory deadline, courts should not

assume that Congress intended the agency to lose its power to act."); see also

Barnhart v. Peabody Coal Co., 537 U.S. 149, 160 (2003) (noting that by 1992

"Congress was presumably aware that we do not readily infer congressional intent

to limit an agency's power to get a mandatory job done merely from a specification

to act by a certain time.").

The Court sees no reason to stray from this precedent. The Court will not

limit Customs' power to take action under the EAPA statute due to its failure to

meet the statutory deadline; however, similar to the Supreme Court's opinion in

Brock v. Pierce Cnty., the Court concludes in this case that "there are less drastic

remedies available for failure to meet a statutory deadline." Brock, 476 U.S. at

260.

The Government argues that "[Superior] has failed to demonstrate that it

suffered substantial prejudice by reason of the delay." Def.'s Br. at 14. Plaintiff

explains, however, that Customs' imposition of interim measures of a 371.47%

duty rate had significant financial consequences:

> As soon as [Superior] was notified of the EAPA investigation on
> January 26, 2023, it immediately ceased making entries of alleged
> covered merchandise and turned away any such shipments that were on
> water. Therefore, the consequence caused solely by Customs' failure
> to initiate an investigation within fifteen business days from receiving
> the allegation is [Superior] continued to make imports of alleged

>covered merchandise after December 12, 2022 and to accrue AD/CVD
>duties at the combined rate of 371.47% on those entries even after
>Customs had launched an investigation.

Pl.'s Resp. Court Order at 2.  Plaintiff explained that, upon notification of the

EAPA investigation, "[Superior] immediately ceased importing the merchandise at

issue because [Superior] could not afford making entries of alleged covered

merchandise at a combined AD/CVD cash deposits at 371.47 percent." Id. at 6.

Interim measures, in addition to increasing the cash deposits significantly, would

also greatly increase the amount of any bond required.  See Monetary Guidelines

for Setting Bond Amounts for Importations Subject to Enhanced Bonding

Requirements, 71 Fed. Reg. 62,276 (U.S. Customs and Border Protection, Dep't

Homeland Security, Oct. 24, 2006).

Plaintiff suggests that the Court should consider "less drastic remedies

available for failure to meet a statutory deadline" as described by the Supreme

Court in Brock v. Pierce Cnty..  Pl.'s Resp. Court Order at 2–3.  Plaintiff contends

that "[e]nforcing the deadline to initiate an EAPA allegation would serve the

statutory purpose of providing immediate relief to the U.S. industry from un-taxed

and dumped imports." Id. at 4.  Plaintiff argues that "Customs' process to accept

or reject the EAPA allegation should have taken fifteen business days, not fifteen

business days plus thirty days.  Customs' unwarranted delay prejudiced [Superior]

and can only be remedied by excluding entries entered during those thirty days

from any interim measures or final measures applying AD/CVD duties."  Id.

     The Court agrees with Plaintiff that the imposition of interim and final

measures caused Plaintiff to suffer substantial prejudice in the form of monetary

consequences of 371.47% cash deposits and increased bond requirements.

The Court concludes that Plaintiff was prejudiced by the Government's delay

(which was contrary to statute and unlawful) and holds that because Customs'

unlawful delay in initiating the investigation warrants a reasonable, equitable

remedy as discussed in Brock v. Pierce Cnty., the Court will exercise its equitable

powers to order that any entries entered after September 29, 2022 shall not be

subject to any interim or final measures applying AD/CVD duties.  See Brock, 476

U.S. at 260.  The Court grants summary judgment in favor of Plaintiff on Count I.

## II.    Due Process Right to Notice of Investigation (Count II)

     Superior asserts that Customs improperly withheld notice of its investigation

for 140 days until interim measures were announced.  Pl.'s Br. at 20–26.  Superior

acknowledges that the EAPA statute does not require Customs to provide notice to

the importer of a final determination from its Trade Remedy & Law Enforcement

Directorate.  Id. at 21.  Superior concedes that "Section 1517(c)(4) is the only

provision in Section 1517 that explicitly provides for notification of the TRLED

Final Determination, and [Customs] is only required to provide such notification to the alleger." Id.

Superior argues that despite the statute's silence on when the targeted importer being investigated must be notified, "the only reasonable reading of the EAPA statute's silence on providing notification to the targeted importer throughout an EAPA investigation is that Customs should notify the targeted importer at the time that it makes any []consequential decision pursuant to its statutory obligation to investigate." Pl.'s Resp. Questions at 4.

In its reply brief, Superior asserts "that the EAPA Statute as a whole would be unconstitutional and violates private parties' due process right if [Customs'] interpretation of (the lack of) notice requirement to targeted importers in the EAPA statute is allowed." Pl.'s Reply Br. at 8. Superior defines its protected interest as the "right to notice and a meaningful opportunity to be heard." Id. at 9 (quoting Royal Brush Mfg. v. United States, 75 F.4th 1250, 1258 (Fed. Cir. 2023)). Superior explains that it should have been notified "of the investigation at each crucial point of time throughout the investigation, including when [Customs] first decides to initiate the investigation pursuant to 19 U.S.C. § 1517(b)(1)." Id.

The CAFC has recognized in the EAPA context that an importer participating in an administrative proceeding has a procedural due process right to notice and a meaningful opportunity to be heard. Royal Brush Mfg., 75 F.4th at

1257 (citing <u>PSC VSMPO-Avisma Corp. v. United States</u>, 688 F.3d 751, 761–62 (Fed. Cir. 2021)).

Plaintiff argues that a "meaningful opportunity to be heard" means *before* the imposition of interim measures, citing the Supreme Court's opinion in <u>Brock v. Roadway Express, Inc.</u>, which noted "the constitutional requirement of a meaningful opportunity to respond before a temporary deprivation may take effect entails, at a minimum, the right to be informed not only of the nature of the charges but also of the substance of the relevant supporting evidence." <u>Brock v. Roadway Express, Inc.</u>, 481 U.S. 252, 264–65 (1987).

The Court agrees with Plaintiff's argument that a meaningful opportunity to respond should happen before a temporary deprivation takes effect, not afterwards. <u>Id.</u>; <u>see also</u> <u>Royal Brush Mfg.</u>, 75 F.4th at 1257 (citing <u>PSC VSMPO-Avisma Corp.</u>, 688 F.3d at 761–62 (requiring the procedural due process right to "notice and a meaningful opportunity to be heard" in an antidumping proceeding)). Here, Superior was notified of the investigation at the time that interim measures were imposed, which assessed a combined AD/CVD cash deposit rate of 371.47% retroactively on all entries that were unliquidated. It was only when the 371.47% interim penalty was imposed that Plaintiff was made aware of the allegations. Plaintiff was not provided with an opportunity to offer evidence and make

administrative arguments prior to the imposition of 371.47% interim penalties on all unliquidated entries.

Under 19 C.F.R. § 165.15(d)(1), Customs is required by its regulations to issue notification "of its decision to initiate an investigation to all parties to the investigation no later than five business days after day 90 of the investigation," and "no later than five business days after day 90 of the investigation" in cases where interim measures are taken. 19 C.F.R. § 165.15(d)(1). As written, 19 C.F.R. § 165.15(d)(1) provides notice to all parties to the investigation no later than 95 days *after* the decision has been made and no later than five business days *after* interim measures have been imposed, which by definition does not allow for a party under investigation to submit any evidence or offer any administrative arguments in its defense *prior* to when the temporary deprivation takes effect as described by the Supreme Court in <u>Brock v. Roadway Express, Inc.</u>, 481 U.S.at 264–65.

The Court concludes that the regulation at 19 C.F.R. § 165.15(d)(1) is arbitrary, capricious, and not in accordance with law because the regulation does not provide an importer participating in an administrative proceeding with a procedural due process right to notice and a meaningful opportunity to be heard. <u>Royal Brush Mfg.</u>, 75 F.4th at 1257; <u>see also</u> <u>Brock</u>, 481 U.S. at 264–65.

Similar to the discussion above regarding the Government's violation of the 15-day statutory requirement, the Court agrees that Plaintiff was prejudiced by the Government's withholding of notification until 140 days after the investigation was initiated, when interim measures of a 371.47% *ad valorem* cash deposit rate were imposed retroactively on all unliquidated entries. The Court holds that because Customs' failure to notify the importer promptly about the EAPA investigation deprived Plaintiff of notice and a meaningful opportunity to be heard before the temporary deprivation occurred, the situation warrants a reasonable, equitable remedy as discussed in Brock v. Pierce Cnty., 476 U.S. at 260. Accordingly, any entries entered after September 29, 2022 (the date on which the EAPA investigation should have been initiated under the statutory deadline) shall not be subject to the cash deposit rate of 371.47% *ad valorem* interim measures applying AD/CVD duties, nor shall be subject to final measures due to the same lack of notice and a meaningful opportunity to be heard.

The Court grants summary judgment in favor of Plaintiff on Count II.

### III.    Allegation That EAPA Investigation Was Not in Accordance With Law (Count VI)

Under the EAPA statute, Customs makes a determination of evasion when an importer is:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or

electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A).

Customs' regulations state:

If . . . the importer, or the foreign producer or exporter of the covered merchandise fails to cooperate and comply to the best of its ability with a request for information made by [Customs], [Customs] may apply an inference adverse to the interests of that party in selecting from among the facts otherwise available to make the determination as to evasion. . . .

19 C.F.R. § 165.6(a).

The Court concludes that Customs' determination that Kales/Engga and Strry failed to cooperate and comply to the best of their ability with Customs' requests for information in multiple instances is supported by substantial evidence. Customs cited evidence and described the actions of Kales/Engga and Strry as "a pattern of deception that is consistent with a willingness to facilitate evasion." 2023 Det. at 11.  Customs detailed at least eight distinct instances when Kales/Engga and Strry provided material false statements, omitted material statements, or attempted to conceal material facts.  Id. at 37–38.  For example, Customs noted that: (1) Kales/Engga and Strry failed to report all of their affiliated companies; (2) Kales/Engga and Strry failed to provide business documents

requested by Customs; (3) Kales/Engga and Strry denied affiliation with a China-

based entity; (4) Kales/Engga and Strry denied affiliation with another entity; (5)

Kales/Engga and Strry concealed material evidence concerning an affiliation

between Kales and Engga; (6) Strry provided false information and failed to

provide requested documentation; (7) Kales/Engga and Strry did not participate in

Customs' verification; and (8) Kales/Engga provided fraudulent payment

documents. Id.

Based on these examples that are supported by record evidence, the Court

concludes that Customs properly applied an adverse inference against Kales/Engga

and Strry by inferring that all of the subject merchandise that they exported to the

United States during the period of investigation was of Chinese-origin. Id. at 38.

The Court holds that Customs' adverse inference was in accordance with law and

supported by substantial evidence.

## IV.    Whether Customs' EAPA Determination Was Supported by Substantial Evidence (Count VII)

Separate from the adverse inference analysis, Plaintiff argues that Customs'

determination of evasion was not supported by substantial evidence. Pl.'s Br. at

26. Plaintiff asserts that Customs should have examined each entry to determine

whether evasion occurred. Id. In the administrative proceeding below, Superior

conceded that approximately one-third of the shipments it received from

Kales/Engga contained Chinese quartz slabs.  2024 Final Admin. Rev. Det. at 12.

In the 2024 Final Administrative Review Determination, Customs determined that

"there [was] substantial evidence that [Superior] imported [quartz surface

products] from China into the United States."  Id.  Superior asserts that only the

previously identified one-third of shipments contained Chinese quartz slabs and

that Customs erred by not making an entry-by-entry determination for the

remaining entries.  Pl.'s Br. at 27.  Additionally, Superior avers that Customs

framed the universe of covered merchandise incorrectly.  Id. at 27–28.  Superior

argues that the remaining shipments "were manufactured using Vietnamese-origin

slabs [and] were not 'covered merchandise[.]'"  Id. at 28.

19 U.S.C. § 1517 requires Customs to have substantial evidence to support a

finding of evasion.  19 U.S.C. § 1517(c)(1)(A).  Substantial evidence is "more than

a mere scintilla" and has been defined as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Consol. Edison Co. of

New York v. N.L.R.B., 305 U.S. 197, 217 (1938).

Regarding the shipments that Superior conceded were of Chinese origin,

Customs explained that these shipments "constitute[d] a significant portion of

shipments during the [period of investigation]."  2024 Final Admin. Rev. Det. at

12.  Customs explained that, "because Kales/Engga and Strry did not permit

[Customs'] verification, [Customs] was unable to verify the information in

Kales/Engga's records to determine whether [the provided percentage] was an

accurate proportion.  Therefore, [Customs] cannot rely on this proportion to

discern which entries contain covered merchandise."  2023 Det. at 28.

     The Court does not agree, absent an adverse inference determination, that it

was reasonable for Customs to assume that 100% of shipments were from China,

based only on evidence that approximately one-third of the shipments were from

China.  See Ad Hoc Shrimp Trade Enf. Comm. v. United States, 47 CIT __, __,

632 F. Supp. 3d 1369, 1379 (2023) ("TRLED's determination of evasion is not

reasonable on this record . . . and arbitrarily transforms a single instance of evasion

into a finding of evasion for an entire year of entries.").  While this case is more

than the one instance of evasion that the Court found to be arbitrary in Ad Hoc

Shrimp, the facts in this case are different.

     In the absence of an adverse inference determination, it might be

unreasonable to assume that 100% of entries were from China, based only on

evidence of approximately one-third of shipments from China, particularly when

Plaintiff asserts that there is contrary evidence demonstrating that some of the

remaining shipments originated in Vietnam.  Customs' Office of Trade,

Regulations & Rulings Directorate did not expressly address whether the

remaining shipments contained quartz slabs from China.  Superior contends that

other evidence on the record established that the remaining shipments of quartz

slabs were not of Chinese origin.  Pl.'s Br. at 27–28 (citing certain documents

provided by Kales showing sales of shipments produced from Vietnamese quartz

slabs, including countertop production records, quartz slabs purchase documents,

and quartz slabs production documents).

However, one cannot ignore that the facts in this case involve an adverse

inference determination and establish that Customs compared the amount of quartz

Kales/Engga sourced from China, the amount it sourced from Vietnam, and how

much quartz it supplied to its customers.  2023 Det. at 26.  In direct contradiction

to Superior's claim, Customs explained that it could not verify that the remaining

shipments originated in Vietnam because Kales/Engga and Strry rescinded their

consent to allow Customs to inspect their facilities to verify such information.

2024 Final Admin. Rev. Det. at 14; 2023 Det. at 29.

Customs recounted evidence that Kales/Engga and Strry were affiliated with

Chinese ownership, provided several false statements concerning their affiliation

and ownership, and concealed documents related to their affiliation and ownership.

2023 Det. at 6–23.  Customs also detailed evidence that Kales/Engga imported a

substantial quantity of quartz slab products from China, in addition to the

approximately one-third of shipments that Superior identified.  2023 Det. at 25–37.

These findings were affirmed by Customs' Office of Trade, Regulations & Rulings

Directorate.  2024 Final Admin. Rev. Det. at 13.

As noted above, Customs made an adverse inference determination that Kales/Engga and Strry provided material false statements and omitted or otherwise attempted to conceal material facts in eight instances. 2023 Det. at 37–38. Customs stated that, "[although] [Customs] is applying an adverse inference with respect to Kales/Engga and Strry, enough evidence exists on the record to determine that there is evasion without its use." Id. at 38–39. Customs relies heavily in its evasion determination on its adverse inference analysis, despite Customs' pronouncement that it did not need to rely on an adverse inference for its analysis. If Customs did not make an adverse inference determination based on evidentiary analysis, this case might have a different outcome. An inference that 100% of entries were from China may not be reasonable based on evidence of only one-third of entries from China, without a more detailed entry by entry investigation as suggested by Plaintiff.

Considering the Court's holding above that Customs' adverse inference determination was in accordance with law and supported by substantial evidence, the Court does not need to reach a conclusion on whether Customs' determination that 100% of subject merchandise were from China, based on evidence of approximately one-third of shipments from China, was supported by substantial evidence.

**V.     Applicability of Adverse Inference Against Cooperating Importer (Counts VIII and IX)**

Superior avers that it exercised due diligence and reasonable care when importing shipments, and that it "did not intentionally or negligently enter covered merchandise by an act that is material and false, or any omission that is material." Pl.'s Br. at 29.  Superior maintains that it "was not aware that the Engga/Kales imported *any* quartz slabs from China" and that the evidence on the record proves this.  Id. (emphasis in original).  Based on this evidence, Superior argues that the statutory criteria requiring falsity has not been met.  Id.  Essentially, Superior argues that the EAPA has an intent or culpability requirement and that it has not been met in this case.  Id.

The "EAPA read as a whole supports [Customs'] strict liability interpretation of the definition of evasion."  Ikadan Sys. USA, Inc. v. United States, 75 CIT __, __, 639 F. Supp. 3d 1339, 1349 (2023).  The Ikadan Court emphasized that Congress did not include language "assessing an importer's state of mind" in this section of the statute.  Id.  The Ikadan Court contrasted § 1517 with § 1592, which "explicitly incorporates three levels of culpability (negligence, gross negligence, and civil fraud)."  Id.  If Congress wanted to impose a culpability requirement here, it could have; but it did not.

With respect to Superior's argument that it provided sufficient evidence of due diligence and reasonable care to defeat an evasion determination, the Court finds that this argument fails again as it did in Ikadan.  Id. at 1350.

Superior does not dispute that Kales/Engga and Strry failed to cooperate in Customs' EAPA investigation to the best of their abilities.  Pl.'s Br. at 32. Superior takes issue with Customs' application of an adverse inference against Kales/Engga and Strry "in a way that only affects [Superior], who has fully cooperated in this investigation."  Id.  Superior avers that Customs should have applied an adverse inference against the future shipments of only Kales/Engga and Strry.  Id.

The CAFC has rejected this argument.  E.g., KYD, Inc. v. United States, 607 F.3d 760, 768 (Fed. Cir. 2010); Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1371 (Fed. Cir. 2014).  In Fine Furniture (Shanghai) Ltd. v. United States, the plaintiff argued "that Commerce's inferences were not adverse to the government of China, but only to Fine Furniture because Fine Furniture was the only party who was actually impacted by the inferences."  Fine Furniture (Shanghai) Ltd., 748 F.3d at 1371.  Fine Furniture argued that absent a finding that it was non-cooperative, "the application of an adverse inference against Fine Furniture is improper . . . ."  Id.

The <u>Fine Furniture</u> Court held that "[a]lthough it is unfortunate that

cooperating respondents may be subject to collateral effects due to the adverse

inferences applied when a government fails to respond to Commerce's questions,

this result is not contrary to the statute or its purposes, nor is it inconsistent with

this court's precedent." <u>Id.</u> at 1373.  The <u>Fine Furniture</u> Court supported its

holding with its prior decision in <u>KYD, Inc. v. United States</u>.  <u>Id.</u> at 1372–73.  In

<u>KYD, Inc. v. United States</u>, the CAFC held that adverse inferences are not

improperly applied because they have a collateral impact on a cooperating party.

<u>KYD, Inc.</u>, 607 F.3d at 768.

The CAFC reaffirmed this principal recently.  In <u>All One God Faith, Inc. v.</u>

<u>United States</u>, it was clear from the record that the manufacturers did not respond

to Customs' requests for information and failed to provide most of the information

requested; in sum, "the manufacturers were uncooperative[.]"  <u>All One God Faith,</u>

<u>Inc. v. United States</u>, 129 F.4th 1350, 1358 (Fed. Cir. 2025).  Customs applied an

adverse inference against the manufacturers, which had a collateral effect on the

cooperating importer.  <u>Id.</u>  The CAFC held that "Customs properly applied an

adverse inference against the manufacturer as authorized by statute, irrespective of

the conduct of other interested parties."  <u>Id.</u> at 1359.

Similarly, Customs' application of an adverse inference against the manufacturers was authorized by statute and was not made improper by the collateral impact on Superior as a cooperating importer.

## VI.    Waiver of Counts III, IV, V, X in Complaint

The Government argues that summary judgment should be denied and Counts III, IV, V, X in Superior's Complaint should be dismissed.  Def.'s Resp. at 32.  The Government avers that Superior abandoned those claims by not providing any argument in support of those Counts in its opening brief.  Id.  Superior appears to concede this point.  Pl.'s Reply. Br. at 22.

The Court notes that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Home Prods. Int'l, Inc. v. United States, 36 CIT 665, 673, 837 F. Supp. 2d 1294, 1301 (2012) (citation omitted); SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) (It is "well established that arguments not raised in the opening brief are waived.").  Because Superior failed to include any arguments in support of Counts III, IV, V, X in its opening brief, summary judgment is denied and Counts III, IV, V, and X are deemed waived and are dismissed.

Court No. 24-00052                                                                                      Page 38

## CONCLUSION

For the reasons set forth above, the Court sustains Customs' final

administrative evasion determination, subject to the Court's Opinion, and orders

Customs to rescind the interim and final enforcement measures imposed on quartz

countertop products imported by Plaintiff after September 29, 2022.  Accordingly,

it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record,

ECF Nos. 21, 22, is granted in part and denied in part.

Judgment will issue accordingly.


                                                                 /s/ Jennifer Choe-Groves
                                                                 Jennifer Choe-Groves, Judge

Dated:   November 26, 2025
              New York, New York